## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : | (Emergency Hearing Requested) |

### EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 4, 2016 AT 9:00 A.M. IN COURTROOM 400, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY**

---

[1] The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570). The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move the Court for the entry of interim and final orders pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of the Bankruptcy Code (i) authorizing them to pay:  (a) prepetition wages, salaries, overtime pay, bonuses, sick pay, vacation pay, payroll taxes and other accrued compensation (collectively, the "Prepetition Compensation"); (b) unreimbursed or unpaid, as applicable, prepetition reimbursed employee expenses (collectively, the "Prepetition Expenses"); (c) Prepetition Deductions (as such term is defined below); (d) prepetition contributions to, and benefits under, employee benefit plans (collectively, the "Prepetition Benefits"); (e) the Supplemental Workforce Obligations (as defined below); and (f) all costs and expenses incident to the foregoing payments and contributions, including related processing and administration costs (the "Prepetition Processing Costs"), and (ii) granting certain related relief.  In support of this motion, the Debtors incorporate the statements contained in the Declaration of Daniel P. Hurley in Support of First Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully represent as follows:

## Background

1.     On the date hereof (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2]  The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     Founded in 2006, the Debtors are a privately held, independent oil and gas company headquartered in Houston, Texas.  The Debtors are engaged in the exploration, development, production and acquisition of oil and natural gas properties located along the

---

[2]     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

southern coast of Louisiana and onshore Texas and Louisiana.  As of the Petition Date, the Debtors owned interests in 403 oil, gas and related wells, and the Debtors had estimated proved reserves of approximately 26.7 million barrels of oil equivalents (MMBoe), comprised of 109 billion cubic feet (Bcf) of natural gas and 8.5 MMBo of oil and condensate.

   3.  Additional information regarding the Debtors and these cases, including the Debtors' businesses, structure, financial condition, and the reasons for and objectives of these cases, is set forth in the First Day Declaration, incorporated herein by reference.

***Prepetition Compensation and Prepetition Deductions***

   4.  As of the Petition Date, the Debtors have 22 full-time employees.  Many of the employees are owed or have accrued various sums for Prepetition Compensation and Prepetition Deductions (as defined below).  These amounts were unpaid on the Petition Date because, among other things:  (a) the Debtors pay payroll and reimburse employees for business expenses in arrears; (b) checks previously issued on account of such obligations may not have been presented for payment or may not have cleared the banking system; (c) amounts related to prepetition services, while accrued in whole or in part, had not yet become due and payable by the Debtors; and (d) amounts deducted from employee paychecks were not then due to be paid over to the intended recipient or account, including deductions taken from employees' paychecks (i) to make payments on behalf of the employees for or with respect to, among other things, the Debtors' employee benefit programs, loan repayments and garnishments or amounts due to third parties and (ii) on account of various federal, state or local income, FICA, Medicare, state disability, workers' compensation and other taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Prepetition Deductions").

   5.  The Debtors' Prepetition Compensation includes compensation paid annually in the form of discretionary cash bonuses (the "Discretionary Bonuses") and a 401(k)

match (the "401(k) Match"). The Debtors historically pay discretionary cash bonuses to employees based upon a combination of the employee's and the Debtors' performance over the prior calendar year.  The Discretionary Bonuses are an important component of an employee's overall compensation package, and the Debtors believe that many employees expect to receive and rely on payments pursuant to the Discretionary Bonuses.  The Debtors seek to continue the Discretionary Bonuses for all employees that are not part of any incentive or retention program approved by the Court, and the Debtors anticipate that payments under the Discretionary Bonuses, including the Debtors' payroll and related tax obligations, will not exceed $100,000.

6.      In addition to the Discretionary Bonuses, the Debtors also provide a 401(k) Match.  In each pay period the Debtors match, on a 100% basis, up to 6% of qualified compensation or IRS compensation limits, employee contributions to the company-sponsored 401(k) retirement savings plan.  The Debtors seek to continue the 401(k) Match, and they anticipate that such payments on account of prepetition obligations will not exceed $10,000.

7.      The Debtors also have of accrued but unpaid vacation obligations as of the Petition Date.  Employees may be eligible for payment of their accrued vacation in the event of a separation, and the Debtors intend to continue honoring their obligations to employees on account of accrued vacation in the ordinary course of business. The Debtors estimate that their obligations on account of pre-petition accrued but unpaid vacation will not exceed $30,000.

8.      The Debtors seek authority to pay all Prepetition Compensation and Prepetition Deductions.  The Debtors estimate that, as of the Petition Date, the total amount of Prepetition Compensation is approximately $60,000 and the total amount of Prepetition Deductions is approximately $25,000.

