## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
| Debtors. | : | (Jointly Administered) |

## ORDER (I) AUTHORIZING (A) THE SALE OF CERTAIN NON-DESIGNATED ASSETS TO CLOVELLY OIL CO. LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (II) GRANTING RELATED RELIEF

Upon the Debtors' Motion for Entry of (I) an Order Establishing Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) an Order Approving the Sale of Such Assets and (III) Granting Related Relief [Docket No. 100] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors")[3] for entry of an order (this "Order"), among other things, (a) authorizing the sale (the "Sale") of the Assets (as defined in the Purchase Agreement (as defined below)) to Clovelly Oil Co. LLC (or any permitted assignee pursuant to the terms of the Purchase Agreement, the "Buyer"), pursuant to the Asset Purchase

---

[1]   The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase Agreement (as defined herein), as applicable; *provided* that in the event of any conflict with respect to the meaning of a capitalized term between the Motion and the Purchase Agreement, the meaning ascribed to such term in the Purchase Agreement shall control.

[3]   All references to the "Debtors" shall include the debtors and their estates.

Agreement between the Debtors and the Buyer, dated as of February 1, 2017 (together with all other documents contemplated thereby, as such agreement may be amended, restated or supplemented, the "Purchase Agreement"), a copy of which is attached hereto as **Exhibit 1** and is incorporated herein by reference as if set forth herein, free and clear of all Liens, Claims and Interests (each as defined herein); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Buyer; and (c) granting related relief, all as more fully set forth in the Motion; and the Court having entered the Order (I) Approving Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) Approving the Sale of Such Assets, (III) Approving the Form and Manner of Notice of the Related Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Scheduling an Auction and Sale Hearing [Docket No. 183] (the "Bidding Procedures Order"); and the Debtors having filed the Notice of Auction of the Debtors' Non-Designated Assets [Docket No. 324] (the "Notice of Auction") stating that the Debtors would conduct an auction (the "Auction") for the Assets; and the Debtors having filed the  Notice of Designation of Successful Bidders for Certain of the Non-Designated Assets  [Docket No. 390] (the "Notice of Successful Bidders") identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures Order; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest; and the Court having reviewed the Motion and having heard the statements and evidence in support of the relief requested therein at a hearing before the Court that commenced on February 10, 2017 (the "Sale Hearing"); and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

## Findings of Fact and Conclusions of Law

A.     The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

## Jurisdiction and Venue

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Without limiting the generality of the foregoing, this Court has exclusive *in rem* jurisdiction over the Assets pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## Statutory Predicates

C.     The statutory and other legal bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014.  The consummation of the transactions contemplated by the Purchase Agreement and this Order (the "Transactions") is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and the Debtors, the Buyer and their affiliates have complied with all of the applicable requirements of such sections and rules in respect of the Transactions.

**Notice**

D.      As evidenced by the affidavits and/or certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the executory contracts and unexpired leases specified as of the date hereof pursuant to the Purchase Agreement (the "Assigned Contracts" and the "Assigned Leases," respectively), the Cure Costs (as defined below), the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and in compliance with the Bidding Procedures Order, to all interested persons and entities.

E.      The Debtors served notices substantially in the form included in the *Notice of (A) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) Proposed Cure Costs* [Docket No. 231] (each a "Notice of Assumption and Assignment"), in accordance with the Bidding Procedures Order, identifying, among other things, the Cure Costs (as defined below).  The Debtors served the Notice of Assumption and Assignment on each of the non-Debtor counterparties to the Assigned Contracts and the Assigned Leases. The service of the Notice of Assumption and Assignment was sufficient under the circumstances and in full compliance with the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases or the Cure Costs.

F.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith),

the assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases, the Cure Costs, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests, and all deadlines related thereto is or shall be required.

**Marketing and Sale Process**

G.     The Sale of the Assets to the Buyer pursuant to the Bidding Procedures is duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f).  As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals, agents, and other representatives have marketed the Assets and conducted all aspects of the sale process, including the solicitation of bids for the Auction, in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process undertaken by the Debtors and their professionals, agents and other representatives with respect to the Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.

H.     The Bid Deadline passed at 5:00 p.m. (prevailing Central Time), on January 17, 2017 in accordance with the Bidding Procedures and Bidding Procedures Order.  On January 20, 2017, the Debtors filed the Notice of Auction stating that the Debtors would conduct the Auction for the Assets.  The Debtors conducted an Auction on January 24, 2017 in accordance with the Bidding Procedures and Bidding Procedures Order.  Pursuant to the terms of the Bidding Procedures, the Transactions contemplated by the Purchase Agreement constituted the highest and best bid for the Assets at the Auction and, therefore, were designated as the Successful Bid.  On February 3, 2017, the Debtors filed the Notice of Successful Bidders identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding

Procedures Order.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtors, the Buyer and all of their affiliates.  The Bidding Procedures afforded a full, fair and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Assets, and the Purchase Agreement constitutes the best and highest offer for the Assets.

### Highest and Best Offer; Business Judgment

I.       The Debtors have demonstrated a sufficient basis to enter into the Purchase Agreement, sell the Assets on the terms outlined therein and assume and assign the Assigned Contracts and the Assigned Leases to the Buyer under sections 363 and 365 of the Bankruptcy Code.  All such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors, their estates and other parties in interest. Approval of the Sale pursuant to the Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates and all other parties in interest.

J.       The offer of the Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive marketing, including through the Bidding Procedures, (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest and (iii) constitutes full and adequate consideration, is fair and reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Assets under the Bankruptcy Code.

**Opportunity to Object**

K.     A reasonable opportunity to object or be heard with respect to the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases, the Cure Costs, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests, and all deadlines related thereto has been afforded to all interested persons and entities.

**Good Faith Purchaser; Arm's Length Sale**

L.     The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from arm's length bargaining positions.  Neither the Debtors, the Buyer nor any parent or affiliate of the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

M.     The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

**Free and Clear Transfer Required by Buyer**

N.     The Buyer would not have entered into the Purchase Agreement and would not have consummated the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if each of the Sale and the assumption and assignment of the Assigned Contracts and the Assigned Leases to the Buyer were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities) as more fully set forth in Paragraph 5 of this Order, or if the Buyer would, or in the future could, be liable for any of the Excluded Liabilities.

O.     As of the Closing, pursuant and subject to the terms of the Purchase Agreement and this Order, the transfer of the Assets and of the Assumed Liabilities and the Sale will effect a legal, valid, enforceable, and effective transfer of the Assets and will vest the Buyer with all of the Debtors' rights, title, and interests in the Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities).

**Satisfaction of Section 363(f)**

P.     The Debtors may sell the Assets free and clear of any and all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims and/or Interests, and holders of any consent and preferential purchase rights related to oil and gas interests, and any non-Debtor counterparties to the Assigned Contracts and Assigned Leases, who did not object, or who withdrew their objection, to the Sale, the Motion, the assumption and assignment of the applicable Assigned Contract or Assigned Lease or the associated Cure Cost are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens, Claims or Interests and non-Debtor parties to Assigned Contracts and Assigned Leases that did not object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

Q.     Upon the information and belief of the Debtors, affiliates of Morgan Stanley Energy Capital Inc. ("MSEC"), as DIP Lender and Prepetition First Lien Administrative Agent and Highbridge Principal Strategies, LLC ("HPS"), as the Prepetition Second Lien Lender

have consented to the sale of the Assets pursuant to section 363(f).  In addition, certain holders of valid, enforceable, perfected and unavoidable statutory, materialman's, mechanic's, repairman's, employee's, contractor's, operator's and other similar liens or Encumbrances arising prior to the commencement of the Bankruptcy Case, or to valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case that are as of the date of this Order senior to the liens or Encumbrances associated with the First Lien Credit Agreement and the DIP Credit Agreement (such liens and Encumbrances, if any, "Senior Liens") have consented to the sale of the Assets pursuant to section 363(f). The Liens, Claims and Interests of MSEC, HPS and the holders of Senior Liens with respect to the Assets shall automatically attach to the proceeds derived from the sale of such Assets in their original order of priority with the same validity, force and effect as they had against the applicable Non-Designated Assets prior to such sale.

<u>**Assigned Contracts and Assigned Leases**</u>

      R.    The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts and the Assigned Leases to the Buyer in each case in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Assigned Contracts and the Assigned Leases to the Buyer is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts and the Assigned Leases being assigned to the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assigned Contracts and the Assigned Leases are reasonable and enhance the value of the Debtors' estates.  Any non-Debtor counterparty to an Assigned Contract or Assigned

Lease that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

### Time Is of the Essence; Waiver of Stay

S.      Time is of the essence in consummating the Sale.  In order to maximize the value of the Assets, it is essential that the sale and assignment of the Assets occur within the time constraints set forth in the Purchase Agreement.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### Motion is Granted

1.      The relief requested by the Motion is granted as set forth herein.

### Objections Overruled

2.      All objections to the entry of this Order or to the relief granted herein, whether filed, stated on the record before this Court or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits.  All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

### Approval of the Purchase Agreement

3.      The Purchase Agreement, including all of the terms and conditions thereof, is hereby approved.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreement and to consummate the

Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order, without further leave of the Court.

4.      The Debtors are authorized and directed, in accordance with the Purchase Agreement, to execute and deliver, and empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

## Transfer of the Assets Free and Clear

5.      The Buyer shall assume and be liable for only those liabilities expressly assumed pursuant to the Purchase Agreement.  Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, with the sole exception of the Assumed Liabilities, because, inter alia, MSEC, HPS and the holders of Senior Liens have consented to the sale of the Assets pursuant to section 363(f) in connection with the automatic attachment of their respective Liens, Claims and Interests to the proceeds derived from the sale of such Assets in their original order of priority with the same validity, force and effect as they had against the applicable Assets prior to such sale.  For purposes of this Order, "Liens," "Claims," and "Interests" shall mean:

    a.      any and all Encumbrances, charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges,

security interests, options, hypothecations, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of offset, setoff and recoupment, successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, restrictions on transferability of any type, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Buyer, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Assets, any similar rights, and third-party interests or any other restrictions or limitations of any kind with respect to the Assets (collectively, "Liens");

b.      any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA (as defined below), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§2101 et seq.), (ii) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (iii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (iv) any rights related to intercompany loans and receivables between the Debtors and any non-Debtor subsidiary or affiliate, (v) any Excluded Liabilities, (vi) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease to which a Debtor is a party that is

not an Assigned Contract or an Assigned Lease that will be assumed and assigned pursuant to this Order and the Purchase Agreement, (vii) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (viii) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority, and (ix) any and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff, recoupment, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Assets, the Assigned Contracts, or the Transactions contemplated by the Purchase Agreement (collectively, "Claims"); and

c.    any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Debtors or their respective affiliates, subsidiaries, successors or assigns, (y) the Assets, or (z) the Assigned Contracts (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.

### Deemed Consent and Waiver of Preferential Purchase Rights

6.    Parties with an oil and gas interest, including, without limitation, a royalty interest or working interest providing for consent rights or preferential purchase rights with respect to certain of the Assets and who received actual or constructive notice in accordance with

the applicable provisions of the Purchase Agreement and the Bidding Procedures Order and failed to timely object are hereby deemed to consent to the Sale and/or waive their ability (if any) to exercise any preferential purchase right or consent right with respect to the Sale.

## Police and Regulatory Power of Governmental Units

7.       Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental unit under any applicable Environmental Laws on the part of any entity as the owner or operator of property after the Closing. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of these chapter 11 cases or, to the extent provided by section 525 of the Bankruptcy Code, the consummation of the Transactions contemplated by the Purchase Agreement, including, without limitation, the Sale and the Debtors' assumption and assignment of the Assigned Contracts and Assigned Leases to the Buyer.