*Prepetition Expenses*

9.     The Debtors customarily reimburse their employees for a variety of business expenses incurred in the ordinary course of their business, including travel and car rental expenses.  Certain expenses may be paid directly by the employee and reimbursed upon review and approval by the Debtors.  The Debtors typically reimburse less than $10,000 in business expenses on a monthly basis.

10.     The Debtors respectfully request authority to pay all Prepetition Expenses.  Though it is difficult for the Debtors to determine the exact amount of Prepetition Expenses that are outstanding, because, among other things, employees may not submit reimbursement forms promptly, the Debtors estimate that their obligations for Prepetition Expenses as of the Petition Date will not exceed $20,000.

*Prepetition Benefits*

11.     The Prepetition Benefits relate to the Debtors' employee benefit programs, including, for eligible employees:  (a) medical, dental, vision, life and disability insurance; (b) flexible spending accounts to pay for eligible out-of-pocket health care expenses; and (c) a 401(k) retirement plan.  The Prepetition Benefits are administered by Insperity.  United Healthcare provides the Debtors' medical and dental plans, and the vision plan is provided by Vision Service Provider.  The Debtors seek authority to pay all Prepetition Benefits, and the Debtors estimate that, as of the Petition Date, the total amount of Prepetition Benefits is approximately $25,000.

*Supplemental Workforce*

12.     In addition to their regular workforce, the Debtors utilize the services of 16 independent contractors (the "Independent Contractors") pursuant to formal and informal arrangements.  The Independent Contractors provide assistance the areas of accounting,

reception, land, geology and engineering, and each of the Independent Contractors spends significant time on site at the Debtors' offices in Lafayette, Louisiana or Houston, Texas.  The Independent Contractors have developed a specialized knowledge of the Debtors' operations, and the Debtors' business would be significantly impacted if the Independent Contractors ceased providing services.  In addition, while the Independent Contractors are not directly on the Debtors' payroll, the types of services provided is akin to the types of services provided in-house by many of the Debtors' competitors.  The services provided by the Independent Contractors are vital to the efficient operation of the Debtors' business.

13.     The Debtors do not withhold taxes or provide benefits for the Independent Contractors.  Instead, the Debtors make payments to the Independent Contractors based upon the relevant number of hours worked and upon the submittal of time sheets.  Payments are made to Independent Contractors on various schedules, with some payments made on a weekly basis, while others are paid on a bi-weekly or monthly basis.  The Debtors estimate that approximately $65,000 has accrued in respect of the prepetition services of the Independent Contractors (the "Supplemental Workforce Obligations").

***Costs and Expenses Incident to the Foregoing***

14.     The Prepetition Processing Costs include processing costs and accrued but unpaid prepetition charges for administration of the Prepetition Benefits, such as payments owed to Insperity.  The Debtors estimate that the aggregate amount of Prepetition Processing Costs accrued but unpaid, as of the Petition Date, was no greater than $6,000.

## Basis for Relief Requested

15.     The payment of the Prepetition Compensation, the Prepetition Expenses, the Prepetition Deductions, the Prepetition Benefits, the Supplemental Workforce Obligations and the Prepetition Processing Costs is warranted under sections 105(a), 363, 507(a)(4),

507(a)(5), 541(b)(7) and 541(d) of the Bankruptcy Code and case law in this district and

elsewhere.

***Employee Wages and Related Costs Are Entitled***
***To Priority Status under the Bankruptcy Code***

   16. Pursuant to section 507(a)(4) of the Bankruptcy Code, employees are

granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for
> each individual or corporation, as the case may be, earned within
> 180 days before the date of the filing of the petition or the date of
> the cessation of the debtor's business, whichever occurs first,
> for —
>
>  (A) wages, salaries, or commissions, including vacation,
> severance, and sick leave pay earned by an individual.

11 U.S.C. § 507(a)(4).  Likewise, pursuant to section 507(a)(5) of the Bankruptcy Code,

employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit
> plan —
>
>  (A) arising from services rendered within 180 days
> before the date of the filing of the petition or the date of the
> cessation of the debtor's business, whichever occurs first; but only
>
>  (B) for each such plan, to the extent of —
>
>   (i) the number of employees covered by each
> such plan multiplied by $12,850; less
>
>   (ii) the aggregate amount paid to such
> employees under paragraph (4) of this subsection, plus the
> aggregate amount paid by the estate on behalf of such
> employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

   17. In addition, the costs of administering employee benefits programs are

also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code.  <u>Allegheny</u>

<u>Int'l, Inc. v. Metro. Life Ins. Co.</u>, 145 B.R. 820 (W.D. Pa. 1992).  In <u>Allegheny</u>, the court ruled

that the prepetition claims of a medical benefits plan administrator for, among other things, fees charged for performing administrative, actuarial and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under section 507(a)(5) of the Bankruptcy Code. The court stated that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." Id. at 822-23.