## Assumption and Assignment of Assigned Contracts and Assigned Leases

8.       Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

9.       The Debtors are hereby authorized, in accordance with the Purchase Agreement, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the Assigned Contracts and the Assigned Leases, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims and

Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities), which Assigned Contracts and Assigned Leases, by operation of this Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem necessary to assign and transfer the Assigned Contracts and the Assigned Leases to the Buyer.

     10. All defaults and all other obligations of the Debtors under the Assigned Contracts and the Assigned Leases occurring, arising or accruing prior to the assignment thereof to the Buyer at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract and Assigned Lease in the amounts set forth in the Notice of Assumption and Assignment or any supplemental Notice of Assumption and Assignment (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to an Assigned Contract or Assigned Lease), which was served in compliance with the Bidding Procedures Order (the "Cure Costs"), and which Cure Costs were satisfied, or shall be satisfied as soon as practicable, by the Debtors or by the Buyer, as the case may be, as provided in the Purchase Agreement.  For all Assigned Contracts and Assigned Leases for which a Notice of Assumption and Assignment was served, the Debtors and the Buyer, as applicable, are each authorized and directed to pay their respective portion of all Cure Costs required to be paid by such parties in accordance with the Purchase Agreement upon the Closing.

## No Successorship or Transferee Liability

11.     Neither the Buyer nor any of its affiliates are or shall be deemed, as a result of the consummation of the Transactions contemplated herein, to: (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect. Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreement or this Order.

## Modification of the Automatic Stay

12.     The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

## Effect of Recordation of Order

13.     This Order, once filed, registered or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities) existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries and all other persons and entities who may be required by

16

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Assets. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement, including, without limitation, recordation of this Order.

## No Interference

14.     Following the Closing, no holder of a Lien, Claim and/or Interest in or against the Debtors or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Debtors may take in their bankruptcy cases or any successor cases.

## Retention of Jurisdiction

15.     This Court retains jurisdiction prior to, on, and after Closing to, among other things, interpret, enforce and implement the terms and provisions of the this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining jurisdiction to: (a) compel delivery of the Assets or performance of other obligations owed to the Buyer; (b) compel performance of obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement; (d) interpret, implement, and enforce the provisions of this Order; (e) determine whether any lien or Encumbrance constitutes a Senior Lien (f) determine any claim, cause, cause of action, or controversy brought by the Buyer relating to the Purchase Agreement or the Assets or that constitute Assets, and (g) protect the Buyer and its affiliates against (i) any Liens, Claims and Interests in or against the Debtors or

the Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Assets that may be in their possession.

**No Stay of Order**

16.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale under the Purchase Agreement at any time pursuant to the terms thereof.

**Good Faith Purchaser**

17.     The Sale contemplated by the Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Buyer has acted without collusion, undertaking the Sale and Transactions contemplated by the Purchase Agreement.   Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment by the Debtors of any of the Assigned Contracts and the Assigned Leases), unless such authorization is duly stayed pending such appeal.   The Buyer is a buyer in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

18.     There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

**Inconsistencies with Prior Orders, Pleadings or Agreements**

19.　　To the extent of any conflict between the Purchase Agreement and this Order, the terms of this Order shall govern.　To the extent this Order is inconsistent or conflicts with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.

Dated: _____, 2017　　　　_____
　　　　Houston, Texas　　　　　　　　THE HONORABLE DAVID R. JONES
　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Purchase Agreement**

ASSET PURCHASE AGREEMENT

DATED AS OF FEBRUARY 1ST, 2017

BY AND AMONG

SHORELINE SOUTHEAST  LLC,

AS SELLER,

AND

CLOVELLY OIL CO. LLC

AS BUYER

TABLE OF CONTENTS

## ARTICLE 1

**DEFINITIONS**   1
1.1      Definitions.................................................................................. 1
1.2      Other Definitions and Interpretive Matters. .......................................... 6

## ARTICLE 2

**PURCHASE AND SALE**   7
2.1      Purchase and Sale.......................................................................... 7
2.2      Excluded Assets. ........................................................................... 8
2.3      Assumed Liabilities. ...................................................................... 8
2.4      Cure Costs; Desired 365 Contracts. .................................................... 8
2.5      Assignment of Assets Subject to Consent Requirements. ........................... 9
2.6      Further Assurances........................................................................ 10

## ARTICLE 3

**PURCHASE PRICE**   10
3.1      Purchase Price............................................................................. 10

## ARTICLE 4

**CLOSING**   10
4.1      Closing Date................................................................................ 10
4.2      Payment on the Closing Date............................................................ 11
4.3      Buyer's Deliveries........................................................................ 11
4.4      Seller's Deliveries. ....................................................................... 11

## ARTICLE 5

**REPRESENTATIONS AND WARRANTIES OF SELLER**   12
5.1      Organization and Good Standing........................................................ 12
5.2      Authority; Validity; Governmental Authority Consents............................. 12
5.3      No Conflict................................................................................. 12
5.4      Brokers or Finders........................................................................ 13

## ARTICLE 6

**REPRESENTATIONS AND WARRANTIES OF BUYER**   13
6.1      Organization and Good Standing........................................................ 13
6.2      Authority; Validity; Consents. .......................................................... 13
6.3      No Conflict................................................................................. 13
6.4      Litigation................................................................................... 14
6.5      Bankruptcy................................................................................. 14
6.6      Brokers or Finders........................................................................ 14
6.7      Financing................................................................................... 14

## ARTICLE 7

**ACTIONS PRIOR TO THE CLOSING DATE** .............................................................. **14**
7.1          Bankruptcy Court Approval. ......................................................... 14
7.2          Updates and Amendments of Exhibits, Schedules and Disclosure Schedules. ............... 14
7.3          Sale Free and Clear ..................................................................... 14

## ARTICLE 8

**ADDITIONAL AGREEMENTS** ............................................................................. **15**
8.1          Assigned Contracts: Adequate Assurance and Performance. ........................... 15
8.2          Disclaimers. .................................................................................. 15

## ARTICLE 9

**CONDITIONS PRECEDENT TO OBLIGATIONS TO CLOSE** ............................................ **15**
9.1          Accuracy of Representations. ......................................................... 15
9.2          Performance. ................................................................................. 16
9.3          No Order. ...................................................................................... 16
9.4          Deliveries. .................................................................................... 16
9.5          Sale Order. .................................................................................... 16

## ARTICLE 10

**TERMINATION** ............................................................................................. **16**
10.1         Termination. ................................................................................. 16

## ARTICLE 11

**GENERAL PROVISIONS** ................................................................................... **17**
11.1         Notices. ........................................................................................ 17
11.2         Waiver; Waiver of Damages. ........................................................... 18
11.3         Entire Agreement; Amendment. ...................................................... 18
11.4         Assignment. .................................................................................. 18
11.5         Severability. .................................................................................. 18
11.6         Expenses. ..................................................................................... 18
11.7         Time of the Essence. ..................................................................... 19
11.8         Specific Performance. ................................................................... 19
11.9         Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver. ........ 19
11.10        Counterparts. ............................................................................... 20
11.11        Parties in Interest; No Third Party Beneficiaries. ............................. 20
11.12        Disclosure Schedules; Materiality. ................................................. 20

## SCHEDULES:

Schedule 2.1(b)(v)          Miscellaneous Corporate Property
Schedule 2.4(a)            365 Contracts and Estimated Cure Costs
Schedule 2.4(b)            Desired 365 Contracts

## DISCLOSURE SCHEDULES:

Disclosure Schedule 4.4(g)        Suspense Funds
Disclosure Schedule 8.1(c)        Seller Credit Obligations

## EXHIBITS:

Exhibit A          Assigned Leases and Interests
Exhibit B          Wells
Exhibit C          Equipment
Exhibit D          Surface Rights
Exhibit E          Form of Sale Order

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated February 1st, 2017 (the "Effective Date"), is by and among Shoreline Southeast LLC, a Delaware limited liability company, whose address is 16801 Greenspoint Park Drive, Suite 380, Houston, TX 70060 ("Seller"), and Clovelly Oil Co. LLC, whose address is 650 Poydras Street, Suite 2350, New Orleans, LA 70130 ("Buyer"). Capitalized terms used but not otherwise defined herein have the meanings set forth in Article 1. Seller and Buyer are sometimes referred to collectively herein as the "Parties" and individually as a "Party".

### RECITALS

WHEREAS, Seller is engaged in the business of oil and natural gas exploration, development and production in the United States of America, and own, in varying proportions, certain oil and gas leases and associated assets more particularly described in Section 2.1;

WHEREAS, on November 2, 2016, Seller commenced a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court");

WHEREAS, Seller desires to sell to Buyer all of the Assets, and Buyer desires to purchase from Seller all of the Assets and assume all of the Assumed Liabilities, upon the terms and conditions hereinafter set forth;

WHEREAS, the parties hereto intend to effectuate the transactions contemplated by this Agreement through a sale of the Assets pursuant to Sections 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, Seller's ability to consummate the transactions set forth in this Agreement is subject to, among other things, the entry of the Sale Order by the Bankruptcy Court;

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1

### DEFINITIONS

1.1     Definitions.

For purposes of this Agreement, the following terms have the meanings specified or referenced below.

"Action" means any legal or equitable action, suit or arbitration, or any inquiry, audit, proceeding or investigation, by or before any Governmental Authority.

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly (through one or more intermediaries) Controls, is Controlled by, or is under common Control with, such specified Person.

"Assignment" means a form of Assignment, Bill of Sale, Deed, and Conveyance mutually agreed to by the Parties whereby Seller will convey, subject to the Permitted Encumbrances, the Assets to Buyer on a by, though and under (but not otherwise) basis.

"Auction" has the meaning set forth in the Bid Procedures.

"Bankruptcy Case" means the case commenced by Seller and its Affiliates under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, styled In re: Shoreline Energy LLC, et al., jointly administered under Case No. 16-35571, and pending before the Bankruptcy Court.

1

"Bankruptcy Code" means Title 11 of the United States Code, Sections 101 *et seq.*

"Bid Deadline" has the meaning set forth in the Bid Procedures Order.

"Bid Procedures" means the Bidding Procedures for the Sale of the Debtors' Assets attached as an exhibit to, and approved by, the Bid Procedures Order.

"Bid Procedures Order" means that certain Order (I) Approving Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) Approving the Sale of Such Assets, (III) Approving the Form and Manner of Notice of the Related Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Scheduling an Auction and Sale Hearing [Docket No. 100] that was entered in connection with the Bankruptcy Case on December 15, 2016.

"Business Day" means any day, other than Saturday or Sunday, on which commercial banks are open for commercial business with the public in Houston, Texas.

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any agreement, contract, obligation, promise or undertaking (in each case, whether written or oral), other than a Lease, that is legally binding.

"Control" means the ability (directly or indirectly through one or more intermediaries) to direct or cause the direction of the management or affairs of a Person, whether through the ownership of voting interests, by contract or otherwise.

"Cure Costs" means any and all cure and reinstatement costs or expenses relating to the assignment and assumption of a 365 Contract.

"Designated Assets APA" means that certain Asset Purchase Agreement filed in the Bankruptcy Case on December 22, 2016 by and among Seller, certain of Seller's Affiliates, SLF SL Purchaser, LLC and Morgan Stanley Energy Capital Inc.

"Encumbrance" means any charge, lien, claim, mortgage, lease, sublease, hypothecation, deed of trust, pledge, security interest, option, right of use or possession, right of first offer or first refusal (or similar right), right of setoff, successor liability, easement, servitude, restrictive covenant, covenant running with the land, encroachment, encumbrance, Third Party restriction or other restriction or limitation of any kind, and any dedication under any gathering, transportation, treating, purchaser or similar agreements.