18.     The Debtors believe that the amount of prepetition wages, salaries and overtime pay will not exceed the sum of $12,850 per employee allowable as a priority claim under section 507(a)(4) of the Bankruptcy Code.

***Funds Held in Trust Are Not Available for General Distribution to Creditors***

19.     Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. § 541(d). It is well established that "property a debtor holds in trust for another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code. See Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D. Del. 2006); see also In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in trust — either express or constructive — for another does not become property of the estate when the debtor files for bankruptcy and stating that "Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust"); EBS Pension LLC v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231 (Bankr. D. Del. 2000) (same).

20.     More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate.

See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); see also In re Calabrese, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and "never become property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax"); Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property).  Accordingly, such funds are not available for general distribution to a debtor's creditors.

21.     Certain of the Prepetition Deductions are held in trust for the benefit of the appropriate federal, state or local taxing authorities or for, among others, the Debtors' employees themselves.  Thus, the Prepetition Deductions likely are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  As a result, the remittance of the Prepetition Deductions is warranted because it will not diminish creditor recoveries.

22.     Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted.  Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits would constitute a significant distraction for officers and directors at a time when they should be

focused on the Debtors' bankruptcy-related efforts.  To avoid the serious disruption of the Debtors' bankruptcy-related efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Prepetition Deductions collected on behalf of the employees to the applicable taxing authorities to the extent that they have not already been remitted.

***Certain Prepetition Deductions and Contributions for
ERISA Plans Are Not Property of the Estate***

23.     In addition to the general exclusion of certain property from a debtor's estate under section 541(d) of the Bankruptcy Code, section 541(b)(7) of the Bankruptcy Code specifically provides that property of the estate does not include amounts withheld by an employer from wages of an employee, or amounts received by an employer from employees, for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 ("ERISA").  Amounts withheld or collected from employees on account of certain Prepetition Benefits, such as 401(k) accounts, medical, life, disability and other insurance, or other benefits that are subject to title I of ERISA and thus satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the Debtors' estates and are not available for distribution to the Debtors' creditors.  As such, the remittance of amounts constituting Prepetition Benefits that do not constitute property of the Debtors' estates will not adversely affect the Debtors' creditors.

***The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief***

24.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.

> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent the abuse of process.

11 U.S.C. § 105(a).

25.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"); In re Equalnet Commc'ns Corp., 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation).  The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")).

26.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside

-11-

of the ordinary course of business.  Indeed, a debtor in possession operating a business under
section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business,
and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CEI
Roofing, Inc., 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (noting that a debtor has the implied
duty to "protect and preserve the estate, including an operating business' going-concern value");
In re CoServ, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this
duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

27.     Moreover, under section 105(a) of the Bankruptcy Code, "the Court may
issue any order, process, or judgment that is necessary or appropriate to carry out the provisions
of the Bankruptcy Code."  11 U.S.C. § 105(a); In re CoServ, L.L.C., 273 B.R. at 497 (finding
that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-
possession to pay prepetition claims); In re CEI Roofing, Inc., 315 B.R. at 56 (same); In re
Mirant Corp., 296 B.R. 427 (Bankr. N.D. Tex. 2003) (same).

28.     This motion satisfies the foregoing criteria, as the relief sought herein
plainly is essential to the continued operations of the Debtors.  Maintaining the goodwill of the
Debtors' employees and ensuring the uninterrupted availability of their services will protect the
going concern value of the estates and maximize the value ultimately available to creditors by
(a) assisting the Debtors in maintaining the necessary "business as usual" atmosphere and
(b) preserving the smooth operation of the business.

29.     It is likewise critical that the Debtors maintain the services of the
Independent Contractors who provide a variety of important services for the Debtors.  Any delay
in payments to the Independent Contractors could cause the Debtors to lose the benefit of

necessary services and guidance, which would significantly disrupt and impair certain aspects of the Debtors' operations.

30.     Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates.  Because the amounts represented by Prepetition Compensation, Prepetition Benefits and Supplemental Workforce Obligations are needed to enable the Debtors' employees and Independent Contractors to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

31.     In light of the foregoing, the Debtors respectfully submit that the payment of the employee-related obligations as requested herein is (a) in the best interests of the Debtors, their estates and their creditors and (b) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their creditors.