"Environmental Laws" means any and all Legal Requirements, each as amended or supplemented from time to time, and any applicable administrative or judicial interpretation thereof, whose purpose is to regulate harmful or deleterious substances or to conserve or protect health, the environment, wildlife or natural resources.

"Excluded Liabilities" means all Liabilities other than the Assumed Liabilities.

"Final Order" means an order, ruling, decision, verdict, decree, writ, subpoena, mandate, precept, command, directive, consent, approval, award, judgment, injunction or other similar determination or finding by, before, or under the supervision of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, (i) which has not been reversed, stayed, modified, amended, enjoined, set aside, annulled or suspended and (ii) with respect to which no stay shall have been issued in connection with any notice of appeal or petition for certiorari filed within any deadline provided by applicable Legal Requirements.

"Governmental Authority" means any court or tribunal (including an arbitrator or arbitral panel) in any jurisdiction (domestic or foreign) or any federal, tribal, state, parish, county, municipal or other governmental or quasi-governmental body, agency, authority, department, board, commission, bureau, official or other authority or instrumentality.

2

"Governmental Authorization" means any approval, consent, license, permit, waiver or other authorization issued, granted or otherwise made available by or under the authority of any Governmental Authority.

"Hydrocarbons" means oil, gas, minerals, and other gaseous and liquid hydrocarbons, or any combination of the foregoing, produced from and attributable to the Properties.

"Imbalances" means over-production or under-production or over-deliveries or under-deliveries with respect to Hydrocarbons produced from or allocated to the Properties, regardless of whether such over-production or under-production or over-deliveries or under-deliveries arise at the wellhead, pipeline (taking into account any line fill), gathering system, transportation system, processing plant, or other location, including any imbalances under gas balancing or similar agreements, imbalances under production handling agreements, imbalances under processing agreements, imbalances under the Assigned Leases and Interests, imbalances under gathering or transportation agreements, and imbalances under operating agreements.

"Imperial Capital" means Imperial Capital, LLC, as the investment banker and financial advisor to Seller.

"Lease" means any oil and gas lease, oil, gas and mineral lease or sublease, and other leasehold interest, and the leasehold estates created thereby, including carried interests, rights of recoupment, options, reversionary interests, convertible interests and rights to reassignment.

"Legal Requirement" means any federal, state, provincial, local, municipal, foreign, international, multinational, or other administrative Order, constitution, law, statute, ordinance, principle of common law, regulation, statute or treaty.

"Liability" means any and all claims, rights, demands, causes of action, liabilities (including civil fines), Taxes, obligations, damages, losses, fines, penalties, sanctions of every kind and character (including reasonable fees and expenses of attorneys, technical experts and expert witnesses), judgments or proceedings of any kind or character whatsoever, whether known or unknown, asserted or un-asserted, absolute or contingent, accrued or un-accrued, liquidated or unliquidated, or due or to become due, and whether arising or founded in law, equity, statute, contract, tort, strict liability or voluntary settlement, and all reasonable expenses, costs and fees (including reasonable attorneys' fees) in connection therewith.

"Master Assignment" means a form of Master Assignment, Bill of Sale, Deed, and Conveyance mutually agreed to by the Parties whereby Seller will convey, subject to the Permitted Encumbrances, the Assets to Buyer on a by, though and under (but not otherwise) basis.

"Mineral Interests" means all mineral fee interests, mineral interests, mineral rights (excluding Leases) and mineral servitudes in which Seller own an interest, including royalty interests, mineral royalty interests, overriding royalty interests, net profits interests, production payments, carried interests, reversionary interests (including rights under non-consent provisions), possibilities of reverter, conversion rights and options and other rights of a similar nature, whether legal or equitable, whether vested or contingent.

"Net Revenue Interest" means, with respect to any Asset, the percentage interest in and to all production of Hydrocarbons saved, produced and marketed from or allocated to such Asset after satisfaction of all royalties, overriding royalties, nonparticipating royalties, net profits interests, or other similar burdens on or measured by production of Hydrocarbons.

"Operating Agreement" means an operating agreement, joint operating agreement or similar agreement governing the development and/or production operations from one or more Wells or otherwise burdening one or more Assigned Lease and Interests.

"Order" means any award, writ, injunction, judgment, order or decree entered, issued, made, or rendered by any Governmental Authority.

"Outside Date" means February 28, 2017.

"Permitted Encumbrances" means any of the following:

(a) any rights, obligations, or duties reserved to or vested in any municipality or other Governmental Authority to: (i) control or regulate any Asset in any manner including all applicable Legal Requirements, (ii) purchase, condemn, expropriate, or recapture any Asset, (iii) consent to a purchase of any Asset, including the Post-Closing Consents, or (iv) use any Asset in any manner;

(b) the terms and conditions of all options, servitudes, contracts for sale, purchase, exchange, refining or processing of Hydrocarbons, operating agreements, unitization, pooling, and communitization agreements, declarations, or orders, construction agreements, construction and operation agreements, participation agreements, shoot-to-earn agreements, exploration agreements, partnership agreements, processing agreements, plant agreements, pipeline, gathering, exchange, and transportation agreements, disposal agreements, permits, licenses, and any other agreements affecting the Assets, in each case, to the extent constituting Assigned Contracts;

(c) easements, rights-of-way, servitudes, permits, surface leases and other similar rights on, over or in respect of any of the Assets;

(d) lessor's royalties, overriding royalties, production payments, net profits interests, reversionary interests upon termination of a lease and similar burdens with respect to a Well;

(e) defects or irregularities of title (i) as to which the relevant statute(s) of limitations or prescription would bar any attack or claim against Seller's title, (ii) arising out of lack of corporate authorization or a variation in corporate name, (iii) consisting of the failure to recite marital status or omissions of heirship proceedings in documents, or (iv) resulting from lack of survey unless a survey is required by applicable Legal Requirements, in each case, unless Buyer provides evidence that such defect or irregularity could result in another Person's superior claim to title;

(f) liens or other Encumbrances for current period Taxes not yet due and payable;

(g) valid, enforceable, perfected and unavoidable materialman's, mechanic's, repairman's, employee's, contractor's, operator's and other similar liens or Encumbrances (A) arising in the ordinary course of business for payments not yet delinquent that are inchoate and have not been perfected pursuant to law or that are contained in joint operating agreements or similar agreements covering the Assets and, in each case, that will be released at Closing from the Assets pursuant to the Sale Order without cost or Liability to Buyer or (B) arising prior to the commencement of the Bankruptcy Case;

(h) imbalances associated with the Assets;

(i) conventional rights of reassignment that have not been triggered on or prior to Closing;

(j) calls on Hydrocarbon production under any Assumed Contract;

(k) any defects or irregularities (other than liens, charges and Encumbrances) that do not, individually or in the aggregate, detract in any material respect from the value of, or materially interfere with the use or ownership of, the Assets subject thereto or affected thereby (as currently used or owned), which would be accepted by a reasonably prudent purchaser engaged in the business of owning and operating oil and gas properties (including without limitation rights of a Third Party working interest owner), and which do not, as to any Well, reduce Seller's Net Revenue Interest in such Well below that shown in Exhibit B, or increase Seller's Working Interest in such Well above that shown in Exhibit B without a proportionate increase in Net Revenue Interest for such Well;

(l) all Hard Consents; and

4

(m) any Encumbrances that will be expressly released by the Sale Order without cost or Liability to Buyer.

"Person" means any individual, corporation (including any non-profit corporation), partnership, limited liability company, joint venture, estate, trust, association, organization or other entity or Governmental Authority.

"Preferential Purchase Right" means any right or agreement that enables any Person to purchase or acquire any Asset or any interest therein or portion thereof as a result of or in connection with the execution or delivery of this Agreement or the consummation of the transactions contemplated hereby.

"Proceeding" means any Action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative or investigative) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority.

"Property Costs" means all direct operating expenses paid or payable to Third Parties and capital expenditures paid or payable to Third Parties incurred in the ownership and operation of the Assets and overhead costs charged by Third Parties to the Properties under any applicable Contract.

"Representative" means, with respect to a particular Person, any director, officer, member, manager, partner, employee, agent, consultant, advisor, investor, shareholder, contractor, subcontractor or other representative of such Person, including legal counsel, accountants and financial advisors.

"Sale Motion" means the Debtors' Motion of (I) an Order Establishing Bidding and Sale Procedures for the Sale of Debtors' Assets, (II) an Order Approving the Sale of Such Assets and (III) Granting Related Relief [Docket No. 100] filed in connection with the Bankruptcy Case by Seller on November 21, 2016 seeking entry of the Sale Order and approval of the transactions contemplated by this Agreement.

"Sale Order" means an Order of the Bankruptcy Court substantially in the form attached hereto as Exhibit E that authorizes and approves, *inter alia*, the sale of the Assets to Buyer on the terms and conditions set forth herein, free and clear of all Encumbrances, and the assumption and assignment of the Assigned Contracts and the Assigned Leases and Interests to Buyer, and containing a finding that Buyer has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code.

"Surface Rights" means all surface leases, subsurface leases, rights-of-way, licenses, easements, use or joint use agreements and other surface or subsurface rights agreements applicable to, or used or held in connection with the ownership, operation, maintenance or repair of, or the production, gathering, treatment, processing, storing, sale or disposal of Hydrocarbons or produced water from, the Properties, together with all surface fee interests in the lands covered by the Assigned Leases and Interests.

"Suspense Funds" means proceeds of production and associated penalties and interest in respect of any of the Assets that are payable to Third Parties and are being held in suspense by a Seller as the operator of such Assets.

"Tax" or "Taxes" (and with correlative meaning, "Taxable", "Taxation" "Taxing") means any federal, state, provincial, local, foreign or other income, alternative, minimum, add-on minimum, accumulated earnings, personal holding company, franchise, capital stock, net worth, capital, profits, intangibles, windfall profits, gross receipts, value added, sales, use, goods and services, excise, customs duties, transfer, conveyance, mortgage, registration, stamp, documentary, recording, premium, severance, environmental (including taxes under Section 59A of the Code), natural resources, real property, personal property, ad valorem, intangibles, rent, occupancy, license, occupational, employment, unemployment insurance, social security, disability, workers' compensation, payroll, health care, unclaimed property and escheat obligations, withholding, estimated or other tax of any kind whatsoever, whether computed on a

separate or consolidated, unitary or combined basis, or in any other manner, including any liability for such amounts as a result of a contractual obligation to indemnify any Person and including any interest, penalty or addition thereto, whether disputed or not.

"Third Party" means any Person other than a Seller, Buyer or any of their respective Affiliates.

"Transaction Documents" means this Agreement and any other agreements, instruments or documents entered into pursuant to this Agreement.

"Working Interest" means, for any Asset, the percentage of costs and expenses associated with the exploration, drilling, development, operation, maintenance and abandonment on or in connection with such Asset required to be borne with respect thereto, but without regard to the effect of any royalties, shut-in royalties, overriding royalties, production payments, carried interests, net profits interests, reversionary interests, back-in interests and other burdens upon, measured by or payable out of production.

    1.2    Other Definitions and Interpretive Matters.

    (a)    Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

    (i)    Calculation of Time Period. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day.

    (ii)    Dollars. Any reference in this Agreement to "Dollars" or "$" means United States dollars.

    (iii)    Exhibits; Schedules; Disclosure Schedules. All Exhibits, Schedules and Disclosure Schedules attached or annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Exhibit, Schedule or Disclosure Schedule but not otherwise defined therein shall be defined as set forth in this Agreement.