32.     This Court has routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  See, e.g., In re Ultra Petrol. Corp., No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016); In re Midstates Petrol. Co., No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016); In re Energy XXI Ltd, No. 16-31928 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2016); In re Sherwin Alumina Company, LLC, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016); In re BPZ Res., Inc., No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 10, 2015).

***Request for Authority for Banks to Honor and Pay Checks Issued to Pay Prepetition Compensation, Supplemental Workforce Obligations, Prepetition Expenses, Relocation Obligations, Prepetition Deductions, Prepetition Benefits, and Prepetition Processing Costs***

33.     In addition, by this motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to

honor all fund transfer requests made by the Debtors related to Prepetition Compensation,
Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, Supplemental Workforce
Obligations and Prepetition Processing Costs regardless of whether such checks were presented
or fund transfer requests were submitted prior to or after the Petition Date, provided that
sufficient funds are available in the applicable accounts to make the payments.  The Debtors
represent that these checks are drawn on identifiable payroll and disbursement accounts and can
be readily identified as relating directly to the authorized payment of Prepetition Compensation,
Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, Supplemental Workforce
Obligations and Prepetition Processing Costs.  Accordingly, the Debtors believe that checks will
not be honored inadvertently.

    34. Nothing contained herein is intended or shall be construed as:  (a) an
admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights
to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or
admission that any particular claim against the Debtors would constitute a Supplemental
Workforce Obligation or a claim for Prepetition Compensation, Prepetition Expenses, Prepetition
Benefits, Prepetition Deductions, or Prepetition Processing Costs; or (e) the assumption of any
contract.

<u>**Requests for Immediate Relief & Waiver of Stay**</u>

    35. Pursuant to Bankruptcy Local Rule 9031-1 and Rules 6003(b) and 6004(h)
of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Debtors seek
(a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of
the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that
"[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court
shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to

pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

36.     As set forth above, the payment of the Prepetition Compensation, Prepetition Expenses, Prepetition Deductions, Prepetition Benefits, Supplemental Workforce Obligations, and Prepetition Processing Costs are necessary to prevent immediate and irreparable damage to the Debtors' (a) operations (and customer confidence therein) and (b) ability to successfully reorganize.  Accordingly, the Debtors submit that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## No Prior Request

37.     No prior request for the relief sought herein has been made to this Court or any other court.

## Notice

38.     Notice of this motion will be provided by delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (c) Simpson Thacher & Bartlett, counsel to Morgan Stanley Energy Capital Inc. in its capacity as administrative agent under the proposed postpetition credit agreement and as administrative agent under the Debtors' prepetition secured credit facility; (d) Vinson & Elkins LLP as counsel to HPS Investment

Partners, LLC, as a restructuring support party under the Restructuring Support Agreement;

(e) the lenders under the Debtors' prepetition second lien credit agreement; (f) Whitney Bank;

and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of

service.  Due to the nature of the relief requested herein, the Debtors respectfully submit that no

further notice of this motion is necessary.

        WHEREFORE, the Debtors respectfully request that the Court enter an interim

order substantially in the form attached hereto as <u>Exhibit A</u>, and a final order substantially in the

form attached hereto as <u>Exhibit B</u>, granting:  (i)  the relief requested herein; and (ii) such other

and further relief to the Debtors as the Court may deem proper.

Dated: November 2, 2016                  Respectfully submitted,

                                      */s/ Paul M. Green*
                                      Thomas A. Howley (TX 24010115)
                                      Paul M. Green (TX 24059854)
                                      JONES DAY
                                      717 Texas, Suite 3300
                                      Houston, Texas 77002
                                      Telephone:  (832) 239-3939
                                      Facsimile:  (832) 239-3600

                                      PROPOSED ATTORNEYS FOR DEBTORS
                                      AND DEBTORS IN POSSESSION

-16-

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on November 2, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Paul M. Green*

Paul M. Green

## **EXHIBIT A**

### **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
|  | : |  |
| Debtors. | : | (Joint Administration Requested) |
|  | : | (Emergency Hearing Requested) |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY**
**PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS**

This matter coming before the Court on the Motion For An Order Authorizing the

Debtors to Pay Prepetition Employee Wages, Benefits And Related Items (the "Motion");[2] the

Court having reviewed the Motion and the First Day Declaration and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it

is applicable; and after due deliberation the Court having determined that the relief requested in

the Motion is (i) in the best interests of the Debtors, their estates and their creditors and

(ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their

employees; and good and sufficient cause having been shown;

---

[1]     The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

[2]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.       The Motion is GRANTED as set forth herein.