    (iv)    Gender and Number. Any reference in this Agreement to gender includes all genders, and words imparting the singular number only include the plural and vice versa.

    (v)    Headings. The provision of a table of contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement. All references in this Agreement to any "Section" or "Article" are to the corresponding Section or Article of this Agreement unless otherwise specified.

    (vi)    Herein. Words such as "herein," "hereof" and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.

    (vii)    Including. The word "including" or any variation thereof means "including, without limitation", and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

    (viii)    Statute. Unless otherwise specified, references to a statute means such statute as amended from time to time and includes any successor legislation thereto and any rules or regulations promulgated thereunder; *provided* that, for the purposes of the representations and warranties set forth herein, with respect to any violation of or non-compliance with, or alleged violation of or non-

compliance with, any Legal Requirement, the reference to such Legal Requirement means such Legal Requirement as in effect at the time of such violation or non-compliance or alleged violation or non-compliance.

(b)    <u>No Strict Construction</u>. Buyer, on the one hand, and Seller, on the other hand, participated jointly in the negotiation and drafting of this Agreement, and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by Buyer, on the one hand, and Seller, on the other hand, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement. Without limitation as to the foregoing, no rule of strict construction construing ambiguities against the draftsperson shall be applied against any Person with respect to this Agreement.

## ARTICLE 2

### PURCHASE AND SALE

2.1    <u>Purchase and Sale</u>.

(a)    Upon the terms and subject to the conditions of this Agreement, on the Closing Date, Seller shall sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered, to Buyer, and Buyer shall purchase from Seller, the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances).

(b)    The "<u>Assets</u>" shall be all right, title and interest of Seller in, to or under the following, save and except the Excluded Assets:

(i)    all Leases and Mineral Interests (other than the Excluded Leases and Interests) described on <u>Exhibit A</u> attached hereto and all other Leases that constitute, as of the Effective Date, Desired 365 Contracts, and those Lease interests and Mineral Interests located in, under or that may be produced from or attributable to (1) the lands covered by such Leases or Mineral Interests, and (2) the Leases and lands included in any units with which such Leases, the Mineral Interests or the lands covered thereby may have been pooled, unitized or communitized (collectively, the "<u>Assigned Leases and Interests</u>"), and all other interests of every kind and character in, to, under or derived from the Assigned Leases and Interests, as to all lands and depths covered thereby;

(ii)    all of the oil, gas, water, disposal, observation, injection or other wells located on or traversing the Assigned Leases and Interests, on lands located within any governmental or voluntary drilling or spacing unit (if applicable) which includes any portion thereof, or on portions thereof associated with proved undeveloped reserves as described on <u>Exhibit B</u> (collectively, the "<u>Wells</u>", and together with the Assigned Leases and Interests, the "<u>Properties</u>");

(iii)    all Hydrocarbons (or the proceeds from the sale of Hydrocarbons) produced from or attributable to the Properties from and after the Closing Date, along with all proceeds from the sale of any such Hydrocarbons;

(iv)    all equipment, machinery, fixtures and other tangible personal property and improvements located on, used or held for use, or otherwise obtained in connection with the ownership or operation of the Properties described on <u>Exhibit C</u> (collectively, the "<u>Equipment</u>");

(v)    all vehicles and other rolling stock, office leases, field offices (other than field offices used solely in connection with the Excluded Leases and Interests), storage yards, and data and software of Seller, described on <u>Schedule 2.1(b)(v)</u> (collectively, the "<u>Miscellaneous Corporate Property</u>");

(vi)     all pipes, casing, tubing, tubulars, fittings, meters, and other spare parts, supplies, tools, and materials located on, used or held for use on or held as inventory in connection with the ownership or operation of the Properties, Miscellaneous Corporate Property or Equipment;

(vii)     all permits, licenses, authorizations, franchises, grants, easements, variances, exceptions, consents, certificates, approvals and related instruments or rights of any Governmental Authority or other Third Party, and any writ, judgment, decree, award, order, injunction or similar order, writ, ruling, directive or other requirement of any Governmental Authority (in each such case whether preliminary or final) required of Seller for the ownership, operation or use of the Assets, including the Properties, Miscellaneous Corporate Property or Equipment (collectively, the "Permits");

(viii)     (A) each Operating Agreement, insofar as such Operating Agreement pertains to any Property, and (B) all other Contracts that constitute, as of the Closing Date, Desired 365 Contracts (collectively, the "Assigned Contracts");

(ix)     all Surface Rights, including those described on Exhibit D;

(x)     all information, books, databases, files, records and data, whether in written or electronic format, relating directly to any Asset and/or to any Assumed Liabilities (collectively, the "Records");

(xi)     all indemnity rights, rights under any Contracts and all claims and rights of Seller against any Third Party, all claims, rights and interests of Seller or any Affiliate of any Seller under any policy or agreement of insurance or indemnity agreement, any bond or security instrument or any insurance or condemnation proceeds or awards and all audit rights and claims for reimbursements from Third Parties for any and all Property Costs, overhead or joint account reimbursements and revenues associated with all joint interest audits and other audits, in each case, to the extent related or attributable to the Assumed Liabilities; and

(xii) all rights to any refunds of Taxes (or other related costs or expenses) that are borne by or the responsibility of Buyer or to which Buyer is otherwise entitled hereunder.

2.2     Excluded Assets.

Notwithstanding the foregoing, the Assets shall not include, and there is excepted, reserved and excluded from the transaction contemplated hereby, including without limitation the following (collectively, the "Excluded Assets"):

(a)     the Purchase Price delivered to Seller pursuant to this Agreement;

(b)     all assets included in the definition of "Assets" in the Designated Assets APA; and

(c)     any assets of the Seller or any Affiliate of Seller not expressly included as Assets pursuant to Section 2.1 of this Agreement.

2.3     Assumed Liabilities.

Upon the terms and subject to the conditions of this Agreement and the Sale Order, on the Closing Date, Buyer shall assume and agree to discharge, when due (in accordance with their respective terms and subject to the respective conditions thereof), all Liabilities related to the Assets (collectively, the "Assumed Liabilities").

2.4     Cure Costs; Desired 365 Contracts.

(a)     Schedule 2.4(a) sets forth (i) a true, complete and accurate list of all of Seller's executory Contracts and unexpired Leases (each, a "365 Contract" and, collectively, the "365

8

Contracts") and (ii) Seller's good faith estimate of the amount of the Cure Costs for each 365 Contract (the "Estimated Cure Costs"). Schedule 2.4(b) sets forth a complete list of all 365 Contracts that Buyer desires to assume at the Closing (the "Desired 365 Contracts"). Without limiting Buyer's obligation to provide adequate assurance of performance pursuant to Section 8.1(a), upon Closing, Buyer shall pay or cause to be paid, pursuant to Section 365 of the Bankruptcy Code and the Sale Order, all agreed-upon Cure Costs relating to the assignment and assumption of the Desired 365 Contracts. In the event that any Cure Cost associated with any Desired 365 Contract is found to be greater than the Estimated Cure Costs for such Desired 365 Contract, then Buyer shall, at its election (A) increase the amount of the Cash Portion of the Purchase Price in an amount sufficient to cure any defaults under such Desired 365 Contract by paying to Seller such amount, or (B) remove the 365 Contract from Schedule 2.4(b) and such 365 Contract shall no longer constitute a "Desired 365 Contract".

(b)      At any time prior to the Closing Date, Buyer shall have the right to provide written notice to Seller of Buyer's election to:

(i)      designate a 365 Contract (including any 365 Contract that is a Desired 365 Contract immediately before such designation) as an Excluded Contract and Excluded Asset, and upon such designation such 365 Contract shall constitute an Excluded Contract and Excluded Asset (and, if applicable, shall cease to constitute an Asset); and

(ii)      designate a 365 Contract as a Desired 365 Contract, and upon such designation such 365 Contract shall constitute an Asset and Assigned Contract or Assigned Lease and Interest, as applicable, subject to conveyance under this Agreement at Closing (and, if applicable, shall cease to constitute an Excluded Asset).

2.5      Assignment of Assets Subject to Consent Requirements.

If prior to the Closing Date any consent to assignment applicable to the transactions contemplated hereby, other than Governmental Authority consents or approvals customarily obtained post-Closing (a "Post-Closing Consent"), (a) has not been obtained, waived or satisfied, or (b) is no longer applicable to the transactions contemplated hereby by reason of any Bankruptcy Court Order, and further, failure to obtain such Third Party consent or waiver may result in (A) the termination of an Asset or cause such Asset to be void or voidable, (B) or such Asset or the assignment of any such Asset to Buyer to be void or voidable, or (C) material Liabilities to Buyer, or (D) an adverse effect on the value, ownership, operation or development of any Asset (each such consent, a "Hard Consent"), the Properties affected by such Third Party Hard Consent shall be held back from the Assets conveyed at Closing. From and after the date hereof Seller shall use commercially reasonable efforts to obtain any Hard Consents (including delivering notices to all Third Parties holding any Hard Consents as promptly as practicable following the date of this Agreement). If a Hard Consent is obtained following Closing, any Property so held back at the Closing will be conveyed to Buyer within ten (10) Business Days after such Hard Consent has been obtained, waived or otherwise satisfied; provided, that if any such Hard Consent is obtained on a date that is later than ninety (90) days after the Closing Date, Buyer may refuse to accept conveyance of the Property or Properties burdened thereby (at Buyer's sole discretion). At such subsequent closing, Seller shall contribute, assign, transfer and convey to Buyer, and Buyer shall acquire and accept from Seller, such Property pursuant to the terms of this Agreement. Except for Hard Consents, if any consents to the assignment of any Asset are not obtained prior to Closing, then with respect to each affected Asset, the affected Assets shall nevertheless be sold and conveyed to Buyer at the Closing and Buyer shall pay for the affected Asset(s) at Closing in accordance with this Agreement as though such consent had been obtained (including the payment by Buyer to Seller of the Allocated Value of such affected Asset(s)). In the case of licenses, certificates, approvals, authorizations, Leases, Contracts and other commitments included in the Assets (i) that cannot be transferred or assigned without the Hard Consent of Third Parties, which Hard Consent has not been obtained prior to the Closing (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, at Buyer's sole expense and subject to any

9

approval of the Bankruptcy Court that may be required, reasonably cooperate with Buyer in attempting to obtain such Hard Consent and, if any such Hard Consent is not obtained, Seller shall, following the Closing, at Buyer's election and at Buyer's sole expense and subject to any approval of the Bankruptcy Court that may be required, cooperate with Buyer in all reasonable respects to provide to Buyer the benefits thereof in some other manner, or (ii) that are otherwise not transferable or assignable (after giving effect to the Sale Order and the Bankruptcy Code), Seller shall, following the Closing, at Buyer's election and at Buyer's sole expense and subject to any approval of the Bankruptcy Court that may be required, reasonably cooperate with Buyer to provide to Buyer the benefits thereof in some other manner (including the exercise of the rights of Seller thereunder).

2.6     Further Assurances.

The Parties agree to (a) furnish upon request to each other such further information, (b) execute, acknowledge and deliver to each other such other documents (including, if reasonably requested by Buyer, the obtaining by Seller of further orders of the Bankruptcy Court) and (c) do such other acts and things, all as the other Party may reasonably request for the purpose of carrying out the intent of this Agreement and the Transaction Documents; *provided* that nothing in this <u>Section 2.6</u> shall prohibit any Seller from ceasing operations or winding up its affairs following the Closing.