2.       On _____, 2016, at _____ \_\_\_.m. (ET), a hearing will be held before this Court to consider the relief sought in the Motion on a final basis.  All objections, if any, to the Motion shall be in writing and filed with this Court and served on counsel for the Debtors, any duly appointed committee, and the Office of the United States Trustee for the Southern District of Texas, so as to be received on or before _____, 2016 at 4:00 p.m. (ET).

3.       The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Compensation, Prepetition Expenses, Prepetition Deductions, Prepetition Benefits, Supplemental Workforce Obligations and Prepetition Processing Costs that were accrued and unpaid as of the Petition Date in an aggregate amount not to exceed $275,000 and to continue to pay such costs in the ordinary course of business.

4.       Nothing in this Interim Order is authorizing or approving any payment in violation of section 503(c) of the Bankruptcy Code.

5.       Notwithstanding any other provision of this Interim Order, pending entry of a final order, nothing in this Order shall authorize the Debtors to make any payment to or on behalf of any employee on account of prepetition wages and other compensation obligations in excess of the statutory caps set forth in section 507(a)(4) and (5) of the Bankruptcy Code.

6.       The Banks are authorized, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to Prepetition Compensation, Prepetition Expenses, Prepetition Deductions, Prepetition Benefits, Supplemental Workforce Obligations and Prepetition Processing Costs, whether such checks were presented or funds transfer requests

-2-

were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.  The Banks shall not be liable to any party on account of:  (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires or ACH Payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH Payments; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

7.     Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order either: (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition.

8.     Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors would constitute a Supplemental Workforce Obligation or a claim for Prepetition Compensation, Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, or Prepetition Processing Costs; or (e) the assumption of any contract.

9.      Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders authorizing debtor in possession financing and/or granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such financing and/or cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such financing and/or cash collateral orders shall control.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

11.     This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

-4-

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | (Emergency Hearing Requested) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO PAY**
**PREPETITION EMPLOYEE WAGES, BENEFITS AND RELATED ITEMS**

       This matter coming before the Court on the Motion For An Order Authorizing the

Debtors to Pay Prepetition Employee Wages, Benefits And Related Items (the "Motion");[2] the

Court having reviewed the Motion and the First Day Declaration and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it

is applicable; and after due deliberation the Court having determined that the relief requested in

the Motion is (i) in the best interests of the Debtors, their estates and their creditors and

(ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their

employees; and good and sufficient cause having been shown;

---

[1]    The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Compensation, Prepetition Expenses, Prepetition Deductions, Prepetition Benefits, Supplemental Workforce Obligations and Prepetition Processing Costs that were accrued and unpaid as of the Petition Date in an aggregate amount not to exceed $275,000 and to continue to pay such costs in the ordinary course of business.

3.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Discretionary Bonuses to employees that are not a part of any Court-approved incentive or retention program approved by the Court in an aggregate amount not to exceed $100,000.

4.      Nothing in this Final Order is authorizing or approving any payment in violation of section 503(c) of the Bankruptcy Code.

5.      Notwithstanding any other provision of this Final Order, nothing in this Order shall authorize the Debtors to make any payment to or on behalf of any employee on account of prepetition wages and other compensation obligations in excess of the statutory caps set forth in section 507(a)(4) and (5) of the Bankruptcy Code.

6.      The Banks are authorized, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to Prepetition Compensation, Prepetition Expenses, Prepetition Deductions, Prepetition Benefits, Supplemental Workforce Obligations and Prepetition Processing Costs, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.  The

Banks shall not be liable to any party on account of:  (a) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry); (b) the honoring of any prepetition checks, drafts, wires or ACH Payments in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wire or ACH Payments; or (c) an innocent mistake made despite implementation of reasonable handling procedures.

7.      Any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order either: (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall not be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition.

8.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors would constitute a Supplemental Workforce Obligation or a claim for Prepetition Compensation, Prepetition Expenses, Prepetition Benefits, Prepetition Deductions, or Prepetition Processing Costs; or (e) the assumption of any contract.

9.      Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders authorizing debtor in possession financing and/or granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets

governing or relating to such use), and to the extent there is any inconsistency between the terms

of such financing and/or cash collateral orders and any action taken or proposed to be taken

hereunder, the terms of such financing and/or cash collateral orders shall control.

          10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with

respect to the payments authorized by this Order.

          11.     This Order shall be immediately effective and enforceable upon its entry.

To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule

6004(h) is hereby waived.


Dated: _____, 2016        _____

                                                  UNITED STATES BANKRUPTCY JUDGE