## ARTICLE 3

### PURCHASE PRICE

3.1     Purchase Price.

The purchase price for the purchase, sale, assignment and conveyance of Seller's right, title and interest in, to and under the Assets shall consist of the following (collectively, the "<u>Purchase Price</u>"):

(a)     cash in an amount equal to (i) Ninety Six Thousand Dollars ($96,000.00) *plus* (ii) an amount equal to the Cure Costs of the Desired 365 Contracts and *minus* (iii) an amount equal to Fifty Six Thousand Dollars $56,000.00, representing the amount deposited by Buyer (the "<u>Deposit</u>") prior to the execution of this agreement (the resulting amount of Forty Thousand Dollars ($40,000.00) being the "<u>Cash Portion of the Purchase Price</u>"); and

(b)     the assumption of the Assumed Liabilities.

The Cash Portion of the Purchase Price shall be delivered by Buyer as set forth in <u>Section 4.2</u>. The Cash Portion of the Purchase Price shall be subject to increase as provided in <u>Section 2.4(a)</u>.

## ARTICLE 4

### CLOSING

4.1     Closing Date.

Upon the terms and subject to the conditions hereof, the closing of the sale of the Assets and the assumption of the Assumed Liabilities contemplated hereby (the "<u>Closing</u>") shall take place at the offices of Jones Day, 717 Texas Street, Suite 3300, Houston, Texas 77002 (or at such other location as the parties hereto may mutually agree), no later than three (3) Business Days following the date on which the conditions set forth in <u>Article 9</u> have been satisfied or (if permissible) waived (other than the conditions which by their nature are to be satisfied at the Closing, but subject to the satisfaction or (if permissible) waiver of such conditions). The date and time at which the Closing actually occurs is hereinafter referred to as the "<u>Closing Date</u>."

4.2     Payments on and after the Closing Date.

Subject to satisfaction or (if permissible) waiver of the conditions set forth in Article 9 at the Closing, Buyer shall pay (or cause to be paid) the Cash Portion of the Purchase Price set forth in Section 3.1(a) by wire transfer of immediately available funds to an account specified in writing by Seller prior to the Closing Date. To the extent Buyer elects to increase the Cash Portion of the Purchase Price in relation to any Desired 365 Contract in accordance with Section 2.4(a) hereof, upon such election Buyer shall pay (or cause to be paid) the amount of such increase by wire transfer of immediately available funds to an account specified in writing by Seller.

4.3     Buyer's Deliveries.

At the Closing, Buyer shall deliver or cause to be delivered to Seller (or such other Persons where so designated):

(a)     the Cash Portion of the Purchase Price to Seller in accordance with Section 4.2;

(b)     a Master Assignment, an Assignment for each jurisdiction in which the Assets are located and each other Transaction Document to which Buyer is a party, duly executed (and acknowledged, where applicable) by Buyer, including letters-in-lieu of transfer orders, change of operator forms to be prepared by Seller for Buyer's execution, change of operator notices required under applicable operating agreements, and any other applicable forms and declarations required by federal and state agencies relative to Buyer's assumption of operations and plugging and abandonment Liabilities with respect to all of the Assets, in each case, in a form reasonably acceptable to Seller;

(c)     evidence (including evidence of satisfaction of, or ability to satisfy upon Closing, all applicable bonding or insurance requirements) as Seller may reasonably request demonstrating that Buyer is qualified with the applicable Governmental Authorities and pursuant to any applicable operating agreement to succeed Seller as the owner and, where applicable, the operator of the Assets; and

(d)     such other assignments and other good and sufficient instruments of assumption and transfer, in form reasonably satisfactory to Seller, as Seller may reasonably request to transfer and assign the Assumed Liabilities to Buyer.

4.4     Seller's Deliveries.

At the Closing, Seller shall deliver to Buyer:

(a)     a Master Assignment, an Assignment for each jurisdiction in which the Assets are located and each other Transaction Document to which such Seller is a party (including letters-in-lieu of transfer orders and change of operator forms), and any other applicable forms required by federal and state agencies relative to the transfer of the ownership and/or operation of the Assets from Seller to Buyer, in each case in a form reasonably acceptable to Buyer, duly executed (and acknowledged, where applicable) by such Seller;

(b)     a certified copy of the Sale Order;

(c)     a certificate of non-foreign status of Seller meeting the requirements of Treasury Regulation Section 1.1445-2(b)(2);

(d)     assignments of Federal, State and Indian leases on forms prescribed therefor, duly executed by such Seller;

(e)     all Records, including electronic Records constituting Lease and royalty ownership detail and deck information with respect to the Assets;

11

(f)      a schedule listing the accrued Suspense Funds as of the Closing; and

(g)      such other bills of sale, deeds, endorsements, assignments and other good and sufficient instruments of conveyance and transfer, in form reasonably satisfactory to Buyer, as Buyer may reasonably request to vest in Buyer all the right, title and interest of such Seller in, to or under any or all the Assets, in each case, in a form reasonably acceptable to Buyer.

## ARTICLE 5

### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants the following to Buyer:

### 5.1      Organization and Good Standing.

Seller is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization. Seller has the requisite corporate power and authority to own or lease and to operate and use its properties and to carry on its business as now conducted. Seller is duly qualified or licensed to do business and is in good standing in each jurisdiction where the character of its business or the nature of its properties makes such qualification or licensing necessary, except for such failures to be so qualified or licensed or in good standing as would not, individually or in the aggregate, have a material adverse effect.

### 5.2      Authority; Validity; Governmental Authority Consents.

Seller has, subject to entry of the Sale Order, the requisite power and authority necessary to enter into and perform their obligations under this Agreement and the other Transaction Documents to which Seller is a party and to consummate the transactions contemplated hereby and thereby, and, subject to entry of the Sale Order, the execution, delivery and performance of this Agreement and such other Transaction Documents by Seller and the consummation by Seller of the transactions contemplated herein and therein have been duly and validly authorized by all requisite corporate action. This Agreement has been duly and validly executed and delivered by Seller and each other Transaction Document required to be executed and delivered by Seller at the Closing will be duly and validly executed and delivered by such Seller at the Closing. Subject to entry of the Sale Order, this Agreement and the other Transaction Documents constitute, with respect to Seller, the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms. Except for (a) entry of the Sale Order, (b) notices, filings and consents required in connection with the Bankruptcy Case, (c) any applicable notices, filing, consents or approvals under any applicable antitrust, competition or trade regulation or other Legal Requirements, and (d) the Post-Closing Consents, no Seller is required to give any notice to, make any filing with or obtain any consent from any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement and the other Transaction Documents or the consummation or performance of any of the transactions contemplated hereby and thereby, except as would not, individually or in the aggregate, reasonably be expected to have a material adverse effect.

### 5.3      No Conflict.

When the consents and other actions described in Section 5.2, including entry of the Sale Order, have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions provided for herein and therein will not result in the breach of any of the terms and provisions of, or constitute a default (with or without notice or lapse of time or both) under, or conflict with, or cause any acceleration of any obligation of any Seller under (a) any agreement, indenture, or other instrument to which any Seller is or the Assets are bound, (b) the certificate of incorporation, bylaws or other governing documents of any Seller, (c) any Order or (d) any Legal Requirement.

12

5.4     Brokers or Finders.

Except with respect to Imperial Capital, no Seller has incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payments in connection with this Agreement, the other Transaction Documents or the transactions contemplated hereby or thereby for which Buyer is or will become liable.

## ARTICLE 6

### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller as follows:

6.1     Organization and Good Standing.

Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware. Buyer has the requisite power and authority to own or lease and to operate and use its properties and to carry on its business as now conducted. Buyer is (or at the Closing will be) duly qualified or licensed to do business in the State(s) where the Assets are located and Buyer or Buyer's Affiliates will be duly qualified or licensed to own or lease and to operate and use oil and gas assets in the State(s) where the Assets are located.

6.2     Authority; Validity; Consents.

Buyer has the requisite power and authority necessary to enter into and perform its obligations under this Agreement and the other Transaction Documents to which it is a party and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated herein have been duly and validly authorized by all requisite limited liability company or corporate actions in respect thereof. This Agreement has been duly and validly executed and delivered by Buyer and each other Transaction Document to which Buyer is a party will be duly and validly executed and delivered by Buyer, as applicable, at the Closing. This Agreement and the other Transaction Documents to which Buyer is a party constitute the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms, except in each case as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or other similar Legal Requirements affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such principles are considered in a proceeding at law or in equity. Except for the Post-Closing Consents, Buyer is not or will not be required to give any notice to, make any filing with, or obtain any consent or approval from any Person in connection with the execution and delivery of this Agreement and the other Transaction Documents to which it is a party or the consummation or performance of any of the transactions contemplated hereby or thereby, except for such notices, filings, consents and approvals, the failure of which to provide, make or obtain, would not, individually or in the aggregate, affect Buyer's ability to perform its obligations under this Agreement or any other Transaction Documents or to consummate the transactions contemplated hereby or thereby.

6.3     No Conflict.

When the consents and other actions described in Section 6.2 have been obtained and taken, the execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions provided for herein and therein will not result in the breach of any of the terms and provisions of, or constitute a default under, or conflict with, or cause any acceleration of any obligation of Buyer under (a) any agreement, indenture or other instrument to which it is bound, (b) the certificate of formation or the limited liability company agreement of Buyer, as applicable, (c) any Order or (d) any Legal Requirement.

13

6.4     Litigation.

There are no Proceedings or Orders pending or, to the knowledge of Buyer, threatened against Buyer, that seek to restrain or prohibit or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby or that would, individually or in the aggregate, reasonably be expected to have a material adverse effect on Buyer's performance of any of its obligations and covenants hereunder that are to be performed prior to, at or after Closing.

6.5     Bankruptcy.

There are no bankruptcy, reorganization or arrangement proceedings pending, being contemplated by or, to the knowledge of Buyer, threatened against Buyer.

6.6     Brokers or Finders.

Neither Buyer nor any Person acting on behalf of Buyer has paid or become obligated to pay any fee or commission to any broker, finder, investment banker, agent or intermediary for or on account of the transactions contemplated by this Agreement for which Seller is or will become liable.

6.7     Financing.

Buyer has sufficient cash, available lines of credit or other sources of immediately available funds (in United States dollars) to enable it to pay the Purchase Price at Closing.

**ARTICLE 7**

**ACTIONS PRIOR TO THE CLOSING DATE**

7.1     Bankruptcy Court Approval.

Seller and Buyer each acknowledge that this Agreement and the sale of the Assets and the assumption and assignment of the Assigned Contracts and Assigned Leases and Interests are subject to Bankruptcy Court approval.

7.2     Updates and Amendments of Exhibits, Schedules and Disclosure Schedules.

Until the Closing Date, Seller shall have the right (but not the obligation) to amend, modify and/or supplement its Disclosure Schedules with respect to any matters discovered or occurring subsequent to the Effective Date; *provided* that such amendments, modifications and/or supplements shall not be deemed to have been included in, or to modify or qualify, Seller's representations and warranties for any purpose under this Agreement.

7.3     Sale Free and Clear

Seller acknowledge and agree, and the Sale Order shall provide that, on the Closing Date and concurrently with the Closing, all then existing or thereafter arising obligations, Liabilities and Encumbrances of, against or created by Seller or their bankruptcy estate, to the fullest extent permitted by Section 363 of the Bankruptcy Code, shall be fully released from and with respect to the Assets. On the Closing Date, the Assets shall be transferred to Buyer and/or one or more designees of Buyer, as applicable, free and clear of all obligations, Liabilities and Encumbrances, other than the Assumed Liabilities to the fullest extent permitted by Section 363 of the Bankruptcy Code.

14

## ARTICLE 8

### ADDITIONAL AGREEMENTS

8.1     Assigned Contracts: Adequate Assurance and Performance.

(a)     With respect to each Assigned Contract, Buyer shall provide adequate assurance as required under the Bankruptcy Code of the future performance by Buyer of each such Assigned Contract.

(b)     From and after Closing, Buyer shall pay, perform or satisfy the Assumed Liabilities from time to time and as such Assumed Liabilities become due and payable or are required to be performed or satisfied in accordance with their respective terms.

(c)     Without limiting the provisions of Section 8.1(a), Buyer acknowledges that Seller has no duty to maintain any bonds, letters of credit, guarantees, cash deposits and insurance to secure performance or payment under any Assigned Contracts (collectively, "Seller Credit Obligations") after the Closing, and Buyer agrees to reasonably cooperate with Seller in Seller's efforts to secure the release of any Seller Credit Obligations posted by Seller. On or before the Closing, Buyer shall use commercially reasonable efforts to obtain, or cause to be obtained in the name of Buyer, replacements for the Seller Credit Obligations set forth on Disclosure Schedule 8.1(c). If any Seller Credit Obligation remains outstanding as of the Closing Date, Buyer shall indemnify each member of the Seller Group and hold them harmless against any Liabilities that the Seller Group may incur under any such Seller Credit attributable to periods from and after the Closing Date.

8.2     Disclaimers.

EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES OF SELLER EXPRESSLY SET FORTH IN THIS AGREEMENT AND THE SPECIAL WARRANTIES OF TITLE SET FORTH IN THE ASSIGNMENTS, (I) SELLER MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED OR OTHERWISE WITH RESPECT TO, OR IN RELATION TO, ANY OF THE ASSETS AND TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND BUYER EXPRESSLY WAIVES AND ACKNOWLEDGES THAT SELLER DOES NOT MAKE ANY SUCH WARRANTY OR REPRESENTATION, (II) SELLER EXPRESSLY DISCLAIM ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY, IN WRITING OR OTHERWISE) TO BUYER OR ANY OF ITS AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING, WITHOUT LIMITATION, ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO BUYER BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF SELLER OR ANY OF ITS AFFILIATES) AND (III) ALL PROPERTIES INCLUDED IN THE ASSETS SHALL BE CONVEYED BY SELLER AND ACCEPTED BY BUYER PRECISELY AND ONLY AS IS, WHERE IS, AND WITH ALL DEFECTS AND FAULTS WITHOUT RECOURSE AND WITHOUT WARRANTY (INCLUDING WITHOUT LIMITATION ANY WARRANTY OF TITLE).

## ARTICLE 9

### CONDITIONS PRECEDENT TO OBLIGATIONS TO CLOSE

The obligations of each Party to consummate the transactions contemplated by this Agreement are subject to the satisfaction or waiver in writing by the applicable Party, at or prior to the Closing, of each of the following conditions:

9.1     Accuracy of Representations.

The representations and warranties of each Party set forth in this Agreement shall be true and correct in all respects on and as of the Closing Date with the same effect as though such representations and warranties had been made on and as of the Closing Date (*provided* that

15

representations and warranties which are confined to a specified date shall speak only as of such date); and *provided, further*, that in the event of a breach of or inaccuracy in the representations and warranties of a Party set forth in this Agreement, the condition set forth in this Section 9.1 shall be deemed satisfied unless the effect of all breaches of or inaccuracies in such other representations and warranties made by such Party could reasonably be expected to, individually or in the aggregate, result in a material adverse effect.

9.2    Performance.

Each covenant and agreement that a Party is required to perform or to comply with pursuant to this Agreement at or prior to the Closing shall have been duly performed and complied with in all material respects (except those covenants and agreements that are qualified as to materiality or material adverse effect or similar expressions shall have been duly performed and complied with in all respects).

9.3    No Order.

No Governmental Authority shall have enacted, issued, promulgated or entered any Order or other Legal Requirement which is in effect and has the effect of making illegal or otherwise prohibiting the consummation of the transaction contemplated by this Agreement or would cause any of such transactions to be rescinded following the Closing.

9.4    Deliveries.

Each of the deliveries required to be made by a Party pursuant to Sections 4.3 and 4.4, as applicable, shall have been so delivered (or such Party shall be ready, willing and able to make such deliveries).

9.5    Sale Order.

The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall be a Final Order.

## ARTICLE 10

### TERMINATION

10.1    Termination.

(a)    Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time prior to the Closing by Seller or Buyer:

(i)    if a Governmental Authority issues a final, non-appealable ruling or Order prohibiting the transactions contemplated hereby where such ruling or Order was not requested, encouraged or supported by the party hereto (or its Affiliates or its or their Representatives) electing to terminate this Agreement;

(ii)    if Closing has not occurred by the Outside Date; *provided, however*, that no Party may terminate this Agreement if it is in material breach of any of its representations, warranties, covenants or agreements contained herein or in the Bid Procedures Order or the Sale Order;

(iii)    if the Bankruptcy Court enters an Order dismissing, or converting into cases under Chapter 7 of the Bankruptcy Code, any of the cases commenced by any Seller under Chapter 11 of the Bankruptcy Code and comprising part of the Bankruptcy Case; or

(iv)    by mutual written agreement of Seller and Buyer.

16

(b)     In the event of termination of this Agreement by Buyer or Seller pursuant to Section 10.1(a)(ii), the terminating Party shall each have the right to pursue any and all rights that it may otherwise have hereunder, at law or in equity, including without limitation the right to specifically enforce the terms and provisions of this Agreement and the consummation of the transactions included herein.

(c)     To the extent this Agreement is terminated by Seller pursuant to Section 10.1(a)(ii), Seller shall be entitled to keep the Deposit and Buyer hereby waives all claims to such Deposit.

## ARTICLE 11

### GENERAL PROVISIONS

11.1     Notices.

All notices, consents, waivers and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by email (with read receipt requested, with the receiving party being obligated to respond affirmatively to any read receipt requests delivered by the sending party), (c) received by the addressee, if sent by a delivery service (prepaid, receipt requested) or (d) received by the addressee, if sent by registered or certified mail (postage prepaid, return receipt requested), in each case to the appropriate addresses and representatives (if applicable) set forth below (or to such other addresses and representatives as a party hereto may designate by notice to the other parties hereto):

(i)     If to any Seller, then to:

Shoreline Energy LLC
Attn: Randy Wheeler
16801 Greenspoint Park Drive #380
Houston, Texas 77060
Phone: 281-872-0051
E-mail: randy.wheeler@shorelineenergy.net

*with a copy (which shall not constitute notice) to*:

Jones Day
Attn: Tom Howley
Attn: Stephen Olson
717 Texas, Suite 3300
Houston, Texas 77002
Phone: 832-239-3790
E-mail: tahowley@jonesday.com

(ii)     If to Buyer:

Clovelly Oil Co. LLC
Attn:  D. Irwin Mackenroth
Vice President, Land
650 Poydras Street
Suite 230
New Orleans, LA  70130
Phone:  504-522-7496
E-mail: neworleans@clovellyoil.com &
                dmackenroth@clovellyoil.com

17

11.2   Waiver; Waiver of Damages.

(a)   Neither the failure nor any delay by any party hereto in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement shall operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege shall preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable Legal Requirements, (i) no waiver that may be given by a party hereto shall be applicable except in the specific instance for which it is given, and (ii) no notice to or demand on one party hereto shall be deemed to be a waiver of any right of the party hereto that gives such notice or demand to take further action without notice or demand.

(b)   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO PARTY HERETO SHALL BE LIABLE TO ANY OTHER PARTY HERETO FOR SPECIAL, INDIRECT, EXEMPLARY, CONSEQUENTIAL (INCLUDING LOST PROFITS) OR PUNITIVE DAMAGES ARISING OUT OF, ASSOCIATED WITH, OR RELATING TO THIS AGREEMENT AND THE PARTIES HERETO HEREBY WAIVE ALL CLAIMS FOR ANY SUCH DAMAGES; *PROVIDED* THAT NOTHING CONTAINED HEREIN SHALL WAIVE BUYER'S RIGHTS TO SEEK OR RECOVER SUCH DAMAGES AFTER THE CLOSING DATE FROM SELLER TO THE EXTENT SUCH DAMAGES ARE ACTUALLY PAID TO AN UNAFFILIATED THIRD PARTY, IN WHICH CASE SUCH DAMAGES SHALL BE RECOVERABLE WITHOUT GIVING EFFECT TO THIS SECTION 11.2.

11.3   Entire Agreement; Amendment.

This Agreement (including any Schedules, Disclosure Schedules and the Exhibits) and the other Transaction Documents supersede all prior agreements between Buyer and Seller with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreements between Buyer and Seller with respect to their subject matter. This Agreement, including all exhibits hereto, may not be amended, modified or supplemented, or the terms hereof waived, except by a written agreement executed by all of the parties hereto.

11.4   Assignment.

This Agreement, and the rights, interests and obligations hereunder, shall not be assigned by any party hereto by operation of law or otherwise without the express written consent of the other parties hereto (which consent may be granted or withheld in the sole discretion of such other parties hereto). Any assignment in violation of this Section 11.4 shall be deemed void *ab initio*.

11.5   Severability.

The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

11.6   Expenses.

Each Party shall be responsible for their own professional and other fees incurred in connection with the negotiation, preparation, and drafting of this Agreement, the other Transaction Documents and any other documents in connection herewith or therewith (regardless of whether the Closing occurs).

11.7    Time of the Essence.

Time shall be of the essence with respect to all time periods and notice periods set forth in this Agreement.

11.8    Specific Performance.

The parties hereto agree that irreparable damage would occur if any provision of this Agreement is not performed in accordance with the terms hereof, including if any of the parties hereto fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement, and, accordingly, (a) prior to the Closing, each party hereto shall be entitled to an injunction or injunctions without proof of damages or posting a bond or other security to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof, including specific performance of such covenants, promises or agreements or an order enjoining such party hereto from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement, and (b) from and after the Closing, any party hereto shall be entitled to an injunction or injunctions without proof of damages or posting a bond or other security to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof, in addition to any other remedy to which they are entitled at law or in equity. No right or remedy described or provided in this Agreement is intended to be exclusive or to preclude a party hereto from pursuing other rights and remedies to the extent available under this Agreement, at law or in equity. The right of specific performance and other equitable relief is an integral part of the transactions contemplated by this Agreement and without that right, neither Seller nor Buyer would have entered into this Agreement. If, prior to the Outside Date, any party hereto brings any action to enforce specifically the performance of the terms and provisions hereof by any other party hereto, the Outside Date will automatically be extended (i) for the period during which such action is pending, plus ten (10) Business Days or (ii) by such other time period established by the court presiding over such action, as the case may be.

11.9    Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver.

(a)    **Except (i) to the extent the mandatory provisions of the Bankruptcy Code apply and (ii) except for any real or immovable property issues, which shall be governed by and construed and enforced in accordance with the internal laws of the State in which such real or immovable property is located (without reference to the choice of law rules of such State), this Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas applicable to contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Texas applicable hereto.**

(b)    Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or Proceeding; *provided, however,* that, if the Bankruptcy Case is closed (and not reopened, if requested by Buyer (provided that Buyer shall have no obligation to make such a request)), all Actions and Proceedings arising out of or relating to this Agreement shall be heard and determined in a Texas state court or a federal court sitting in the state of Texas, and the Parties each hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in any such Action or Proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or Proceeding. The Parties

19

each consent to service of process by mail (in accordance with Section 11.1) or any other manner permitted by law.

(c)    THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF ANY PARTY OR SUCH PARTY'S REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

11.10   Counterparts.

This Agreement and any amendment hereto may be executed in one (1) or more counterparts, each of which shall be deemed to be an original of this Agreement or such amendment and all of which, when taken together, shall constitute one and the same instrument. Notwithstanding anything to the contrary in Section 11.1, delivery of an executed counterpart of a signature page to this Agreement or any amendment hereto by telecopier or email attachment shall be effective as delivery of a manually executed counterpart of this Agreement or such amendment, as applicable.

11.11   Parties in Interest; No Third Party Beneficiaries.

This Agreement shall inure to the benefit of and be binding upon Buyer and Seller and their respective successors and permitted assigns. This Agreement is for the sole benefit of such parties hereto and their permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable benefit, claim, cause of action, remedy or right of any kind.

11.12   Disclosure Schedules; Materiality.

The inclusion of any matter in any Disclosure Schedule shall be deemed to be an inclusion for all purposes of this Agreement, in all other Disclosure Schedules to the extent that such disclosure is sufficient to identify the matter to which such disclosure is responsive, but inclusion therein shall not be deemed to constitute an admission, or otherwise imply, that any such matter is material or creates a measure for materiality for purposes of this Agreement. The disclosure of any particular fact or item in any Disclosure Schedule shall not be deemed an admission as to whether the fact or item is "material" or would constitute a "material adverse effect."

*[Signature page follows.]*

20

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, all as of the day and year first above written.

SHORELINE SOUTHEAST LLC

By: _____

Name:  Randy E. Wheeler
Title:   Vice President

CLOVELLY OIL CO. LLC

By: _____

Jeff J. Jandegian
President

21

US 4761480v.24

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, all as of the day and year first above written.

**SHORELINE SOUTHEAST LLC**

By: _____
Name: Randy E. Wheeler
Title: Vice President

**CLOVELLY OIL CO. LLC**

By: _____
Jeff J. Jandegian
President

21

Exhibit A to Asset Purchase Agreement

Assigned Leases and Interests

| Prospect/Field Name | Lease | Eff Date | Lessor | Lessee | Book | Page | Entry | County/Parish | State |
|---|---|---|---|---|---|---|---|---|---|
| HAPPYTOWN | LA-HAPTWN-01 | 09/13/2007 | GLENN EDWARD DIAZ | MARLIN COASTAL LLC | 1483 | 264 | 405464 | ST. MARTIN | LOUISIANA |

Exhibit B to Asset Purchase Agreement

Wells

| WELL NAME | FIELD | Parish/County | STATE | OPERATOR | SN | API | WI - BPO | NRI - BPO | WI - APO | NRI - APO |
|---|---|---|---|---|---|---|---|---|---|---|
| GLENN E DIAZ #1 | HAPPYTOWN | ST. MARTIN | LA | DYNAMIC | 241752 | 1709921605000 | 0.0900000000 | 0.0648000000 | 0.0900000000 | 0.0648000000 |
| GLENN E DIAZ SWD #1 | HAPPYTOWN | ST. MARTIN | LA | DYNAMIC | 974212 | 1709988070000 | 0.0900000000 | N/A | 0.0900000000 | N/A |

**Exhibit C to Asset Purchase Agreement**

**Equipment**

**None**

**Exhibit D to Asset Purchase Agreement**

**Surface Rights**

**None**

EXHIBIT E
FORM OF SALE ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SHORELINE ENERGY LLC, et al.,[1] | : | Case No. 16-35571 (DRJ) |
| Debtors. | : | (Jointly Administered) |

ORDER (I) AUTHORIZING (A) THE SALE OF CERTAIN
NON-DESIGNATED ASSETS FREE AND CLEAR OF ALL LIENS,
CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) THE DEBTORS'
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (II) GRANTING RELATED RELIEF

Upon the Debtors' Motion for Entry of (I) an Order Establishing Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) an Order Approving the Sale of Such Assets and (III) Granting Related Relief [Docket No. 100] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors")[3] for entry of an order (this "Order"), among other things, (a) authorizing the sale (the "Sale") of the Assets (as defined in the Purchase Agreement (as defined below)) to [_____] (or any permitted assignee pursuant to the terms of the Purchase Agreement, the "Buyer"), pursuant to the Asset Purchase Agreement between the Debtors and the Buyer, dated as of [_____], 2017 (together with all other

---

[1]   The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Purchase Agreement (as defined herein), as applicable; *provided* that in the event of any conflict with respect to the meaning of a capitalized term between the Motion and the Purchase Agreement, the meaning ascribed to such term in the Purchase Agreement shall control.

[3]   All references to the "Debtors" shall include the debtors and their estates.

documents contemplated thereby, as such agreement may be amended, restated or supplemented, the "Purchase Agreement"), a copy of which is attached hereto as **Exhibit 1** and is incorporated herein by reference as if set forth herein, free and clear of all Liens, Claims and Interests (each as defined herein); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Buyer; and (c) granting related relief, all as more fully set forth in the Motion; and the Court having entered the Order (I) Approving Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) Approving the Sale of Such Assets, (III) Approving the Form and Manner of Notice of the Related Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Scheduling an Auction and Sale Hearing [Docket No. 183] (the "Bidding Procedures Order"); and the Debtors having filed the Notice of Auction of the Debtors' Non-Designated Assets [Docket No. 324] (the "Notice of Auction") stating that the Debtors would conduct an auction (the "Auction") for the Assets; and the Debtors having filed the [*Notice of Successful Bidder and Backup Bidder*] [Docket No. _____] (the "Notice of Successful Bidder") identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures Order; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest; and the Court having reviewed the Motion and having heard the statements and evidence in support of the relief requested therein at a hearing before the Court that commenced on February 10, 2017 (the "Sale Hearing"); and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY FOUND AND DETERMINED THAT**:

### Findings of Fact and Conclusions of Law

A.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made

2

applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of

facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are

findings of fact, they are adopted as such.

**Jurisdiction and Venue**

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Without limiting the generality of the foregoing, this Court has exclusive *in rem*

jurisdiction over the Assets pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the

Debtors' chapter 11 estates, and, as a result of such jurisdiction, this Court has all necessary

power and authority to grant the relief contained herein.  This matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue in this district is proper under

28 U.S.C. §§ 1408 and 1409.

**Statutory Predicates**

C.      The statutory and other legal bases for the relief requested in the Motion

are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules

2002, 6004, 6006, 9007, 9008 and 9014.  The consummation of the transactions contemplated by

the Purchase Agreement and this Order (the "Transactions") is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the

Local Rules and the Debtors, the Buyer and their affiliates have complied with all of the

applicable requirements of such sections and rules in respect of the Transactions.

**Notice**

D.      As evidenced by the affidavits and/or certificates of service filed with the

Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the

Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption

3

and assignment to the Buyer of the executory contracts and unexpired leases specified as of the date hereof pursuant to the Purchase Agreement (the "Assigned Contracts" and the "Assigned Leases," respectively), the Cure Costs (as defined below), the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and in compliance with the Bidding Procedures Order, to all interested persons and entities.

E.      The Debtors served notices substantially in the form included in the *Notice of (A) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) Proposed Cure Costs* [Docket No. 231] (each a "Notice of Assumption and Assignment"), in accordance with the Bidding Procedures Order, identifying, among other things, the Cure Costs (as defined below).  The Debtors served the Notice of Assumption and Assignment on each of the non-Debtor counterparties to the Assigned Contracts and the Assigned Leases. The service of the Notice of Assumption and Assignment was sufficient under the circumstances and in full compliance with the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases or the Cure Costs.

F.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases, the Cure Costs, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests, and all deadlines related thereto is or shall be required.

4

## Marketing and Sale Process

G.      The Sale of the Assets to the Buyer pursuant to the Bidding Procedures is duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 6004(f).  As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors and their professionals, agents, and other representatives have marketed the Assets and conducted all aspects of the sale process, including the solicitation of bids for the Auction, in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process undertaken by the Debtors and their professionals, agents and other representatives with respect to the Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.

H.      The Bid Deadline passed at 5:00 p.m. (prevailing Central Time), on January 17, 2017 in accordance with the Bidding Procedures and Bidding Procedures Order.  On January 20, 2017, the Debtors filed the Notice of Auction stating that the Debtors would conduct the Auction for the Assets.   The Debtors conducted an Auction on January 24, 2017 in accordance with the Bidding Procedures and Bidding Procedures Order.  Pursuant to the terms of the Bidding Procedures, the Transactions contemplated by the Purchase Agreement constituted the highest and best bid for the Assets at the Auction and, therefore, were designated as the Successful Bid.  On [_____], 2017, the Debtors filed the Notice of Successful Bidder identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Debtors, the Buyer and all of their affiliates.  The Bidding Procedures afforded a

5

full, fair and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Assets, and the Purchase Agreement constitutes the best and highest offer for the Assets.

### Highest and Best Offer; Business Judgment

I.       The Debtors have demonstrated a sufficient basis to enter into the Purchase Agreement, sell the Assets on the terms outlined therein and assume and assign the Assigned Contracts and the Assigned Leases to the Buyer under sections 363 and 365 of the Bankruptcy Code.  All such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their creditors, their estates and other parties in interest. Approval of the Sale pursuant to the Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates and all other parties in interest.

J.       The offer of the Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and best offer received by the Debtors after extensive marketing, including through the Bidding Procedures, (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest and (iii) constitutes full and adequate consideration, is fair and reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Assets under the Bankruptcy Code.

### Opportunity to Object

K.       A reasonable opportunity to object or be heard with respect to the Motion, the Bidding Procedures, the Auction, the Sale (and the Transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases, the Cure Costs, the Sale Hearing, consent and preferential purchase rights

related to oil and gas interests, and all deadlines related thereto has been afforded to all interested persons and entities.

### Good Faith Purchaser; Arm's Length Sale

           L.      The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from arm's length bargaining positions.  Neither the Debtors, the Buyer nor any parent or affiliate of the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

           M.     The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

### Free and Clear Transfer Required by Buyer

           N.      The Buyer would not have entered into the Purchase Agreement and would not have consummated the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if each of the Sale and the assumption and assignment of the Assigned Contracts and the Assigned Leases to the Buyer were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities) as more fully set forth in Paragraph [5] of this Order, or if the Buyer would, or in the future could, be liable for any of the Excluded Liabilities.

           O.      As of the Closing, pursuant and subject to the terms of the Purchase Agreement and this Order, the transfer of the Assets and of the Assumed Liabilities and the Sale will effect a legal, valid, enforceable, and effective transfer of the Assets and will vest the Buyer with all of the Debtors' rights, title, and interests in the Assets free and clear of all Liens, Claims

7

and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities).

### Satisfaction of Section 363(f)

P.      The Debtors may sell the Assets free and clear of any and all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, Claims and/or Interests, and holders of any consent and preferential purchase rights related to oil and gas interests, and any non-Debtor counterparties to the Assigned Contracts and Assigned Leases, who did not object, or who withdrew their objection, to the Sale, the Motion, the assumption and assignment of the applicable Assigned Contract or Assigned Lease or the associated Cure Cost are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens, Claims or Interests and non-Debtor parties to Assigned Contracts and Assigned Leases that did not object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

### Assigned Contracts and Assigned Leases

Q.      The Debtors have demonstrated (i) that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts and the Assigned Leases to the Buyer in each case in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Assigned Contracts and the Assigned Leases to the Buyer is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts and the Assigned Leases being assigned to the Buyer are an integral part of the Assets

8

being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assigned Contracts and the Assigned Leases are reasonable and enhance the value of the Debtors' estates. Any non-Debtor counterparty to an Assigned Contract or Assigned Lease that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

### Time Is of the Essence; Waiver of Stay

R.      Time is of the essence in consummating the Sale. In order to maximize the value of the Assets, it is essential that the sale and assignment of the Assets occur within the time constraints set forth in the Purchase Agreement. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### Motion is Granted

1.      The relief requested by the Motion is granted as set forth herein.

### Objections Overruled

2.      All objections to the entry of this Order or to the relief granted herein, whether filed, stated on the record before this Court or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits. All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

### Approval of the Purchase Agreement

3.      The Purchase Agreement, including all of the terms and conditions thereof, is hereby approved. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the

Debtors are authorized and directed to take any and all actions necessary to fulfill their obligations under, and comply with the terms of, the Purchase Agreement and to consummate the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order, without further leave of the Court.

4. The Debtors are authorized and directed, in accordance with the Purchase Agreement, to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

## Transfer of the Assets Free and Clear

5. The Buyer shall assume and be liable for only those liabilities expressly assumed pursuant to the Purchase Agreement. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, with the sole exception of the Assumed Liabilities. For purposes of this Order, "Liens," "Claims," and "Interests" shall mean:

   a. any and all Encumbrances, charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledges, security interests, options, hypothecations, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of offset, setoff and recoupment, successor liability, easements, servitudes, restrictive covenants, interests

or rights under any operating agreement, encroachments, encumbrances, restrictions on transferability of any type, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Buyer, any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Assets, any similar rights, and third-party interests or any other restrictions or limitations of any kind with respect to the Assets (collectively, "Liens");

b.  any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA (as defined below), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§2101 et seq.), (ii) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (iii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (iv) any rights related to intercompany loans and receivables between the Debtors and any non-Debtor subsidiary or affiliate, (v) any Excluded Liabilities, (vi) any and all claims or causes of action based upon or relating to any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract or an Assigned Lease that will be assumed and assigned pursuant to this Order and the Purchase Agreement, (vii) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (viii) any and all claims or causes of action based upon or

11

relating to any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, including, without limitation, any ad valorem taxes assessed by any applicable taxing authority, and (ix) any and all other claims, causes of action, proceedings, warranties, guaranties, rights of recovery, setoff, recoupment, rights, remedies, obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Debtors or any of their respective affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtors, their operations, their business, their liabilities, the Debtors' marketing and bidding process with respect to the Assets, the Assigned Contracts, or the Transactions contemplated by the Purchase Agreement (collectively, "Claims"); and

    c.    any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) any of the Debtors or their respective affiliates, subsidiaries, successors or assigns, (y) the Assets, or (z) the Assigned Contracts (collectively, "Interests");

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.

### Deemed Consent and Waiver of Preferential Purchase Rights

    6.    Parties with an oil and gas interest, including, without limitation, a royalty interest or working interest providing for consent rights or preferential purchase rights with respect to certain of the Assets and who received actual or constructive notice in accordance with the applicable provisions of the Purchase Agreement and the Bidding Procedures Order and

12

failed to timely object are hereby deemed to consent to the Sale and/or waive their ability (if any) to exercise any preferential purchase right or consent right with respect to the Sale.

### Police and Regulatory Power of Governmental Units

7.      Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental unit under any applicable Environmental Laws on the part of any entity as the owner or operator of property after the Closing. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of these chapter 11 cases or, to the extent provided by section 525 of the Bankruptcy Code, the consummation of the Transactions contemplated by the Purchase Agreement, including, without limitation, the Sale and the Debtors' assumption and assignment of the Assigned Contracts and Assigned Leases to the Buyer.

### Assumption and Assignment of Assigned Contracts and Assigned Leases

8.      Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Buyer of the Assigned Contracts and the Assigned Leases is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

9.      The Debtors are hereby authorized, in accordance with the Purchase Agreement, and in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the Assigned Contracts and the Assigned Leases, effective upon and subject to the occurrence of the Closing, free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities),

13

which Assigned Contracts and Assigned Leases, by operation of this Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem necessary to assign and transfer the Assigned Contracts and the Assigned Leases to the Buyer.

          10.     All defaults and all other obligations of the Debtors under the Assigned Contracts and the Assigned Leases occurring, arising or accruing prior to the assignment thereof to the Buyer at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract and Assigned Lease in the amounts set forth in the Notice of Assumption and Assignment or any supplemental Notice of Assumption and Assignment (or any other cure cost reached by agreement after an objection to the proposed cure cost by a counterparty to an Assigned Contract or Assigned Lease), which was served in compliance with the Bidding Procedures Order, and is set forth on the schedule attached hereto as **Exhibit 2** (the "Cure Costs"), and which Cure Costs were satisfied, or shall be satisfied as soon as practicable, by the Debtors or by the Buyer, as the case may be, as provided in the Purchase Agreement.  For all Assigned Contracts and Assigned Leases for which a Notice of Assumption and Assignment was served, the Debtors and the Buyer, as applicable, are each authorized and directed to pay their respective portion of all Cure Costs required to be paid by such parties in accordance with the Purchase Agreement upon the Closing.

### No Successorship or Transferee Liability

          11.     Neither the Buyer nor any of its affiliates are or shall be deemed, as a result of the consummation of the Transactions contemplated herein, to: (a) be legal successors

14

to the Debtors or their estates by reason of any theory of law or equity, (b) have, *de facto* or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect. Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the Purchase Agreement or this Order.

## Modification of the Automatic Stay

12.     The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

## Effect of Recordation of Order

13.     This Order, once filed, registered or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Assumed Liabilities) existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Assets.  Each and every federal, state, and local governmental agency or

15

department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Purchase Agreement, including, without limitation, recordation of this Order.

## No Interference

14.     Following the Closing, no holder of a Lien, Claim and/or Interest in or against the Debtors or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Debtors may take in their bankruptcy cases or any successor cases.

## Retention of Jurisdiction

15.     This Court retains jurisdiction prior to, on, and after Closing to, among other things, interpret, enforce and implement the terms and provisions of the this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining jurisdiction to:  (a) compel delivery of the Assets or performance of other obligations owed to the Buyer; (b) compel performance of obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Purchase Agreement; (d) interpret, implement, and enforce the provisions of this Order; (e) determine whether any lien or Encumbrance constitutes a Senior Lien (f) determine any claim, cause, cause of action, or controversy brought by the Buyer relating to the Purchase Agreement or the Assets or that constitute Assets, and (g) protect the Buyer and its affiliates against (i) any Liens, Claims and Interests in or against the Debtors or the Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Assets that may be in their possession.

16

## No Stay of Order

16.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Sale under the Purchase Agreement at any time pursuant to the terms thereof.

## Good Faith Purchaser

17.     The Sale contemplated by the Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and Buyer has acted without collusion, undertaking the Sale and Transactions contemplated by the Purchase Agreement.   Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyer (including the assumption and assignment by the Debtors of any of the Assigned Contracts and the Assigned Leases), unless such authorization is duly stayed pending such appeal.   The Buyer is a buyer in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

18.     There has been no showing that the Debtors or Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

## Inconsistencies with Prior Orders, Pleadings or Agreements

19.     To the extent of any conflict between the Purchase Agreement and this Order, the terms of this Order shall govern.   To the extent this Order is inconsistent or conflicts with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern

17

and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.

Dated: _____, 2017
      Houston, Texas

                                      THE HONORABLE DAVID R. JONES
                                      UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT E**
**FORM OF SALE ORDER**

<u>Exhibit 1</u>

**Purchase Agreement**

## Exhibit 2

**Cure Costs**

NAI-1502404251v1

**Schedule 2.1 (b) (v) to Asset Purchase Agreement**

**Miscellaneous Corporate Property**

## <u>None</u>

Schedule 2.6(a) to Asset Purchase Agreement

3A5 Contracts and Estimated Cure Costs

**Oil, Gas and Mineral Leases**

| Prospect/Field Name | Lease | Eff Date | Lessor | Lessee | Book | Page | Entry | County/Parish | State | Estimated Cure Costs |
|---|---|---|---|---|---|---|---|---|---|---|
| HAPPYTOWN | LA HAPTOWN 01 | 9/12/2007 | GLENN EDWARD DIAZ | MARLIN COASTAL, LLC | 1402 | 264 | 405464 | ST. MARTIN | LOUISIANA | 0.00 |

**Surface Rights**

None

**Oil and Gas Contracts**

| Prospect/Field | Agreement | Contract Description | Dated | Book | Page | Entry | Contract No. | County/Parish | State | Estimated Cure Costs |
|---|---|---|---|---|---|---|---|---|---|---|
| Happytown | Letter Agreement | Letter Agreement dated August 10, 2007 between Solar Corporation and Marlin Coastal, LLC | 8/10/07 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Amendment Letter | Amendment Letter dated July 14, 2010 between Marlin Coastal, LLC and Philip C. Justice | 7/14/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Participation Agreement | Participation Agreement dated July 15, between Exploration Partners, LLC and Marlin Coastal, LLC | 7/15/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Operating Agreement | Operating Agreement dated July 15, 2010 between Dynamic Exploration Partners, LLC, as Operator, and Seakett Energy Properties Happytown, LLC et al, as Non-Operators | 7/15/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Lease Compromise Agreement | Compromise Agreement dated May 7, 2013 | 5/7/13 | | | | | St. Martin | Louisiana | 0.00 |
| | | | Estimated Cure Costs | | | | | | | |

**Operations Agreements**

| Vendor | Contract Base | Vendor | Agreement Type | Estimated Cure Costs |
|---|---|---|---|---|
| None | | | | |

Schedule 2.4(b) to Asset Purchase Agreement

Desired 365 Contracts and Estimated Cure Costs

## Oil, Gas and Mineral Leases

| Prospect/Field Name | Lease | Eff Date | Lessor | Lessee | Book | Page | Entry | County/Parish | State | Estimated Cure Costs |
|---|---|---|---|---|---|---|---|---|---|---|
| HAPPYTOWN | La-HAPTOWN-01 | 9/13/2007 | GLENN EDWARD DIAZ | MARLIN COASTAL LLC | 1483 | 264 | 460464 | ST. MARTIN | LOUISIANA | 0.00 |

### Surface Rights
None

## Oil and Gas Contracts

| Prospect/Field | Agreement | Contract Description | Dated | Contract No. | Book | Page | Entry | County/Parish | State | Estimated Cure Costs |
|---|---|---|---|---|---|---|---|---|---|---|
| Happytown | Letter Agreement | Letter Agreement dated August 10, 2007 between Select Corporation and Marlin Coastal, LLC | 8/10/07 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Amendment Letter | Amendment Letter dated July 14, 2010 between Marlin Coastal, LLC and Phillip C. Baker | 7/14/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Participation Agreement | Participation Agreement dated July 15, between Exploration Partners, L.L.C. and Marlin Coastal, L.L.C. | 7/15/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Operating Agreement | Operating Agreement dated July 15, 2010 between Dynamic Exploration Partners, LLC, as Operator, and Sonbelt Energy Properties Happytown, LLC, et al, as Non-Operators | 7/15/10 | | | | | St. Martin | Louisiana | 0.00 |
| Happytown | Lease Compromise Agreement | Compromise Agreement dated May 7, 2013 | 5/7/13 | | | | | St. Martin | Louisiana | 0.00 |

## Operations Agreements

| Vendor | Contract Date | Agreement Type | Estimated Cure Costs |
|---|---|---|---|
| None | | | |

**Disclosure Schedule 4.4 (g) to Asset Purchase Agreement**

**Suspense Funds**

**None**

Disclosure Schedule 8.1(c) to Asset Purchase Agreement

Seller Credit Obligations

## Seller Credit Obligations – Surety Bonds

None