

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/24/2017

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING PURSUANT TO SECTION 1129(A) AND (B) OF THE BANKRUPTCY CODE THE FIRST AMENDED JOINT PLAN OF LIQUIDATION OF SHORELINE ENERGY LLC AND ITS DEBTOR AFFILIATES, AS MODIFIED

---

[1] The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

## INTRODUCTION

WHEREAS, the above-captioned debtors (collectively, the "Debtors" proposed the First Amended Joint Plan of Liquidation of Shoreline Energy LLC and Its Debtor Affiliates, (as it may be further modified, the "Plan");[2]

WHEREAS, the Court, on January 6, 2017 entered its Order (I) Conditionally Approving the Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan and (III) Scheduling a Combined Hearing on Approval of the Disclosure Statement and Confirmation of the Plan [D.I. 268] (the "Solicitation Procedures Order");

WHEREAS, pursuant to the Solicitation Procedures Order, the Court, among other things, established procedures for the solicitation and tabulation of votes to accept or reject the Plan and scheduled a combined hearing to consider the adequacy of the Debtors' proposed disclosure statement (the "Disclosure Statement") and confirmation of the Plan for February 10 at 10:30 a.m. (Central Time) (the "Combined Hearing");

WHEREAS, the Affidavit of Service of Solicitation Materials with respect to the mailing of notice of the Combined Hearing and solicitation materials in respect of the Plan in accordance with the Solicitation Procedures Order [D.I. 308] (the "Affidavit of Service") was filed with the Court on January 17, 2017;

WHEREAS, the Affidavit of Publication [D.I. 315] (the "Publication Affidavit") was filed with the Court on January 18, 2017, regarding the publication of the Notice of (A) Deadline for Casting Votes to Accept or Reject the Joint Plan of Liquidation of the Debtors

---

[2]    Capitalized terms and phrases used herein have the meanings given to them in the Plan.  The rules of interpretation set forth in Section I.B.1. of the Plan apply to this Order.  In addition, in accordance with Section I.A. of the Plan, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

A copy of the Plan (without the exhibits thereto) is attached hereto as Exhibit A and incorporated herein by reference.

and Debtors in Possession, (B) Hearing to Consider Approval of the Disclosure Statement and Confirmation of the Plan and (C) Related Matters and Procedures in the *Houston Chronicle* and *The Daily Advertiser* as set forth in the Solicitation Procedures Order;

WHEREAS, Prime Clerk LLC ("Prime Clerk"), the Court-appointed solicitation and tabulation agent in respect of the Plan, filed the Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Joint Plan of Liquidation of Shoreline Energy LLC and Its Debtor Affiliates [D.I. 408] (the "Voting Affidavit") on February 8, 2017 attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

**Class 3 (First Lien Credit Agreement Claims).**   The Debtors received one acceptance out of one vote from holders of Claims under Class 3 (First Lien Credit Agreement Claims), with the Class 3 claimant who voted in favor of the Plan holding Claims in the amount of $122,532,966.65 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 3 Claims (Voting Affidavit, Ex. A.);

**Class 4 (Second Lien Credit Facility Claims).**   The Debtors received 15 acceptances out of 15 votes from holders of Claims under Class 4 (Second Lien Credit Facility Claims), with Class 4 claimants who voted in favor of the Plan holding Claims in the amount of $134,025784.62 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 4 Claims (Voting Affidavit, Ex. A.);

**Class 6 (Convenience Claims).**   The Debtors received 42 acceptances out of 42 votes from holders of Claims under Class 6 (Other Convenience Claims), with Class 6 claimants

NAI-1502396849v6

who voted in favor of the Plan holding Claims in the amount of $1,650,898.68 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 6 Claims (Voting Affidavit, Ex. A.);

**Class 7 (General Unsecured Claims and Holdco Claims).** The Debtors received 35 acceptances out of 43 votes from holders of Claims under Class 7 (General Unsecured Claims and Holdco Claims), with Class 7 claimants who voted in favor of the Plan holding Claims in the amount of $75,586,332.08 for voting purposes, such acceptances being 81.4 percent in number and 96.81 percent in amount of all ballots received from holders of Class 7 Claims (Voting Affidavit, Ex. A.);

WHEREAS, objections to Confirmation of the Plan and/or adequacy of the Disclosure Statement (collectively, the "Plan Objections") were filed by (i) the United States of America [Docket No. 381] (the "USA Objection"); (ii) Apache Corporation and Apache Louisiana Minerals, LLC [Docket Nos. 386 and 495] (the "Apache Objection"); (iii) ConocoPhillips Company and The Louisiana Land and Exploration Company LLC [Docket Nos. 387 and 476] (the "ConocoPhillips Objection"); (iv) the State of Louisiana [Docket Nos. 388 and 498] (the "Louisiana Objection"); (v) U.S. Specialty Insurance Company [Docket Nos. 389 and 494] (the "USSIC Objection"); and (vi) Geophysical Pursuit, Inc. [Docket No. 373] (the "Geophysical Objection");

WHEREAS, objections to abandonment of certain assets (collectively, the "Abandonment Objections" and, together with the Plan Objections, the "Objections") were filed by HHE Energy Company [Docket No. 485]; the Dufrene Family [Docket No. 462]; Hilcorp Energy Company [Docket No. 449]; ConocoPhillips Company and the Louisiana Land and Exploration Company LLC [Docket No. 443]; Castex Energy, Inc. [Docket No. 442]; Exxon

- 3 -

Mobil Corporation [Docket No. 440]; Apache Louisiana Minerals LLC [Docket No. 439]; U.S. Specialty Insurance Company [Docket No. 438]; United States of America [Docket No. 437]; Hassie Hunt Energy Company [Docket No. 432]; Davis Petroleum Corporation N/K/A Yuma Energy, Inc. [Docket No. 429]; Bradish Johnson Company, Ltd. [Docket No. 416]; Roman Catholic Church of the Archdiocese of New Orleans and Point Au Fer, LLC [Docket No. 416]; and State of Louisiana [Docket No. 388].

WHEREAS, the Geophysical Objection has been resolved by language in the proposed order on the Debtors' pending sale motion;

WHEREAS, the Debtors filed a memorandum of law in support of Confirmation of the Plan, the adequacy of the Disclosure Statement and in response to certain of the Objections [D.I. 417] (the "Memorandum of Law");

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Voting Affidavit, the Affidavit of Service, the Publication Affidavit, the Objections, the Memorandum of Law, the Declaration and the other papers before the Court in connection with the Confirmation of the Plan;

WHEREAS, the Combined Hearing was held on February 10, 2017 at 10:30 a.m. (Central Time) and February 23, 2017 at 9:30 a.m. (Central Time) before the Honorable David R. Jones, United States Bankruptcy Judge for the Southern District of Texas;

WHEREAS, the Court heard the statements of counsel in support of the adequacy of the Disclosure Statement and in support of and in opposition to Confirmation as reflected in the record made at the Combined Hearing;

WHEREAS, the Court has considered all evidence presented at the Combined Hearing;

WHEREAS, the Court, after due deliberation and for sufficient cause, finds that the evidence admitted in support of the Plan at the Combined Hearing is persuasive and credible;

WHEREAS, the Court made certain findings of fact and conclusions of law on the record at the Combined Hearing, which findings and conclusions shall be deemed to be incorporated herein in their entirety;

WHEREAS, the findings of fact and conclusions of law on the record at the Combined Hearing and in this Order establish just cause for the relief granted herein;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

A.    <u>Findings of Fact and Conclusions of Law.</u>  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Venue and Jurisdiction.</u>  Venue in this Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and was and continues to be proper during these Bankruptcy Cases.  This Court has jurisdiction over this matter and the Debtors' cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed and to enter a final order with respect thereto.

C.    <u>Eligibility for Relief.</u>  The Debtors qualify as "debtors" under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan.

D.      Commencement and Administration of these Bankruptcy Cases.   The Debtors commenced these Bankruptcy Cases on November 2, 2016 and have authority to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Bankruptcy Cases pursuant to section 1104 of the Bankruptcy Code.  In accordance with certain orders of this Court, these Bankruptcy Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

E.      Appointment of Statutory Committee.   On November 14, 2016 the U.S. Trustee, pursuant to sections 1102(a) and (b) of the Bankruptcy Code, appointed certain unsecured creditors to the Creditors' Committee to represent the interests of all unsecured creditors in these Bankruptcy Cases [D.I. 91].   The Creditors' Committee consists of the following members:   (i) Schlumberger Technology Corporation; (ii) Stallion Oilfield Construction, LLC; (iii) Castex Energy Inc.; and (iv) Allen & Kirmse, Ltd.

F.      Judicial Notice.  This Court takes judicial notice of the docket of these Bankruptcy Cases maintained by the Clerk of this Court or its duly appointed agent, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before this Court during the pendency of these Bankruptcy Cases.

G.      Solicitation and Notice.  As evidenced by the Affidavit of Service, the solicitation materials were transmitted and served in accordance with the terms of the Solicitation Procedures Order.  Under the circumstances of these Bankruptcy Cases, such service of the solicitation materials, together with the other notices delivered pursuant to the terms of the Solicitation Procedures Order and the publication of notice of the Combined Hearing as set forth

- 6 -

in the Publication Affidavit was (i) conducted in good faith, (ii) provided adequate and sufficient notice of the Combined Hearing and the other requirements, deadlines and matters related to Confirmation of the Plan, (iii) timely and properly served or published in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order and (iv) provided due process and an opportunity to appear and to be heard to all parties in interest.  Because the foregoing transmittals, notices and service were adequate and sufficient, no other or further notice is necessary or shall be required.

H.    Voting.  As evidenced by the Voting Affidavit, votes on the Plan were solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

I.    Burden of Proof.  The Debtors have the burden of proving all elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and the Debtors have met that evidentiary burden.  Each witness who testified or submitted a declaration on behalf of the Debtors at or in connection with the Combined Hearing was credible, reliable and qualified to testify as to the topics addressed in his or her testimony that related to the essential elements of sections 1129(a) and (b) of the Bankruptcy Code.

J.    Plan Modifications.    The modifications to the Plan since the commencement of solicitation constitute material modifications; however, the modifications are for the benefit of all constituents and do not adversely affect or change the treatment of any Claims or Interests.  Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against the Debtors be

- 7 -

afforded an opportunity to change previously cast acceptances or rejections of the Plan. The disclosure of the modifications on the record at the Combined Hearing constitute due and sufficient notice thereof under the circumstances of these Bankruptcy Cases. Accordingly, the Plan, as modified by the modifications and this Order, is properly before this Court, and all votes cast with respect to the Plan prior to the modifications shall be binding and shall apply with respect to the Plan.

K.     <u>Adequacy of the Disclosure Statement.</u>     The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Solicitation Procedures Order and was appropriate. Solicitation of votes on the Plan was in full compliance with the Solicitation Procedures Order.

L.     <u>Bankruptcy Rule 3016.</u>  The Plan is dated and identifies the Debtors as the plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Disclosure Statement was filed with the Plan on the docket in these Bankruptcy Cases, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

M.     <u>Good Faith Solicitation and Section 1125(e) of the Bankruptcy Code.</u>  The Debtors solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Solicitation Procedures Order. Based on the record before this Court in these Bankruptcy Cases, including, but not limited to, the evidence and testimony proffered, adduced or presented at the Combined

NAI-1502396849v6

Hearing, the Debtors and their representatives (as applicable) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in connection with all of their respective activities relating to the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan to the extent authorized by this Order.

## COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

N.     The evidentiary record of the Combined Hearing support the findings of fact and conclusions of law set forth in the following paragraphs.

O.     Section 1129(a)(1) of the Bankruptcy Code.  The Plan complies with each applicable provision of the Bankruptcy Code.   In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

    i.     Section 1122 of the Bankruptcy Code.  In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies each Claim against and Interest in each of the Debtors into a Class containing only substantially similar Claims asserted against or Interests in each such Debtor;

    ii.     Section 1123(a)(1) of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Article II of the Plan properly classifies all Claims and Interests that require classification.  In particular, Article II of the Plan segregates into separate classes Priority Claims (Class 1), DIP Facility Claims (Class 2), First Lien Credit Facility Claims (Class 3), Second Lien Credit Facility Claims (Class 4), Other Secured Claims (Class 5), Convenience Claims (Class 6), General Unsecured Claims and Holdco Claims (Class 7), Existing Equity (Class 8), and Intercompany Claims (Class 9).  The number of classes reflects the diverse characteristics of those Claims and Interests, and the legal rights under the Bankruptcy Code of each of the holders of Claims or Interests within a particular Class are substantially similar to other holders of Claims or Interests within that Class.

NAI-1502396849v6

iii.     Section 1123(a)(2) of the Bankruptcy Code. In accordance with section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan identifies and describes each Class of Claims or Interests that is not impaired under the Plan. In particular, Article III of the Plan indicates that Classes 1, 2, and 5 are unimpaired;

iv.     Section 1123(a)(3) of the Bankruptcy Code. In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan identifies and describes any Class of Claims or Interests that is impaired under the Plan. In particular, Section III.B. of the Plan indicates that Classes 3, 4, 6, 7, 8, and 9 are impaired;

v.     Section 1123(a)(4) of the Bankruptcy Code. In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi.     Section 1123(a)(5) of the Bankruptcy Code. In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Article IV of the Plan, provides adequate means for its implementation, including: (i) the transfer of all Causes of Action from the Debtors to the Creditors Trust under Section IV.A. of the Plan; (ii) the formation of the Creditor Trust and the appointment of the Creditor Trustee under Section IV.E. of the Plan; (iii) prohibition of the revesting of Creditor Trust Assets in any Debtor under Section IV.G. of the Plan; (iv) the term of injunctions and stays under Section IV.H. of the Plan; (v) the preservation of Causes of Action, the comprehensive settlement of claims and controversies and the provision of various releases under Section IV.I. of the Plan; (vi) limitations on liability under Section IV.J. of the Plan; (vii) the release of liens under Section IV.K. of the Plan; (viii) the effectuating of certain documents and exemption from certain transfer taxes under Section IV.L. of the Plan; (ix) substantive consolidation of the Debtors, as provided in Section IV.M. of the Plan; (x) provisions regarding cramdown under Section IV.N. of the Plan; and (xi) the rejection of Executory Contracts and Unexpired Leases to which any Debtor is a party as stated in Article V of the Plan.

vii.     Section 1123(a)(6) of the Bankruptcy Code. Since the Debtors will be dissolved as of the Effective Date, to the extent necessary the Debtors comply with the requirements of section 1123(a)(6);

viii.     Section 1123(a)(7) of the Bankruptcy Code. To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the selection of the Creditor Trustee, the selection of the Creditor Trustee is

- 10 -

consistent with the interests of holders of Claims and Interests and public policy.

ix.     <u>Section 1123(b)(1) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides for the impairment of certain classes of Claims and Interests, while leaving other Classes unimpaired.  The Plan thus modifies the rights of the holders of certain Claims and Interests and leaves the rights of others unaffected.

x.     <u>Section 1123(b)(2) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides for the rejection of certain Executory Contracts and Unexpired Leases to which the Debtors are parties;

xi.     <u>Section 1123(b)(3) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan provides for the settlement and adjustment of various claims and interests belonging to the Debtors or their estates (the "<u>Estates</u>").

xii.     <u>Section 1123(b)(5) of the Bankruptcy Code.</u>  Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and Interests;

xiii.     <u>Section 1123(b)(6) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including, without limitation:  (i) Article IV of the Plan providing for the creation of the Creditor Trust and the appointment of the Creditor Trustee; (ii) Article VI of the Plan governing distributions on account of Allowed Claims; and (iii) Article VII of the Plan establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved; and

xiv.     <u>Section 1123(d) of the Bankruptcy Code.</u>  In accordance with section 1123(d) of the Bankruptcy Code, all defaults cured under the Plan shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

P.     <u>Section 1129(a)(2) of the Bankruptcy Code.</u>  The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  The Disclosure Statement and the procedures by which the ballots for acceptance or

rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Solicitation Procedures Order.  Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order.  The Debtors and each of their respective directors, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

Q.    Section 1129(a)(3) of the Bankruptcy Code.  The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan.  Based on the evidence presented at the Combined Hearing, the Court finds and concludes that the Plan has been proposed by the Debtors in good faith and in the belief that it will maximize the value of the ultimate recoveries to all creditor groups on a fair and equitable basis.  The Plan is designed to effectuate the objectives and purposes of the Bankruptcy Code by maximizing the recoveries to parties in interest.  Moreover, the Plan itself and the acceptance of the Plan by all Classes entitled to vote, provide independent evidence of the Debtors' good faith in proposing the Plan.  Further, as described in greater detail below, the Plan's indemnification, exculpation, release and injunction provisions have been negotiated in good faith, are consensual and voluntary and are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law in this Circuit.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

R.    Section 1129(a)(4) of the Bankruptcy Code.  In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in

connection with the Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, including Professional Fee Claims, has been or will be made by a Debtor other than payments that have been authorized by order of the Court.  Section III.A. of the Plan provides for the payment of Administrative Claims, including Professional Fee Claims, which are subject to the Court's approval and the standards of the Bankruptcy Code.  In connection with the foregoing, Article X of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for the periods ending on or before the Effective Date.

S.    <u>Section 1129(a)(5) of the Bankruptcy Code.</u>  To the extent that section 1129(a)(5) is applicable to the selection of Creditor Trustee, the identity and the terms of retention of the Creditor Trustee was properly disclosed in the Creditor Trust Agreement and the Plan.  Further, the Plan satisfies 1129(a)(5) as the Debtors will be dissolved on the Effective Date, and therefore no members of the Debtors' management need to be identified.

T.    <u>Section 1129(a)(6) of the Bankruptcy Code.</u>  Section 1129(a)(6) of the Bankruptcy Code is not applicable.  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

U.    <u>Section 1129(a)(7) of the Bankruptcy Code.</u>  Each holder of an impaired Claim that has not accepted the Plan will on account of such Claim, as demonstrated by the liquidation analyses included as Exhibit II to the Disclosure Statement, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holders would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

V.     Section 1129(a)(8) of the Bankruptcy Code.     Pursuant to section 1129(a)(8) of the Bankruptcy Code, all Classes, other than Classes 8 and 9, have either accepted the Plan or are unimpaired.  Specifically, Classes 1, 2, and 5 are unimpaired under the Plan, and therefore are deemed to have accepted the Plan.  The holders of Claims in Classes 3, 4, 6 and 7 voted to accept the plan.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes other than Classes 8 and 9.  The Debtors have deemed Classes 8 and 9 to reject the Plan.  Nonetheless, the Plan satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code necessary to obtain Confirmation of the Plan, notwithstanding the deemed rejection of the Plan by Classes 8 and 9.

W.     Section 1129(a)(9) of the Bankruptcy Code.   The Plan also meets the requirements regarding the payment of Administrative Claims, Priority Claims and Priority Tax Claims, as set forth in section 1129(a)(9) of the Bankruptcy Code.  Section III.A.1.a. of the Plan provides that, subject to certain bar date provisions in the Plan and unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or the Creditor Trustee, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim (i) if such Administrative Claim was assumed pursuant to the Purchaser APA, payment will be made pursuant to the terms of the Purchaser APA or (ii) if such Administrative Claim was not assumed pursuant to the Purchaser APA, payment will be made  as soon as practicable after the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Creditor Trustee and the holder of the Administrative Claim, provided, however, that the Committee Settlement Payment will not

- 14 -

be used to satisfy any Administrative Claims.  Section III.A.2. of the Plan provides that, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim; provided, however, that the Committee Settlement Payment will not be used to satisfy any Priority Tax Claims.

X.      <u>Section 1129(a)(10) of the Bankruptcy Code.</u>  As indicated in the Voting Affidavit and as reflected in the record of the Combined Hearing, at least one Class of Claims that is impaired under the Plan has voted to accept the Plan, as determined without including the acceptance by any insider, with respect to all Debtors under the Plan.

Y.      <u>Section 1129(a)(11) of the Bankruptcy Code.</u>  As demonstrated by the evidence in the record, upon the Effective Date, the Creditor Trust will have sufficient cash and other assets to meet their obligations under the Plan.

Z.      <u>Section 1129(a)(12) of the Bankruptcy Code.</u>  Section III.A.1.b. of the Plan provides that on the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Combined Hearing by the Bankruptcy Court, shall be paid by the Debtors in Cash equal to the amount of such Administrative Claims.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Creditor Trustee in accordance therewith until the closing of the applicable Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

NAI-1502396849v6

AA.    <u>Section 1129(a)(13) of the Bankruptcy Code.</u>  To the extent applicable, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code, as the Debtors are not required to provide any retirement benefits.

BB.    <u>Section 1129(a)(14), (15) and (16) of the Bankruptcy Code.</u> Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to these Bankruptcy Cases as the Debtors owe no domestic support obligations, are not individuals and are not nonprofit corporations.

CC.    <u>Section 1129(b) of the Bankruptcy Code.</u>  Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that Classes 8 and 9 are impaired and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 8 and 9 satisfy sections 1129(b)(1) and (b)(2)(C) because they do not receive or retain any property on account of their claims or interests, and therefore, no junior class is receiving any consideration.  The Plan does not unfairly discriminate against the holders of Claims and Interests in Class 8 and 9.  The Claims and Interests are legally distinct from other Claims and Interests.  As a result, the Claims and Interests are properly placed in separate classes, and there is no discrimination with respect to these classes.  All other Classes have accepted or are deemed to have accepted the Plan.  Accordingly, the requirements of section 1129(b) are satisfied with respect to Classes 8 and 9.

DD.    <u>Section 1129(c) of the Bankruptcy Code.</u>  The Plan is the only plan that has been filed in these Bankruptcy Cases that has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are not applicable in these Bankruptcy Cases.

EE. <u>Section 1129(d) of the Bankruptcy Code.</u>  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended (the "<u>Securities Act</u>").  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF. <u>Section 1129(e) of the Bankruptcy Code.</u>  None of these Bankruptcy Cases are small business cases within the meaning of the Bankruptcy Code.  Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to these Bankruptcy Cases.

GG. <u>Satisfaction of Confirmation Requirements.</u>  Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan and the Debtors satisfy all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## <u>FINDINGS REGARDING IMPLEMENTATION OF THE PLAN</u>

HH. <u>Implementing Documents.</u>  All documents and agreements necessary to implement the Plan, including, but not limited to, those contained in the Notice of Filing of Plan Supplement for the Debtors' First Amended Joint Plan of Liquidation of Shoreline Energy LLC and Its Debtor Affiliates [Docket No. 344], and all other relevant and necessary documents (including, but not limited to, the Restructuring Support Agreement) are essential elements of the Plan and have been negotiated in good faith and at arm's-length with the Creditors' Committee, the Restructuring Support Parties and their respective officers, directors, employees, advisors, members and professionals, and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and not be in conflict with any federal, state or local law.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors, as applicable, are authorized, without any further notice to, or action,

order or approval of, this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating to the Plan and the Purchase and Sale Agreement, as amended (the "Stalking Horse APA") between the Debtors and the Stalking Horse Bidder (as defined in the Order (I) Approving Bidding and Sale Procedures for the Sale of the Debtors' Assets, (II) Approving the Sale of Such Assets, (III) Approving the Form and Manner of Notice of the Related Assumption and Assignment of Executory Contracts and Unexpired Leases and (IV) Scheduling an Auction and Sale Hearing [Docket No. 183]) and to perform their obligations under such agreements, documents, instruments and certificates.

II.     Treatment of Executory Contracts and Unexpired Leases.   Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V of the Plan provides for the rejection of certain Executory Contracts and Unexpired Leases.   The Debtors' determinations regarding the rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims and other parties in interest in these Bankruptcy Cases.

JJ.     This Order shall constitute an order of the Court approving the rejections described in Article V of the Plan, pursuant to section 365 of the Bankruptcy Code.   The procedures for rejection of an executory contract in Article V are approved in all respects, subject to the other terms of this Order.

KK.   Jurisdiction With Respect to Release, Exculpation and Injunction Provisions.  This Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations and injunctions set forth in Article IV

of the Plan.   Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article IV of the Plan.

LL.   <u>Releases, Exculpation and Injunction.</u>   Based on the record before this Court, including, but not limited to, the evidence proffered, adduced, and/or presented at the Combined Hearing, which is reasonable, persuasive, and credible, the release, exculpation, and injunction provisions set forth in the Plan (1) confer substantial benefit to the Estates, (2) are fair, equitable, and reasonable, (3) are in the best interests of the Debtors, their Estates, and parties in interest, (4) are an integral element of the settlements and transactions incorporated into the Plan; (5) are supported by valuable consideration, (6) are important to the overall objectives of the Plan to finally resolve all Claims and Equity Interests among or against the parties in interest in these Bankruptcy Cases with respect to the Debtors' liquidation, and (7) do not relieve any party of liability arising out of an act or omission constituting willful misconduct (including, but not limited to, fraud) or gross negligence.   Accordingly, this Court finds that (1) the releases of potential Claims belonging to the Debtors or their Estates pursuant to the Plan are part of a fair and a valid exercise of the Debtors' business judgment, (2) the releases contemplated by Section IV.I.3. of the Plan are fair, reasonable and appropriate under the circumstances of these Bankruptcy Cases and (3) the release, exculpation and injunction provisions set forth in the Plan were proposed in good faith, are fair and appropriate under the circumstances, are appropriately tailored, are intended to promote finality and prevent parties from attempting to circumvent the Plan's terms and are consistent with the Bankruptcy Code and applicable law in light of the extraordinary circumstances of these cases and the substantial contribution of all Released Parties and, therefore, valid and binding.   The releases were extensively disclosed in the Disclosure Statement and the Ballots and therefore consented to by all parties who voted in favor

of the Plan or did not opt out of providing such releases.  For the avoidance of doubt, any party that properly opted out of the voluntary release and injunction provisions in conjunction with the submission of a Ballot shall not be deemed to be a Releasing Party as defined in the Plan.

MM.  <u>Retention of Jurisdiction.</u>  Subject to Article X of the Plan, this Court may properly retain jurisdiction over any matter arising under the Bankruptcy Code, or arising in, or related to, these Bankruptcy Cases or the Plan, after Confirmation thereof and after the Effective Date, and any other matter or proceeding that is within this Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

NN.  <u>Satisfaction of Conditions to Confirmation.</u>  Each of the conditions precedent to Confirmation set forth in Section VIII.A of the Plan has been satisfied or waived in accordance with the provisions of the Plan.

OO.  <u>Objections.</u>  All parties have had a full and fair opportunity to litigate all issues raised in the Objections, or which might have been raised, and the Objections have been fully considered by this Court.

PP.  <u>Waiver of Stay.</u>  Given the facts and circumstances of these Bankruptcy Cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

**I.  ADEQUACY OF THE DISCLOSURE STATEMENT.**

1.  The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code, and the Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Solicitation Procedures Order and was appropriate.

- 20 -

## II. GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.

### A. CONFIRMATION OF THE PLAN.

2.     The Plan, as modified by this Order, and each of its provisions (whether or not specifically approved herein) and all exhibits thereto are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Order, the terms of this Order shall control.  All objections to the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing are either resolved on the terms set forth herein or overruled.

### B. CONDITIONS TO EFFECTIVE DATE.

3.     Nothing in this Order shall in any way affect the provisions of Article VIII of the Plan, which includes provisions regarding (i) the conditions precedent to the Effective Date of the Plan, (ii) the waiver of any such conditions, and (iii) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Order.

### C. EFFECTS OF CONFIRMATION.

4.     Subject to Section II.C.4. of this Order, notwithstanding any otherwise applicable law, immediately upon the entry of this Order, the terms of the Plan and this Order shall be binding upon all Entities, including the Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all nondebtor parties to Executory Contracts and Unexpired Leases with any of the Debtors and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers and injunctions described herein and the respective

heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

### D. APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.

5.      The Plan, as modified by this Order, and all exhibits thereto, substantially in the form as they exist at the time of the entry of this Order, including the Creditor Trust Agreement, are approved in all respects.

6.      All relevant parties, including the Debtors and the Creditor Trustee, shall be authorized, without further action, notice or order of the Court, to execute any Plan-Related Documents (as such capitalized term is defined in Section IV.B.20. of this Order) and make modifications to such documents in accordance with the Plan's terms, if applicable, between the time of entry of this Order and the Effective Date of the Plan.

7.      The Debtors are hereby authorized to amend or modify the Plan and the exhibits to the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section XI.B. of the Plan.

## III.   CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.   GENERAL BAR DATE FOR ADMINISTRATIVE CLAIMS.

8.      Except as specified in Section III.A.1.c.i. of the Plan, the Bar Date Order, and Section III.B.10. below and the notice of the Effective Date, unless previously Filed or Allowed, requests for payment of Administrative Claims that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after February 1, 2017 through the Effective Date must be Filed no later than 60 days after the Effective Date (the "Final Administrative Claim Bar Date").  Any holder of an Administrative Claim that is required to, but does not, File and serve a request for payment of such Administrative Claim by the applicable

Bar Date shall be forever barred from asserting such Administrative Claim against the Debtors, the Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date.  Objections to requests for payment of Administrative Claims must be Filed and served on the requesting party by (a) in the case of such requests that were required to be filed by February 7, 2017 pursuant to the Bar Date Order, 90 days after the Effective Date and (b) in the case of such requests that must be filed by the Final Administrative Claim Bar Date, by no later than 150 days after the Effective Date, in each case subject to further order of the Bankruptcy Court.  For the avoidance of doubt, nothing herein modifies any requirement to File any Administrative Claim as set forth in the Bar Date Order, and any holder of such Administrative Claim that failed to comply with the requirements of the Bar Date Order shall be forever barred from asserting such Administrative Claims against the Debtors, Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

### B.  BAR DATE FOR PROFESSIONAL FEE CLAIMS.

9.  Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Creditor Trustee and such other entities who are designated by the Bankruptcy Rules, this Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 90 days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.

Objections to any Final Fee Application must be Filed and served on the Creditor Trustee and the requesting party by the later of (1) 80 days after the Effective Date or (2) 45 days after the Filing of the applicable Final Fee Application.  To the extent necessary, this Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims.  Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

### C.    BAR DATE FOR REJECTION DAMAGES CLAIMS.

10.    Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection claim will be forever barred and will not be enforceable against the Debtors or Creditor Trust unless a proof of Claim is Filed and served on the Creditor Trustee, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, by 30 days after the Effective Date.

### D.    ENFORCEMENT OF BAR DATE ORDER.

11.    In accordance with the Bar Date Order, any Entity that failed to File a proof of Claim or request for payment of Administrative Claims that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or before January 31, 2017 by the applicable Bar Date or was not otherwise permitted to File a proof of Claim or request for payment of such Administrative Claim after the applicable Bar Date by a Final Order of the Court is and shall be barred, estopped and enjoined from asserting any such Claim or Administrative Claim against the Debtors (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent and liquidated;

or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity.  All Claims Filed after the applicable Bar Date and for which no Final Order has been entered by the Court determining that such Claims were timely Filed shall be disallowed and expunged.  Any Distribution on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent and liquidated.

## IV.	MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A.	DISSOLUTION OF THE DEBTORS.

12.	On the Effective Date, the existence of each Debtor shall be terminated and dissolved as provided in the Plan, as modified by this Order.

13.	Assets and properties transferred by a Debtor to the Creditor Trust will, from and after such transfer, be considered Creditor Trust Assets for all purposes of the Plan.  To the extent the First Lien Credit Agreement Claims remain outstanding, the liens securing the First Lien Credit Agreement Claims shall remain attached to the Creditor Trust Assets (including the proceeds of all Non-Designated Assets and all Retained Causes of Action, if any, and proceeds thereof but excluding the Committee Settlement Payment and the Avoidance Actions, other than the Acquired Causes of Action) as first priority liens, with the same priority as such liens existed on the Petition Date (including after giving effect to the Intercreditor Agreement, the Holdco Subordination Agreement or any other subordination agreement) subject to any Non-Primed Liens, as defined in the Final DIP Order [D.I. 190], held by any Senior Lien Claimant (collectively, the "Senior Liens"), as defined in the Order (I) Authorizing (A) Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief (the "Designated Asset Sale Order").

14.     On each Sale Closing Date prior to the Effective Date, the Committee Settlement Payment shall be funded and carved-out from the First Lien Lender's collateral and shall be transferred to counsel for the Committee who shall hold the funds in trust for the benefit of holders of Class 6 Convenience Claims and the Trust Funding for the Creditor Trust.  On the Effective Date the Committee Settlement Payment shall be transferred by counsel to the Committee to the Creditor Trust.

15.     Any Assets designated on a notice of abandonment filed by the Debtors, in consultation with the Creditors' Committee, solely with regard to matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, with the Bankruptcy Court on or before the Effective Date shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code section 554 without further order of the Bankruptcy Court; provided, however, that such assets shall not be deemed abandoned if a sale order is entered by the Court on or before the Effective Date with respect to such assets.  The filing of the Plan shall constitute the filing of a motion to abandon pursuant to 11 U.S.C. § 554 and relinquish the Abandoned Assets.  Entry of this Order shall constitute (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the Abandoned Assets and (ii) authorization to relinquish any interest the Debtors' hold in the Abandoned Assets; provided, however, that all Liens of the Senior Lien Claimants shall remain attached to the applicable Abandoned Assets in their original order of priority, with the same validity, force and effect as they had against the applicable Abandoned Assets prior to such abandonment.

**B.     ACTIONS IN FURTHERANCE OF THE PLAN.**

16.     Pursuant to section 1142 of the Bankruptcy Code and applicable state law, no action of the equity holders or directors of the Debtors or any other party shall be required for

the Debtors or the Creditor Trustee to:  (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan and the Stalking Horse APA (collectively, the "<u>Plan-Related Documents</u>").

17.    To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders or directors of any of the Debtors, this Order shall, pursuant to section 1142 of the Bankruptcy Code and applicable state law, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and equity holders of the appropriate Debtor.

18.    The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of any Debtor or the Creditor Trustee to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby.

C.    **CREATION OF CREDITOR TRUST.**

19.    Subject to paragraph 14 herein, on the Effective Date, the Creditor Trust will be established pursuant to the Creditor Trust Agreement for the purpose of liquidating the Retained Causes of Action, resolving all Disputed Claims, making distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; provided, however, no N-D Asset Wind-Down Trust Assets will exist as of the Effective Date and only the Creditor Trust shall be established.  The Creditor Trust shall have a separate existence from the Debtors.

D.        **FUNDING OF THE CREDITOR TRUST.**

20.        On the Effective Date, the Creditor Trust Assets and the Trust Funding shall be transferred to the Creditor Trust.

E.        **CREDITOR TRUSTEE.**

21.        John T. Young, Jr., Senior Managing Director of Conway MacKenzie, Inc. is appointed Creditor Trustee.

22.        As of the Effective Date, the Creditor Trustee (as trustee of the Creditor Trust) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of each Debtor and in the name of each Debtor to take any action and to execute any instrument that the Creditor Trustee, in the Creditor Trustee's sole discretion (which discretion is not subject to challenge by any party), may deem necessary or advisable, provided, however, the Creditor Trustee is under no duty or obligation to exercise the duties in this paragraph.

23.        In accordance with Section IV.E.2. of the Plan, the Creditor Trustee will be the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.   The powers, rights and responsibilities of the Creditor Trustee will be specified in the Creditor Trust Agreement and will include the authority and responsibility to take, and cause the Debtors to take, the actions contemplated by Section IV.E.1.g. of the Plan and any actions necessary to consummate the transactions contemplated by the Stalking Horse APA.  The Creditor Trustee will distribute the Creditor Trust Assets and the assets and properties of the Debtors in accordance with the provisions of the Plan and the Creditor Trust Agreement.  Other rights and duties of the Creditor

Trustee and the beneficiaries of the Creditor Trust will be as set forth in the Creditor Trust Agreement.

24.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, for the avoidance of doubt, the Creditor Trustee and the Creditor Trust (a) shall be bound by the terms of the Stalking Horse APA and (b) is hereby authorized to fulfill any and all obligations and duties of the Debtors thereunder.

25.     The Creditor Trustee, and in the exercise of the Creditor Trustee's reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Creditor Trust, make timely distributions, and not unduly prolong the duration of the Creditor Trust.  The liquidation of the Creditor Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or causes of action, or otherwise.  The Creditor Trustee shall have the absolute right to pursue or not to pursue any and all Creditor Trust Assets as it determines is in the best interests of the beneficiaries of the Creditor Trust, and consistent with the purposes of the Creditor Trust, and shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence.  The Creditor Trustee may incur any reasonable and necessary expenses in liquidating and converting the Creditor Trust Assets to Cash and shall be reimbursed in accordance with the provisions of the Creditor Trust Agreement.

**F.     FEES AND EXPENSES OF THE CREDITOR TRUST.**

26.     The Creditor Trust Expenses will be paid from the Creditor Trust Assets, the Trust Funding and the assets and properties of the Debtors in accordance with the Plan and the Creditor Trust Agreement.

### G.      RETAINED PROFESSIONALS OF THE CREDITOR TRUST.

27.      The Creditor Trustee, on behalf of the Creditor Trust, may, without further order of the Bankruptcy Court, retain Third Party Disbursing Agents, professionals or other Entities to assist in carrying out its duties hereunder and may compensate and reimburse the expenses of these professionals or other Entities without further order of the Bankruptcy Court from the Creditor Trust Assets and the assets and properties of the Debtors in accordance with the Plan and the Creditor Trust Agreement.

### H.      NO REVESTING OF CREDITOR TRUST ASSETS.

28.      No Creditor Trust Asset will revest in any Debtor on or after the date such Creditor Trust Asset is transferred to the Creditor Trust but will vest upon such transfer in the Creditor Trust to be administered by the Creditor Trustee in accordance with the Plan and the Creditor Trust Agreement, subject to all Non-Primed Liens of each Senior Lien Claimant.

### I.      POST-CONFIRMATION REPORTING.

29.      Commencing on the first full quarter following the Effective Date, the Creditor Trustee, on behalf of the Creditor Trust, will File unaudited reports of its activities and the financial affairs of the Creditor Trust with the Bankruptcy Court on a quarterly basis, within 30 days after the conclusion of each such quarterly period until the earlier of the entry of a final decree closing each of the Bankruptcy Cases or a Bankruptcy Court order converting or dismissing each of the Bankruptcy Cases.  Such filed unaudited quarterly reports will contain information regarding the liquidation of the Causes of Action, the distributions made by the Creditor Trustee and other matters required to be included in such reports in accordance with the Creditor Trust Agreement and any applicable Bankruptcy Court and United States Trustee guidelines for such matters.

**J.      CAUSES OF ACTION.**

30.      On the Effective Date, all Retained Causes of Action will be transferred from the Debtors to the Creditor Trust.  Any recovery of Cash by the Creditor Trustee on account of such Retained Causes of Action will be distributed pursuant to the terms of the Plan and the Creditor Trust Agreement.  A nonexclusive schedule of currently pending actions and claims brought by one or more Debtors is attached as Exhibit IV.A. of the Plan.  In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on Exhibit IV.A. of the Plan shall not be deemed an admission, denial or waiver of any Cause of Action that any Debtor or Estate may hold against any Entity.

**K.      TAX TREATMENT OF THE CREDITOR TRUST.**

31.      The treatment of the Creditor Trust for federal income Tax purposes shall be as provided in Section IV.E.7. of the Plan and the Creditor Trust Agreement.

**L.      PRESERVATION OF CAUSES OF ACTION; SETTLEMENT OF CLAIMS AND RELEASES.**

32.      Unless a Retained Cause of Action against any Entity is expressly transferred, waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the this Order, any sale order, and the DIP Order), the Debtors expressly reserve such Retained Causes of Action to be transferred by the Debtors to the Creditor Trust pursuant to the Plan, which Retained Causes of Action may include Avoidance Actions, for possible adjudication by the Creditor Trustee, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Retained Causes of Action have been released in the

Plan or any Final Order (including this Order and the Final DIP Order).  In accordance with section 1123(b) of the Bankruptcy Code, the Creditor Trust may enforce all rights to commence and pursue, as appropriate, any and all such Retained Causes of Action, and the Creditor Trust's rights to commence, prosecute, or settle any such Retained Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Creditor Trustee will not pursue any and all available Retained Causes of Action against them.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Creditor Trust and the Creditor Trustee on behalf of the Creditor Trust.  In addition, the Creditor Trust shall have the right to pursue (but not the duty) or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

33.     Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of this Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and Claim and Interest holders and is fair, equitable and reasonable.

**M.     RELEASES AND EXCULPATION PROVISION.**

34.     The Plan release and exculpation provisions as set forth in Sections IV.I.3a. and IV.I.3.b. and IV.J. of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further action by the Court, any of the parties to such releases or any other party.  For the avoidance of doubt, the Senior Lien Claimants who have properly opted out of the voluntary release and injunction provisions in conjunction with the submission of a Ballot do not consent to the release provisions and related injunctive provisions contained in the Plan and are, therefore, deemed to have opted out of those provisions and are not considered to be 'Releasing Parties' as contemplated by those provisions.

**N.     RELEASE OF LIENS.**

35.     Except as otherwise provided in the Plan, this Order or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI of the Plan, all Liens against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall revert to the applicable Estate.

36.     Notwithstanding anything contained in the Definitive Documentation, including without limitation, the Plan and this Confirmation Order or any other document to the contrary, the Senior Lien Claimants shall retain all Liens that secure each Senior Lien Claim, including the right to enforce such Senior Lien after the Effective Date until such Claim and Senior Lien are determined by agreement or Final Order and paid to the extent Allowed as a Senior Lien; provided that only Senior Liens shall be retained on the Designated Assets. All rights of the Senior Lien Claimants, with respect to any Senior Lien that they may have, shall

- 33 -

remain unaffected and unabridged by the terms of the Plan or this Confirmation Order and all such rights and Senior Liens are expressly preserved in their original order of priority, and with the same validity, force and effect as existed prior to the Petition Date. In the event of any conflict between the terms of the Definitive Documentation, including without limitation, the Plan and this Confirmation Order, and the Designated Asset Sale Order as to Senior Liens of the Senior Lien Claimants against the Designated Assets, the terms of the Designated Asset Sale Order shall control. In the event of a sale of any of the Non-Designated Assets, all Liens of the Senior Lien Claimants shall attach to the applicable proceeds of any sale in their original order of priority with the same validity, force and effect as they had against the applicable Non-Designated Assets prior to such sale(s). In the event of any conflict between the terms of the Definitive Documentation, including without limitation, the Plan and the Confirmation Order, and any Non-Designated Asset Sale Order as to Liens of the Senior Lien Claimants against the Non-Designated Assets, the terms of the Non-Designated Asset Sale Order shall control. In the event of an abandonment of any of the Non-Designated Assets, all Liens of the Senior Lien Claimants shall remain attached to the applicable Abandoned Assets in their original order of priority with the same validity, force and effect as they had against the applicable Abandoned Assets prior to such abandonment.

## O.   EXEMPTIONS FROM TAXATION.

37.   Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax:  (1) the execution and implementation of the Creditor Trust Agreement, including any transfer of assets or properties to or by the Creditor Trust or any Debtor; or (2) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including

- 34 -

any plan or agreement adopted or executed in connection with any transaction pursuant to the Plan.

## V.   APPROVAL OF EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

38.     The Executory Contract and Unexpired Lease provisions of Article V of the Plan are specifically approved, and this Order shall constitute an order of the Court approving the rejections described in Article V of the Plan, pursuant to section 365 of the Bankruptcy Code, subject to the other terms of this Order.

## VI.   INSURANCE NEUTRALITY.

39.     Notwithstanding any other term or provision in the Plan or this Order, nothing in the Plan, this Order or any other document related to any of the foregoing (including, without limitation, any provision that purports to be preemptory or supervening or grants an injunction or release) (a) will prejudice any of the rights, claims or defenses of the Debtors' insurers ("Insurers") under any insurance policies under which the Debtors, the Estates, the Creditor Trust, and/or the Creditor Trustee seek(s) coverage (the "Policies") or any agreements related to the Policies (together, with the Policies, the "Insurance Agreements"); (b) will modify any of the terms, conditions, limitations and/or exclusions contained in the Insurance Agreements; (c) shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Agreements, or create any right of action against the Insurers that does not otherwise exist under applicable non-bankruptcy law; (d) shall be deemed to prejudice any of the Insurers' rights and/or defenses in any pending or subsequent litigation in which the Insurers or the Debtors, the Estates, the Creditor Trust, and/or the Creditor Trustee may seek any declaration regarding the nature and/or extent of any insurance coverage under the Insurance Agreements; (e) shall be deemed to alter the continuing duties and obligations of any

insured under the Insurance Agreements; or (f) shall be construed as an acknowledgement that the Insurance Agreements cover or otherwise apply to any claims or that any claims are eligible for payment under any of the Insurance Agreements.

## VII.    SUBSTANTIVE CONSOLIDATION.

40.    The substantive consolidation of all of the Estates into a single consolidated Estate for all purposes associated with confirmation and consummation of the Plan, as set forth in Section IV.M. of the Plan, is hereby approved.  Specifically:  (a) all assets and liabilities of the Debtors shall be deemed merged; (b) all Claims of one Debtor against another Debtor shall be deemed eliminated; (c) all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of all of the Debtors; and (d) each and every Claim Filed or to be Filed in the Bankruptcy Cases of any of the Debtors shall be deemed Filed against the Debtors and shall be deemed one Claim against and a single obligation of all of the Debtors.  Such consolidation (other than for purposes of implementing the Plan) shall not affect the legal and corporate structures of the Debtors and shall not affect any Liens on the Debtors' assets, including Liens securing the First Lien Credit Agreement, the Second Lien Credit Facility, and the Senior Liens, all of which remain attached with the same priority as in effect on the Petition Date.

41.    Notwithstanding the substantive consolidation provided for herein and in the Plan, nothing shall affect the obligation of each and every Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until such time as a particular case is closed, dismissed or converted.

- 36 -

## VIII.   OBJECTIONS TO CONFIRMATION.

### A.      RESOLUTION OF CERTAIN OBJECTIONS TO CONFIRMATION.

42.      Certain of the Objections to Confirmation, whether informal or Filed, are hereby resolved on the terms and subject to the conditions set forth below.  The compromises and settlements contemplated by each resolution to an Objection are fair, equitable and reasonable, are in the best interests of the Debtors and their respective Estates and creditors and are expressly approved pursuant to Bankruptcy Rule 9019.

43.      The Geophysical Objection has been resolved by language in the proposed order on the Debtors' pending sale motion.

44.      The USA is hereby deemed to have opted out of all releases under the Plan.

45.      Nothing in this Confirmation Order or the Plan discharges, releases, precludes or enjoins: (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any person or entity other than the Debtors.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Bankruptcy Court, any liability described in the preceding sentence.

46.      Notwithstanding anything else to the contrary in the Plan, Plan Supplement, Confirmation Order, or Debtors' Notice of Intent to Abandon Estate Assets, the escrow account established by Shoreline Southeast, LLC, pursuant to Resolution #15-08-017 of the Louisiana State Mineral and Energy Board (Legal & Title Controversy Committee) (the "State") and escrow letter agreement with The Louisiana Land and Exploration Company LLC

("LL&E") dated February 3, 2016, and currently maintained at Whitney Bank as Account No. XXXX2150 (the "Escrow Account"), shall remain in escrow under the control of the Creditor Trust following entry of this Confirmation Order.  The Trustee of the Creditor Trust shall be authorized to execute any document, enter into an additional escrow agreement, or take such further actions as may be necessary to transfer the Escrow Account funds upon receipt of joint instructions regarding the Escrow Account from the State and LL&E.  The State and LL&E shall provide such joint instructions within 30 days of the entry of this Order.

47.     Notwithstanding any other provision of the Plan or this Order: (i) third-party claims against parties, other than the Debtors or the Released Parties, pursuant to surety bonds are unaffected by the Plan and this Order; (ii) third-party rights to net or recoup are preserved, including rights under applicable joint operating agreements; (iii) the abandonment of assets will not transfer title or operatorship of such assets to any non-Debtor party; (iv) any compromise of the State of Louisiana's rights or claims, as provided in this Order and in the Designated Asset Sale Order, will not impair any rights or claims against non-Debtors who do not receive a release under the Plan, or any claims that can be asserted under the Plan; (v) to the extent that an executory contract is listed on any notice of abandonment filed by the Debtors, such contract will be treated as an executory contract rejected pursuant to the Plan; and (vi) any assets listed on any notice of abandonment filed by the Debtors shall vest free and clear of the liens of the First Lien Lenders and the Second Lien Lenders.

48.     In resolution of the Objections and claims filed by Apache Corporation ("Apache Corp.") and Apache Louisiana Minerals, LLC ("ALM" and, together with Apache Corp, "Apache"), Apache Corp. shall have an allowed claim of $33,895.58, and ALM shall have

an allowed claim for $150,000.00, and the foregoing claims shall be treated in accordance with Class 6 (Convenience Claims) of the Plan.  All other claims filed by Apache shall be disallowed.

49.    In resolution of the Objections filed by The Roman Catholic Church of the Archdiocese of New Orleans, Point au Fer, LLC, and Bradish Johnson Company, Ltd., the following wells from the Point au Fer Field in Terrebonne Parish, Louisiana and Magnolia Field, Plaquemines Parish, Louisiana shall be considered  as high priority wells, to the extent consistent with  regulatory examination, in connection with the Louisiana Escrow: (i) Mary A. Smyth Nelson et al Well No. 9, Serial No. 68493; (ii) VUA; S.L. 649 Nelson LL&E Well No. 1, Serial No. 75412; (iii) VUC; State Nelson et al Well No. 14, Serial No. 218533; (iv) VUC; Mary A. Smyth Nelson et al Well No. 15, Serial No. 223028; (v) VUC; S.L. 649 Well No. 1, Serial No. 231997; (vi) Point au Fer LLC Well No. 1, Serial No. 234153; (vii) Serial No. 217782:  Bradish Johnson Co. 1; (viii) Serial No. 217819: Bradish Johnson Co. 2; and (ix) Serial No. 218972: Bradish Johnson Co. 3.

50.    Prior to Closing (as defined in the Stalking Horse APA), there shall be established an escrow account to be established and managed by the Louisiana Office of Conservation pursuant to the law of the Louisiana Oilfield Site Restoration Fund (the "Louisiana Escrow").  Upon Closing, the Stalking Horse Bidder is transferring $2,062,500 to the Louisiana Escrow.  In addition to such funding: (i) all liens, rights and claims of the DIP Lenders and the First Lien Lenders to proceeds from the sale of the Non-Designated Assets, up to $400,000, shall be assigned to the State of Louisiana Office of Conservation for the benefit of the State of Louisiana; and (ii) up to $287,500 of the N-D Asset Payment that would have been payable as part of the Convenience Class Distribution (which shall be funded from the first distributable proceeds received by the estates from the sale of the Non-Designated Assets), shall be assigned

- 39 -

to the State of Louisiana Office of Conservation for the benefit of the State of Louisiana.  For both sub-clauses (i) and (ii) any proceeds payable as a result of such assignment shall be transferred to the Louisiana Escrow and shall be specifically designated for any plugging and abandonment of Shoreline's wells abandoned as part of these bankruptcy proceedings.  The Convenience Class Distribution shall be reduced by the amount set forth in the preceding sub-clause (ii).  For the avoidance of doubt, nothing in the Definitive Documentation, including without limitation, the Plan and this Confirmation Order, shall be deemed to release, discharge or otherwise impair the Liens, if any, of the Senior Lien Claimants with respect to the Non-Designated Assets and any applicable proceeds derived from any sale thereof, which Liens shall remain attached the Non-Designated Assets and any applicable proceeds of any sale of any applicable Non-Designated Assets in their original order of priority with the same validity, force and effect as they had prior to the entry of this Confirmation Order or any applicable sale(s).

### B.   CERTAIN OBJECTIONS TO CONFIRMATION OVERRULED.

51.   All Objections not otherwise addressed herein or previously withdrawn are hereby overruled for the reasons set forth on the record at the Combined Hearing and in this Order.

### IX.   INJUNCTIONS.

52.   Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

53.   Except as provided in the Plan or this Order and other than with respect to a right of recoupment or a setoff, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability subject to the Plan or an Interest or other right

of an equity security holder that is terminated pursuant to the terms of the Plan or cause of action of a non-Debtor that is released under the Plan will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities, Interests or rights: (1) commencing or continuing in any manner or means any action or other proceeding against the Debtors, the Creditor Trust, the Creditor Trustee or the Released Parties, whether directly, derivatively or otherwise, other than to enforce any right pursuant to the Plan (or any order resolving the dispute) to a Distribution; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties other than as permitted pursuant to (1) above; (3) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Creditor Trust, the Released Parties, or their respective property; (4) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties; and (5) subject to the proviso in Article X of the Plan regarding jurisdiction, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.   Such injunction shall extend to the successors, if any, of the Debtors, the Creditor Trust, and the Creditor Trustee and to their respective properties and interests in property.   Anyone injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.   Notwithstanding anything to the contrary herein, nothing in this Confirmation Order shall be deemed to preclude the Senior Lien Claimants from prosecuting the Lien-Ranking Adversaries (as defined in the Designated Asset Sale Order) or taking such other

NAI-1502396849v6

or further action as the Senior Lien Claimants deem, in their sole discretion, is necessary to assert, prosecute, or otherwise pursue or enforce the Senior Liens, subject to applicable law.

## X.   RETENTION OF JURISDICTION BY THE COURT.

54.   Notwithstanding the entry of this Order and the occurrence of the Effective Date, pursuant to Article X of the Plan, this Court shall retain such exclusive jurisdiction over the Bankruptcy Cases after the Effective Date as is legally permissible, including exclusive jurisdiction over the matters described in Sections X.1. through X.14. of the Plan; provided, however, that Article X of the Plan is not intended to (a) expand the Court's jurisdiction beyond that allowed by applicable law, (b) provide the Court jurisdiction over any Causes of Action (other than Avoidance Actions arising under section 547 of the Bankruptcy Code), (c) impair the rights of an Entity to invoke the jurisdiction of a court, commission, or tribunal, or (d) impair the rights of an Entity to seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d).

## XI.   DISSOLUTION OF THE CREDITORS' COMMITTEE

55.   On the Effective Date, the Creditors' Committee, except as set forth below, will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Bankruptcy Cases.   Prior to the dissolution of the Creditors' Committee, standing to commence, prosecute and compromise all Retained Causes of Action shall transfer to the Creditor Trust.   The Professionals retained by the Creditors' Committee and the members thereof will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.c.ii. of the Plan, (b) in connection with any

- 42 -

appeal pending as of the Effective Date, including any appeal of the Confirmation Order and (c) at the request of the Creditor Trustee, whether or not the Creditor Trustee has retained such Professional, not to exceed $750,000 in the aggregate.  Following the Effective Date, none of the Creditors' Committee's professionals shall be precluded from representing any Entity acting for the Creditor Trust or other Entities created by the Plan, including, without limitation, the Creditor Trustee or the Creditor Trust.

56.    The Professionals retained by the Debtors will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.c.ii. of the Plan and (b) at the request of the Creditor Trustee, whether or not the Creditor Trustee has retained such Professional.

## XII.    NO N-D ASSET WIND-DOWN TRUST WILL BE ESTABLISHED

57.    Notwithstanding any other provision of the Plan or this Order, because no N-D Asset Wind-Down Trust Assets will exist as of the Effective Date:  (a) the N-D Asset Wind-Down Trust will not be established; (b) no N-D Wind Down Trustee will be appointed; and (c) the Liquidating Debtors are unnecessary and will not be formed.  Instead, the Debtors will be liquidated and dissolved on the Effective Date without further order of the Bankruptcy Court.

## XIII.    WAIVER OF THE STAY OF BANKRUPTCY RULE 3020(e).

58.    Pursuant to Bankruptcy Rule 3020(e), this Order shall not be stayed and shall be immediately effective upon entry on the docket of this Court.

- 43 -

## XIV.   NOTICE OF ENTRY OF CONFIRMATION ORDER.

59.   Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Creditor Trust is directed to serve, within 20 Business Days after the occurrence of the Effective Date, a notice of the entry of this Order, which shall include notice of certain of the bar dates established by the Plan and this Order and notice of the Effective Date, substantially in the form of Exhibit B attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Combined Hearing; provided, however, that the Creditor Trust shall not be required to serve the Confirmation Notice on any holder of Claims or Interests where the prior service of the notice of the Combined Hearing was returned to the Debtors as undeliverable and no forwarding address has been provided.

60.   No later than 20 Business Days after the Effective Date, the Creditor Trust is directed to publish the version of the Confirmation Notice substantially in the form attached hereto as Exhibit C once in the *Houston Chronicle* and *The Daily Advertiser*.

**

  **Signed:  February 24, 2017.**

 

_____

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

---

** The Court has made additional findings of fact and conclusion<sup>s</sup> of law on the record pursuant to Bankruptcy Rule 7052 which are incorporated herein.

NAI-1502396849v6

**<u>EXHIBIT A</u>**

**FIRST AMENDED JOINT PLAN OF LIQUIDATION OF
SHORELINE ENERGY LLC AND ITS DEBTOR AFFILIATES**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SHORELINE ENERGY LLC, *et al.*, | : | Case No. 16-35571 (DRJ) |
| | : | |
| Debtors. | : | (Jointly Administered) |

| | | |
|---|---|---|
| **Shoreline Energy LLC** | : | **Case No. 16-35571 (DRJ)** |
| **Harvest Development LLC** | : | **Case No. 16-35572 (DRJ)** |
| **Shoreline Central Corporation** | : | **Case No. 16-35573 (DRJ)** |
| **Shoreline EH LLC** | : | **Case No. 16-35574 (DRJ)** |
| **Shoreline Energy Partners, LP** | : | **Case No. 16-35576 (DRJ)** |
| **Shoreline GP LLC** | : | **Case No. 16-35577 (DRJ)** |
| **Shoreline Offshore LLC** | : | **Case No. 16-35578 (DRJ)** |
| **Shoreline Southeast LLC** | : | **Case No. 16-35579 (DRJ)** |
| | : | |
| | : | **FIRST AMENDED JOINT PLAN OF** |
| | : | **LIQUIDATION OF SHORELINE** |
| | : | **ENERGY LLC AND ITS DEBTOR** |
| | | **AFFILIATES** |

Thomas A. Howley (TX 24010115)
Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

January 9, 2017

## TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME .......... 1

     A.      Defined Terms ................................................................................................................ 1

     B.      Rules of Interpretation and Computation of Time ......................................................... 11

         1.      Rules of Interpretation ..................................................................................... 11

         2.      Computation of Time ....................................................................................... 12

ARTICLE II      CLASSES OF CLAIMS AND INTERESTS ................................................................ 12

ARTICLE III      TREATMENT OF CLAIMS AND INTERESTS ......................................................... 13

     A.      Unclassified Claims ...................................................................................................... 13

         1.      Payment of Administrative Claims ................................................................. 13

               a.      Administrative Claims in General ..................................................... 13

               b.      Statutory Fees .................................................................................... 13

               c.      Bar Dates for Administrative Claims ................................................. 13

         2.      Payment of Priority Tax Claims ...................................................................... 14

               a.      Priority Tax Claims in General ........................................................... 14

               b.      Other Provisions Concerning Treatment of Priority Tax Claims ...................... 14

     B.      Classified Claims .......................................................................................................... 14

         1.      Class 1 Claims (Priority Claims) ..................................................................... 14

         2.      Class 2 Claims (DIP Facility Claims) .............................................................. 14

         3.      Class 3 Claims (First Lien Credit Agreement Claims) ..................................... 15

         4.      Class 4 Claims (Second Lien Credit Facility Claims) ...................................... 15

         5.      Class 5 Claims (Other Secured Claims) ........................................................... 16

         6.      Class 6 Claims (Convenience Claims) ............................................................. 16

         7.      Class 7 Claims (General Unsecured Claims and Holdco Claims) ................... 16

         8.      Class 8 Claims (Existing Equity) ..................................................................... 16

         9.      Class 9 Claims (Intercompany Claims) ............................................................ 17

ARTICLE IV      MEANS FOR IMPLEMENTATION OF THE PLAN ................................................. 17

     A.      Causes of Action ........................................................................................................... 17

     B.      Liquidating Debtors ...................................................................................................... 17

         1.      General ............................................................................................................. 17

         2.      Liquidating Shoreline ...................................................................................... 17

         3.      Other Liquidating Debtors ............................................................................... 17

         4.      Liquidation ...................................................................................................... 18

         5.      Dissolution ...................................................................................................... 18

     C.      Committee Settlement Payment ..................................................................................... 18

     D.      Abandonment of Certain Assets .................................................................................... 18

# TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| E. | | Liquidating Trusts | 19 |
| | 1. | Formation of the Liquidating Trusts | 19 |
| | 2. | Liquidating Trustees | 21 |
| | 3. | Fees and Expenses of the Liquidating Trusts | 22 |
| | 4. | Post-Confirmation Reporting | 22 |
| | 5. | Retained Professionals of the Liquidating Trusts | 22 |
| | 6. | Indemnification | 22 |
| | 7. | Tax Treatment | 22 |
| F. | | Cooperation by the Purchaser | 23 |
| G. | | No Revesting of Liquidating Trust Assets | 23 |
| H. | | Term of Injunctions or Stays | 23 |
| I. | | Preservation of Retained Causes of Action; Settlement of Claims and Releases | 23 |
| | 1. | Preservation of All Retained Causes of Action Not Expressly Settled or Released | 23 |
| | 2. | Comprehensive Settlement of Claims and Controversies | 24 |
| | 3. | Releases | 24 |
| | | a. Release by the Debtors and the Liquidating Debtors | 24 |
| | | b. Release by Holders of Claims or Interests | 24 |
| | | c. Injunction Related to Releases | 25 |
| J. | | Limitation on Liability | 25 |
| | 1. | Liability for Actions in Connection with the Liquidation Cases | 25 |
| | 2. | Rights of Action in Connection with the Liquidation Cases | 25 |
| K. | | Release of Liens | 25 |
| L. | | Effectuating Documents; Further Transactions; Exemption From Certain Transfer Taxes | 26 |
| M. | | Substantive Consolidation | 26 |
| N. | | Cramdown | 26 |
| ARTICLE V | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 27 |
| A. | | Executory Contracts and Unexpired Leases to Be Rejected | 27 |
| B. | | Bar Date for Rejection Claims | 27 |
| C. | | Approval of Procedures | 27 |
| D. | | Insurance Policies and Agreements | 28 |
| | 1. | Assumed Insurance Policies and Agreements | 28 |
| | 2. | Reservation of Rights | 28 |
| | 3. | Insurance on the Remaining Non-Designated Assets | 28 |
| ARTICLE VI | | PROVISIONS GOVERNING DISTRIBUTIONS | 28 |

NAI-1502260203v12

**TABLE OF CONTENTS**
(continued)

Page

A.    Distributions for Claims Allowed as of the Effective Date ........................ 28

B.    Method of Distributions to Holders of Claims .......................................... 29

C.    Compensation and Reimbursement for Services Related to Distributions .......... 29

    1.    Compensation and Reimbursement .......................................... 29

    2.    Investment of Cash Related to Distributions ............................ 29

D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ........... 29

    1.    Delivery of Distributions to Holders of Allowed Claims ............... 29

    2.    Undeliverable Distributions Held by Disbursing Agents ............... 29

        a.    Holding and Investment of Undeliverable Distributions ............... 29

        b.    After Distributions Become Deliverable .................. 30

        c.    Failure to Claim Undeliverable Distributions ............... 30

E.    Means of Cash Payments ............................................................. 30

F.    Timing and Calculation of Amounts to Be Distributed ........................ 30

    1.    Allowed Claims ................................................................ 30

    2.    De Minimis Distributions .................................................. 30

    3.    Compliance with Tax Requirements ...................................... 31

        a.    Withholding and Reporting .................................... 31

        b.    Backup Withholding ............................................. 31

        c.    Obligations of Distribution Recipients ..................... 31

    4.    Compliance with Domestic Relations Orders ........................ 31

G.    Setoffs ..................................................................................... 31

H.    Allocation of Payments .............................................................. 32

ARTICLE VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................ 32

A.    Prosecution of Objections to Claims ............................................. 32

    1.    Objections to Claims ........................................................ 32

    2.    Authority to Prosecute Objections ...................................... 32

B.    Treatment of Disputed Claims .................................................... 32

    1.    No Payments on Account of Disputed Claims and Disputed Claims Reserves ........... 32

    2.    Recourse ....................................................................... 32

C.    Distributions on Account of Disputed Claims Once Allowed ............... 32

ARTICLE VIII    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ........................................................ 33

A.    Conditions to Confirmation ........................................................ 33

B.    Conditions to the Effective Date .................................................. 33

C.    Waiver of Conditions to Confirmation or the Effective Date ............... 34

**TABLE OF CONTENTS**
(continued)

| | | | Page |
|---|---|---|---|

D.      Effect of Nonoccurrence of Conditions to the Effective Date ....................................................... 34

ARTICLE IX      INJUNCTION AND SUBORDINATION RIGHTS ........................................................ 34

A.      Injunction ............................................................................................................................ 34

B.      Subordination Rights......................................................................................................... 35

ARTICLE X      RETENTION OF JURISDICTION ......................................................................... 35

ARTICLE XI      MISCELLANEOUS PROVISIONS ........................................................................ 36

A.      Dissolution of the Creditors' Committee and the Professional Fee Claims of the Professionals Retained by the Debtors.............................................................................. 36

      1.      Dissolution of the Creditors' Committee............................................................ 36

      2.      Professional Fee Claims of the Professionals Retained by the Debtors........................ 37

B.      Modification of the Plan and Exhibits.............................................................................. 37

C.      Revocation of the Plan ....................................................................................................... 37

D.      Service of Certain Exhibits ............................................................................................... 37

E.      Payment of Fees and Expenses of the DIP Agent .......................................................... 37

F.      Payment of Fees and Expenses of Purchaser, HB Parent and its Affiliates ................ 37

G.      Service of Documents ......................................................................................................... 37

      1.      The Debtors and the Liquidating Debtors.......................................................... 38

      2.      The Liquidating Trustees, at the address set forth in the Liquidating Trust Agreements ........................................................................................................... 38

      3.      The Creditors' Committee.................................................................................... 38

      4.      The U.S. Trustee .................................................................................................. 38

H.      Inconsistencies .................................................................................................................... 38

## **TABLE OF EXHIBITS**[1]

Exhibit I.A.35.          Creditor Trust Agreement

Exhibit I.A.94.          N-D Asset Wind-Down Trust Agreement

Exhibit IV.A.           Nonexclusive Schedule of Retained Causes of Action

Exhibit IV.B.2.b.       Forms of Articles of Organization and By-Laws of Liquidating Shoreline

---

[1]      To the extent not attached to and Filed with the Plan, Plan Exhibits shall be Filed and made available for review on the web site of Prime Clerk LLC ("Prime Clerk"), the Debtors' claims and noticing agent, at https://cases.primeclerk.com/shorelineenergy no later than 10 days before the deadline to object to Confirmation of the Plan.  The Debtors also will serve such Exhibits on their then current Bankruptcy Rule 2002 service list no later than 10 days before the deadline to object to Confirmation of the Plan.  The Debtors reserve the right to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed.  The Debtors shall File and shall make available on Prime Clerk's web site all modified, amended, supplemented or restated Exhibits as promptly as possible.

## INTRODUCTION

The debtors in the above-captioned cases (collectively, the "Debtors") propose the following joint plan of liquidation under title 11 of the United States Code.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**A.    Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.     **"Abandoned Assets"** means all of the Debtors' rights, interest and title to any assets not sold or subject to a proposed sale agreement as of the Effective Date that are designated on a notice of abandonment filed by the Debtors (in consultation with the Restructuring Support Parties, and in consultation with the Creditors' Committee regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee), or the N-D Asset Wind-Down Trustee with the Bankruptcy Court, excluding:  (i) cash, (ii) the Committee Settlement Payment; and (iii) the Retained Causes of Action.

2.     **"Acquired Causes of Actions"** means Causes of Action, and the proceeds thereof, acquired by Purchaser pursuant to the Purchaser APA or by any other Successful Bidder, including Avoidance Actions related to existing customers, vendors, employees acquired by Purchaser and released parties which will be identified no later than the Sale Closing Date.

3.     **"Administrative Claim"** means (a) a Claim for costs and expenses of administration allowed under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the respective Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for leased equipment and premises); (ii) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 or 503 of the Bankruptcy Code, including Fee Claims; (iii) Claims for the value of any goods received by the Debtors within 20 days before the Petition Date allowed in accordance with section 503(b)(9) of the Bankruptcy Code; and (iv) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1932; and (b) a Claim that is allowed as an Administrative Claim by Final Order.

4.     **"Affiliate"** means an "affiliate," as defined in section 101(2)(B) of the Bankruptcy Code, of the Debtors.

5.     **"Allowed Claim"** means:

a.     a Claim that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

b.     a Claim (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law and (ii) (a) to which no objection has been Filed by the applicable Claims Objection Bar Date and (b) that is not a Disputed Claim;

    c.   a Claim that is allowed:  (i) in any Stipulation of Amount and Nature of Claim executed by or on behalf of the applicable Debtor or the Liquidating Trustees and Claim holder and, if prior to the Effective Date, approved by the Bankruptcy Court; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

    d.   a Claim that the Debtors or the Liquidating Trustees determine prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan on or after the Effective Date.

   6.   **"Allowed . . . Claim"** means an Allowed Claim in the particular Class or category specified.

   7.   **"Alternative Transaction"** means, other than the transactions contemplated in the Restructuring Support Agreement or in its accompanying term sheets, any (a) sale, transfer, or other disposition, directly or indirectly, of any Designated Assets, (b) issuance, sale, transfer, or other disposition, in each case by any Debtor, of any class of equity securities, ownership interests, or voting securities of any Debtor, (c) merger, consolidation, recapitalization, business combination, or other similar transaction involving any Debtor, or (d) chapter 11 plan of reorganization or other restructuring or reorganization for, or liquidation of, any Debtor.

   8.   **"Avoidance Actions"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or the Estates, and the proceeds thereof (including any claim, counterclaim, setoff or offset right) under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 501, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code and other similar state law claims and causes of action.

   9.   **"Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder may indicate acceptance or rejection of the Plan or any election for treatment of such Claim under the Plan.

   10.   **"Bankruptcy Case"** means:  (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court; and (b) when used with reference to all Debtors, the chapter 11 cases pending for the Debtors in the Bankruptcy Court**.**

   11.   **"Bankruptcy Code"** means title 11 of the United States Code, as in effect on the Petition Date or thereafter amended with retroactive applicability to the Bankruptcy Cases.

   12.   **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Bankruptcy Cases.

   13.   **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended with retroactive applicability to the Bankruptcy Cases.

   14.   **"Bar Date"** means the applicable bar date by which a proof of Claim or a request for payment of Claims must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

   15.   **"Bar Date Order"** means the order of the Bankruptcy Court dated December 15, 2016 establishing certain Bar Dates [Docket No. 185] .

   16.   **"Bidding Procedures"** means the bidding procedures for the sale of the Designated Assets and the Non-Designated Assets approved by the Bankruptcy Court on December 15, 2016 [Docket No. 183].

17.    **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), the day after Thanksgiving and any date on which the Bankruptcy Court is closed by law or order.

18.    **"Cash"** means legal tender of the United States of America and equivalents thereof.

19.    **"Cash Investment Yield"** means the net yield earned by the applicable Disbursing Agent from the investment of Cash, if any, pending distribution pursuant to the Plan.  Any such investment will be in a manner consistent with the Debtors' investment and deposit guidelines and Section VI.C.  Net yield means the cash yield net of any investment expenses and taxes payable thereon**.**

20.    **"Causes of Action**" means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of any of the Debtors and/or the Estates, which are or may be pending on the Effective Date or prosecuted thereafter against any Entity (including, without limitation, present and former directors and officers of the Debtors), based in law or equity, including, without  limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date.

21.    **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

22.    **"Claims Objection Bar Date"** means, except as provided in Sections III.A.1.c., for all Claims the latest of:  (a) 270 days after the Effective Date; (b) 90 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court.

23.    **"Class"** means a class of Claims or Interests, as described in Article II.

24.    **"Committee Settlement"** means the settlement of the Creditors' Committee objections to the Restructuring Support Agreement and the DIP Order and the transactions contemplated therein, as set forth in the Settlement Term Sheet attached to the Stipulation and Order Authorizing the Debtors to Assume the Restructuring Support Agreement and Resolving Certain Objections [Docket No. 189].

25.    "**Committee Settlement Payment**" means up to $1,250,000, including:  (i) the Distributable Cash; (ii) the N-D Asset Payment; and (iii) the Trust Funding.  $225,000 of the Trust Funding shall be allocated to the Creditor Trust, and $25,000 of the Trust Funding shall be allocated to the N-D Asset Wind-Down Trust. However, to the extent the N-D Asset Wind-Down Trust is not formed, such portion of the Trust Funding shall be allocated to the Creditor Trust.

26.    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

27.    **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

28.    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

29.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance satisfactory to the Restructuring Support Parties and regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, the Creditors' Committee.

30.    "**Convenience Class Claim**" means any Allowed General Unsecured Claim for which the Claim holder has properly made the Convenience Class Election on a properly cast Ballot.

31.    "**Convenience Class Distribution**" means Cash comprised of (i) the Distributable Cash and (ii) the N-D Asset Payment and (iii) any turned over Distributions that are received by the First Lien Lenders or HB Parent pursuant to the Holdco Note Subordination Agreement and Article IX.B. herein, which amount shall be used to make distributions to holders of Allowed General Unsecured Claims in Class 6 that have made the Convenience Class Election.

32.    "**Convenience Class Election**" means the election available to a holder of a Allowed General Unsecured Claim to opt to receive the treatment outlined in Class 6 in full and complete satisfaction, discharge and release of such Allowed General Unsecured Claim; provided, that in making such election, the holder of such Allowed General Unsecured Claim has (a) voted in favor of the Plan and (b) such holder's Allowed General Unsecured Claim is (i) equal to or less than $150,000 or (ii) to the extent such holder's Allowed General Unsecured Claim is for an amount greater than $150,000, the Claim holder agrees, on a properly cast Ballot, to reduce the amount of such Allowed General Unsecured Claim for purposes of voting and distributions under the Plan to $150,000; provided, further, that (i) each holder of an General Unsecured Claim and its affiliates shall aggregate its General Unsecured Claims and be deemed to have one Claim for purposes of making a Convenience Class Election, and (ii) the First Lien Lenders and HB Parent shall not be entitled to make a Convenience Class Election on behalf of their Deficiency Claims.

33.    "**Creditors' Committee**" means the official committee of unsecured creditors of the Debtors appointed by the U.S. Trustee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code.

34.    "**Creditor Trust**" means a creditor recovery trust to be established on the Effective Date and funded with the Creditor Trust Assets.

35.    "**Creditor Trust Agreement**" means the trust agreement, to be dated as of or prior to the Effective Date, between the Debtors and the Creditor Trustee, governing the Creditor Trust, which shall be substantially in the form of Exhibit I.A.35. and otherwise satisfactory to the Restructuring Support Parties and the Creditors' Committee.

36.    "**Creditor Trust Assets**" means:  (i) the Retained Causes of Action and the proceeds thereof; (ii) the Distributable Cash; and (iii) the N-D Asset Payment.

37.    "**Creditor Trustee**" means the natural person appointed by the Creditors' Committee to act as trustee of the Creditor Trust in accordance with the terms of the Plan, the Confirmation Order and the Creditor Trust Agreement, or any successor appointed in accordance with the terms of the Plan and the Creditor Trust.  The Creditor Trust Trustee may be the same person as the N-D Asset Wind-Down Trustee.

38.    "**Debtors**" means, collectively, the above-captioned debtors and debtors in possession identified on the cover page to the Plan.

39.    "**Deficiency Claim**" means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim; provided however, that the First Lien Lenders and HB Parent shall not assert their Deficiency Claims after the Sale Closing Date.

40.    "**Definitive Documentation**" means the definitive documents and agreements governing the restructuring transactions contemplated by the Restructuring Support Agreement, in form and substance satisfactory to the Restructuring Support Parties and in consultation with the Creditors' Committee regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, and shall include: (i) the Plan (and all exhibits thereto), including any Plan supplement documents; (ii) the Confirmation Order; (iii) Disclosure Statement (and all exhibits thereto); (iv) the solicitation materials with respect to the Plan; (v) the Purchaser APA; (vi) the order authorizing the assumption of the

Restructuring Support Agreement; (vii) Designated Asset Sale Order; (viii) the DIP Credit Agreement; (ix) the DIP Order; (x) the Bidding Procedures; (xi) an order approving the bidding procedures for the sale of the Designated Assets and the Non-Designated Assets; (xii) the motions seeking approval of each of the above documents; (xiii) the Purchaser First Lien Credit Agreement, the Purchaser Second Lien Credit Agreement, the Purchaser Shareholders Agreement (each as defined by the Restructuring Support Agreement) and any certificates of designation governing the terms of the preferred equity of Purchaser (to the extent such terms are not included in the Purchaser Shareholders Agreement); and (xiv) such other documents that the Debtors and the Restructuring Support Parties may determine to be necessary or advisable to facilitate the restructuring transactions contemplated in the Restructuring Support Agreement.

41.    **"Designated Assets"** means the assets acquired by the Purchaser pursuant to the Purchaser APA, as designated by the Restructuring Support Parties pursuant to the terms of the Restructuring Support Agreement or the Purchaser APA.

42.    **"Designated Asset Sale Order"** means the order in form and substance satisfactory to the Restructuring Support Parties, in consultation with the Creditors' Committee regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, approving the sale of the Designated Assets to the Purchaser or any other Successful Bidder free and clear of liens, claims, encumbrances, and other interests.

43.    **"DIP Agent"** means Morgan Stanley Energy Capital Inc., in its capacity as administrative agent for the DIP Lenders.

44.    **"DIP Budget"** means the budget attached to the Final DIP Order, as updated from time to time in a manner consistent with the Final DIP Order and the Committee Settlement.

45.    **"DIP Credit Agreement"** means the Debtor-in-Possession Credit Agreement among the Debtors, the DIP Agent, and the DIP Lenders, dated as of November 7, 2016.

46.    **"DIP Facility Claims"** means any Claim derived from, based upon, relating to or arising from the DIP Credit Agreement or any related loan or security document or instrument (including for principal, interest, fees, and expense and other obligations payable thereunder).

47.    **"DIP Lenders"** means the financial institutions from time to time party to the DIP Credit Agreement as lenders.

48.    **"DIP Order"** means the interim order [Docket No. 63] or final order [Docket No. 190] authorizing, among other things, the Debtors entry into and performance under the DIP Credit Agreement.

49.    **"Disbursing Agent"** means the Debtors or Liquidating Trustees, in their capacity as disbursing agent pursuant to Section VI.B., or any Third Party Disbursing Agent (acting at the direction of the Liquidating Trustees).

50.    **"Disclosure Statement"** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, in form and substance satisfactory to the Restructuring Support Parties.

51.    **"Disputed Claim"** means

a.    if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules; or

b.    if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection, complaint or request for

estimation has been Filed by the applicable Debtor, the Liquidating Trustees or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied in its entirety by a Final Order.

52.       **"Distributable Cash"** means $500,000 of the Committee Settlement Payment as well as any unused portion of the budgeted fees for the Committee's professionals under the Final DIP Order.

53.       **"Distribution"** means one or more payments or distributions under the Plan of Cash, notes, interests or other property, as applicable, to the holders of Allowed Claims.

54.       **"Distribution Record Date"** means the Confirmation Date.

55.       **"Effective Date"** means the earliest possible date, as determined by the Debtors with the consent of the Restructuring Support Parties and the Creditors' Committee, solely with regard to matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, that is a Business Day on or after the date on which all conditions to the effective date in Section VIII.B. have been met or waived pursuant to Section VIII.C.

56.       **"Entity"** means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or any political subdivision thereof, or other person or entity.

57.       **"Estate"** means, as to each Debtor, the estate created for that Debtor in its Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

58.       **"Excluded Party and collectively, Excluded Parties"** means (i) any former or current employees, officers or directors of the Debtors other than any such employees, officers or directors who become employees of the Purchaser, (ii) any professionals, representatives, or similar persons who were not retained or working with the Debtors as of the Petition Date or during the Bankruptcy Cases, and (iii) the Debtors' insurance carriers in respect of any obligations in connection with actions filed against the Debtors and their current and former officers and directors, if any, or otherwise as required under the relevant insurance policies.

59.       **"Executory Contract and Unexpired Lease" and "Executory Contract or Unexpired Lease"** mean a contract or lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and the Confirmation Order.

60.       **"Existing Equity"** means all preferred and common equity interests in Shoreline and its affiliates.

61.       **"Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Cases; provided that the defined term Fee Claim shall not include adequate protection payments or claims for adequate protection made or payable pursuant to the DIP Order or claims for payments owed under the Restructuring Support Agreement; provided further, however, that the Allowed Fee Claims of the Creditors' Committee (including its Professionals) shall not exceed $750,000 in aggregate.

62.       **"Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals entered by the Bankruptcy Court on December 1, 2016 [Docket No. 124].

63.       **"File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court or its authorized designees in the Bankruptcy Cases.

64.       **"Final Fee Application"** means an application for final allowance of a Professional's aggregate Fee Claim as described in Section III.A.1.c.ii.

65.     **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction that has been entered on the docket in any Bankruptcy Case or the docket of any other court of competent jurisdiction, and has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or (b) any appeal that has been taken or any petition for certiorari that has been filed timely has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied.

66.     **"First Lien Agent"** means Morgan Stanley Energy Capital Inc. as administrative agent for the First Lien Lenders.

67.     **"First Lien Credit Agreement"** means that certain Third Amended and Restated Credit Agreement dated as of October 16, 2015, among Shoreline Energy LLC, the First Lien Agent and the First Lien Lenders.

68.     **"First Lien Credit Agreement Claims"** means any Claim derived from, based upon, relating to or arising from  the First Lien Credit Agreement and any related loan or documents or instruments (including for principal, interest, fees, and expenses and other obligations payable thereunder).

69.     **"First Lien Lenders"** means the lenders under the First Lien Credit Agreement and all other Secured Parties (as defined in the First Lien Credit Agreement).

70.     **"General Unsecured Claim"** means a Deficiency Claim and any Claim that is not an Administrative Claim, Priority Claim, First Lien Credit Agreement Claim (other than a Deficiency Claim), Second Lien Credit Facility Claim, Other Secured Claim, or Equity Interest, including any Claims related to plugging and abandonment obligations.

71.     **"HB Parent"** means HPS Investment Partners, LLC, the parent of Purchaser.

72.     **"Holdco Note Subordination Agreement"** means that certain Amended and Restated Subordination Agreement among Shoreline EH LLC, Shoreline Energy LLC, the First Lien Agent, HB Parent, and Sankaty Advisors, LLC, dated as of October 16, 2015.

73.     **"Holdco Note Claims"** means any Claim derived from, based upon, relating to or arising from the Holdco Notes or any related loan or security document or instrument (including for principal, interest, fees, and expense and other obligations payable thereunder).

74.     **"Holdco Notes"** means the Note Purchase Agreement among Shoreline, the purchasers from time to time party thereto and Sankaty Advisors, LLC, dated as of September 30, 2014.

75.     **"Intercompany Claim"** means any Claim by Shoreline or any direct or indirect subsidiary of Shoreline, including a Debtor, against a Debtor.

76.     **"Intercreditor Agreement"** means that certain Amended and Restated Intercreditor Agreement among the First Lien Agent, The Bank of Tokyo-Mitsubishi UFJ, Ltd., MUFG Union Bank, N.A. (f/k/a Union Bank, N.A.), and Shoreline Energy LLC dated as of October 16, 2015.

77.     **"Interest"** means the rights of any holder of the Existing Equity of any Debtor and the rights of any Entity to purchase or demand the issuance of any of the Existing Equity of any Debtor.

78.     **"Internal Revenue Code"** means the Internal Revenue Code of 1986, as amended.

79.     **"IRS"** means the Internal Revenue Service of the United States of America.

80.     **"Liens"** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

81.     **"Liquidating Debtors"** means any Debtors remaining in existence on and after the Effective Date.

82.     **"Liquidating Shoreline"** means Shoreline on and after the Effective Date.

83.     **"Liquidating Shoreline Equity"** means the equity in Shoreline and its affiliates on and after the Effective Date.

84.     **"Liquidating Trusts"** means:  (i) the Creditor Trust and (ii) the N-D Asset Wind-Down Trust.

85.     **"Liquidating Trust Agreements"** means the Creditor Trust Agreement and the N-D Asset Wind-Down Trust Agreement.

86.     **"Liquidating Trust Assets"** means:  (a) the Creditor Trust Assets; (b) the N-D Trust Assets; and (c) any other assets and properties acquired by any Liquidating Trust on or after the Effective Date.  The Designated Assets shall not be Liquidating Trust Assets.

87.     **"Liquidating Trust Expenses"** means any and all reasonable fees, costs and expenses incurred by the Liquidating Trusts or the Liquidating Trustees (or any Third Party Disbursing Agent or any professional or other Entity retained by the Liquidating Trustees) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidating Trust Agreements, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

88.     **"Liquidating Trustees"** means the Creditor Trustee and the N-D Asset Wind-Down Trustee.

89.     **"Ordinary Course Professionals Order"** means the Order Authorizing the Retention *Nunc Pro Tunc* as of the Petition Date, and Payment of Professionals Utilized by the Debtors in the Ordinary Course of Business entered by the Bankruptcy Court on December 1, 2016 [Docket No. 123].

90.     **"Other Liquidating Debtors"** means the Liquidating Debtors other than Liquidating Shoreline.

91.     **"N-D Asset Payment"** means 50% of the first $1,000,000 of cash proceeds from the sale of the Non-Designated Assets.

92.     **"N-D Asset Wind-Down Trust"** means a liquidating trust established on the Effective Date and funded with the N-D Asset Wind Down Trust Assets, to the extent any such assets exist.

93.     **"N-D Asset Wind-Down Trustee"** means the natural person appointed by the Creditors' Committee to act as trustee of the N-D Asset Wind-Down Trust in accordance with the terms of the Plan, the Confirmation Order and the N-D Asset Wind-Down Trust Agreement, or any successor appointed in accordance with the terms of the Plan and the N-D Asset Wind-Down Trust.  The N-D Asset Wind-Down Trustee may be the same person as the Creditor Trustee.

94.     **"N-D Asset Wind-Down Trust Agreement"** means the trust agreement, to be dated as of or prior to the Effective Date, between the Debtors and the N-D Asset Wind-Down Trustee, governing the N-D Asset Wind-Down Trust, which shall be substantially in the form of Exhibit I.A.94. and otherwise satisfactory to the Restructuring Support Parties and the Creditors' Committee.

95.    **"N-D Asset Wind-Down Trust Assets"** means any non-abandoned Non-Designated Assets remaining after the Effective Date and the portion of the Trust Funding allocated to the N-D Asset Wind-Down Trust.

96.    **"Non-Designated Assets"** means assets of the Debtors that are not Designated Assets.

97.    **"Pending Payments"** means identified amounts of Cash and other Liquidating Trust Assets (excluding undeliverable Cash) held by the Liquidating Trusts for distribution or collection and distribution to holders of Allowed Claims in specific amounts as of the date the Liquidating Trusts receive the applicable Liquidating Trust Assets.

98.    **"Petition Date"** means November 2, 2016, the date on which the Debtors commenced their Bankruptcy Cases.

99.    **"Plan"** means this joint plan of liquidation for the Debtors and all Exhibits to the Plan, as the same may be amended, modified or supplemented pursuant to the terms hereof.

100.    **"Priority Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

101.    **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

102.    **"Professional"** means any professional employed in the Bankruptcy Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

103.    **"Pro Rata"** means, when used in reference to a distribution of property pursuant to Article III to holders of Allowed Claims, a proportionate distribution so that with respect to a particular Allowed Claim in such Class or group of Claims, the ratio of (a) (i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

104.    **"Purchaser"** means SLF SL Purchaser LLC and its permitted assignees under the Purchaser APA.

105.    **"Purchaser APA"** means the Asset Purchase Agreement, dated as of December 22, 2016, among the Purchaser, Morgan Stanley Energy Capital, Inc. (in its capacity as DIP Agent and First Lien Agent), and the Debtors, pursuant to which the Purchaser shall consummate the purchase of the Designated Assets on terms consistent with the Acquisition Term Sheet (as defined in the Restructuring Support Agreement) and subject to the Bidding Procedures.

106.    **"Quarterly Distribution Date"** means the last Business Day of the month following the end of each calendar quarter after the Effective Date; provided, however, that if the Effective Date is within 45 days of the end of a calendar quarter, the first Quarterly Distribution Date shall be the last Business Day of the month following the end of the first calendar quarter after the calendar quarter including the Effective Date.

107.    **"Released Parties"** means, collectively, and in each case in their capacities as such:  (i) the Debtors; (ii) the Restructuring Support Parties; (iii) the First Lien Agent; (iv) any existing or past provider of hedges to the Debtors that are affiliates of the First Lien Agent; (v) all affiliates of HB Parent (including any affiliate that is a lender under the Second Lien Credit Facility); (vi) the First Lien Lenders; (vii) DIP Agent; (viii) DIP Lenders; (ix) the Purchaser; (x) the Creditors' Committee and its respective members in their capacity as such, and (xi) with respect to each of the foregoing Entities in clauses (i) through (ix), such Entity's respective affiliates, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants,

agents, and other representatives of the forgoing, provided that the Released Parties shall not include any Excluded Party.

108.    **"Releasing Parties"** means, collectively, and in each case in their capacities as such:  (i) the Restructuring Support Parties; (ii) the First Lien Agent; (iii) any existing or past provider of hedges to the Debtors that are affiliates of the First Lien Agent; (iv) all affiliates of HB Parent (including any affiliate that is a lender under the Second Lien Credit Facility); (v) the First Lien Lenders; (vi) DIP Agent; (vii) DIP Lenders; (viii) the Purchaser; (ix) holders of Claims that are deemed to accept the Plan; (x) the current and former officers and directors of the Debtors and the Liquidating Debtors; (xi) the Creditors' Committee; (xii) holders of Claims that are eligible to vote on the Plan and (a) vote to accept the plan or (b) either (I) abstains from voting or (II) votes to reject the Plan and, in the case of either (I) or (II), does not opt out of the voluntary release contained in Section IV.I. of the Plan by checking the opt out box on the Ballot, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Plan and (xiii) with respect to each of the foregoing Entities in clauses (i) through (xii), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, members,  management companies, and each of their respective current and former shareholders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (each solely in their capacity as such).

109.    **"Remaining Non-Designated Assets"** means any non-abandoned Non-Designated Assets remaining in possession of the Debtors after the Effective Date.

110.    **"Restructuring Support Agreement"** means that certain Restructuring Support Agreement dated as of November 2, 2016 between the Debtors, the First Lien Lenders and HB Parent.

111.    **"Restructuring Support Parties"** means the First Lien Lenders, HB Parent and the Purchaser.

112.    **"Retained Causes of Action"** means all Causes of Action, other than Acquired Causes of Action, that are not transferred, waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order, Designated Asset Sale Order, other sale order, and the DIP Order), including, but not limited to:  (i) Avoidance Actions, other than Acquired Causes of Action; (ii) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, mangers, employees, affiliates or insiders of the Debtors, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any D&O or fiduciary insurance policies (including for bad faith) maintained by the Debtors, other than claims or causes of action against any such entities transferred to Purchaser; (iii) the right to seek, with the consent of HB Parent and First Lien Lenders, a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under section 505 of the Bankruptcy Code; and (iv) all other rights, claims or causes of action not transferred to Purchaser pursuant to the sale of the Designated Assets to the Purchaser in accordance with the Restructuring Support Agreement and the Purchaser APA.

113.    **"Sale Closing Date"** means the date of the closing of the sale of the Designated Assets.

114.    **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, restated, modified or supplemented.

115.    **"Second Lien Credit Facility"** means that certain Second Lien Credit Agreement dated as of September 30, 2013 among Shoreline Energy LLC, as the Borrower, the financial institutions party thereto, as lenders, and the administrative and collateral agent for such lenders.

116.    **"Second Lien Credit Facility Claims"** means any Claim derived from, based upon, relating to or arising from the Second Lien Credit Agreement and any related loan or documents or instruments (including for principal, interest, fees, and expenses and other obligations payable thereunder).

117.    **"Second Lien Lenders"** means the lenders under the Second Lien Credit Facility.

118.    **"Secured Claim"** means a Claim that is secured by a Lien on property in which an Estate has an interest which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) of the Bankruptcy Code.

119.    **"Segregated Escrow Account"** means a segregated escrow account held by the Debtors for the purposes of holding the Committee Settlement Payment until the Effective Date.  The Segregated Escrow Account requires authorization and consent by the Committee for its utilization.

120.    **"Shoreline"** means Debtor Shoreline EH LLC, a Delaware limited liability company.

121.    **"Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the applicable Debtor or the Liquidating Trustees and a holder of a Claim or Interest establishing the allowed amount or nature of such Claim or Interest that is (a) entered into in accordance with any Claim settlement procedures established in the Bankruptcy Cases, (b) permitted or contemplated by the Plan or (c) approved by order of the Bankruptcy Court including pursuant to the DIP Order.

122.    **"Successful Bidder"** has the meaning ascribed in the Bidding Procedures.

123.    **"Tax"** means:  (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, withholding or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

124.    **"Third Party Disbursing Agent"** means an Entity engaged by the Liquidating Trustees to act as a Disbursing Agent pursuant to Section VI.D.

125.    **"Trust Funding"** means $250,000 of the Committee Settlement Payment to fund the Creditor Trust and the N-D Asset Wind-Down Trust.  Any unused portion of the Trust Funding will be added to the Distributable Cash.

126.    **"U.S. Trustee"** means the United States Trustee for the Southern District of Texas.

**B.      Rules of Interpretation and Computation of Time**

**1.      Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been amended, modified, or supplemented prior to the Petition Date or as may be further amended, modified or supplemented pursuant to the Plan,  or Confirmation Order, or the Restructuring Support Agreement; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) the words "includes" or "including" are not limiting; (h) captions and headings to Articles and Sections are inserted for convenience of

reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (j) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.  All Plan Exhibits shall be in a form and substance satisfactory to the Restructuring Support Parties and Creditors' Committee, solely with regard to matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee.

2.      **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**

**CLASSES OF CLAIMS AND INTERESTS**

Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in Classes as follows:

| Class | Claims or Interests |
|-------|---------------------|
| Class 1 | Priority Claims |
| Class 2 | DIP Facility Claims |
| Class 3 | First Lien Credit Agreement Claims |
| Class 4 | Second Lien Credit Facility Claims |
| Class 5 | Other Secured Claims |
| Class 6 | Convenience Claims |
| Class 7 | General Unsecured Claims and Holdco Notes |
| Class 8 | Equity Interests |
| Class 9 | Intercompany Claims |

Administrative Claims and Priority Tax Claims, as described in Section III.A., have not been classified and thus are excluded from the foregoing Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

# ARTICLE III

# TREATMENT OF CLAIMS AND INTERESTS

A.      **Unclassified Claims**

      1.      **Payment of Administrative Claims**

          a.      **Administrative Claims in General**

Except as specified in this Section III.A.1., and subject to the Bar Date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or the Liquidating Trustees, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim (i) if such Administrative Claim was assumed pursuant to the Purchaser APA, payment will be made pursuant to the terms of the Purchaser APA or (ii) if such Administrative Claim was not assumed pursuant to the Purchaser APA, payment will be made  as soon as practicable after the Effective Date or  if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the relevant Liquidating Trustees and the holder of the Administrative Claim, provided, however, that the Committee Settlement Payment will not be used to satisfy any Administrative Claims.

          b.      **Statutory Fees**

On the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court shall be paid by the Debtors and/or the Liquidating Trustees in Cash equal to the amount of such Administrative Claims.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid by the Liquidating Debtors and/or the Liquidating Trustees in accordance therewith until the closing of the applicable Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.  For the avoidance of doubt, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will not be subject to the Bar Date provisions pursuant to Section III.A.1.c.

          c.      **Bar Dates for Administrative Claims**

              i.      **General Administrative Bar Date Provisions**

As provided in the Bar Date Order, each holder of an Administrative Claim (including governmental claims, and excluding, for the avoidance of doubt, claims arising under section 503(b)(9) and, solely for governmental units, claims exempted by section 503(b)(1)(D) and Fee Claims) that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after the Petition Date through January 31, 2017, must file a request for payment of such Administrative Claim by February 7, 2017.  Further, and except as otherwise provided in Section III.A.1.c.ii. or in the Bar Date Order or other order of the Bankruptcy Court (including the DIP Order), unless previously Filed or Allowed, each holder of an Administrative Claim that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after February 1, 2017 must File a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 60 days after the Effective Date (the "Final Administrative Claim Bar Date").  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date.  Objections to requests for payment of Administrative Claims must be Filed and served on the requesting party by (a) in the case of such requests that were required to be filed by February 7, 2017 pursuant to the Bar Date Order, 90 days after the Effective Date and (b) in the case of such requests that must be filed by the Final Administrative Claim Bar Date, by no later than 150 days after the Effective Date, in each case subject to further order of the Bankruptcy Court.  For the avoidance of doubt, nothing herein modifies any requirement to File any Administrative Claim as set forth in the Bar Date Order, and any holder of such

Administrative Claim that failed to comply with the requirements of the Bar Date Order shall be forever barred from asserting such Administrative Claims against the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

### ii.        Bar Dates for Professional Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Liquidating Trustees and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 90 days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be Filed and served on the Liquidating Trustees and the requesting party by the later of (1) 80 days after the Effective Date or (2) 45 days after the Filing of the applicable Final Fee Application.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims.  Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

### 2.        Payment of Priority Tax Claims

#### a.        Priority Tax Claims in General

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the Liquidating Trustees, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim, provided, however, that the Committee Settlement Payment will not be used to satisfy any Priority Tax Claim.

#### b.        Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section III.A.2.a., any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a Class 6 Claim, and the holder (other than as the holder of a Class 6 Claim) may not assess or attempt to collect such penalty from the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Estates or their respective property.

### B.     Classified Claims

1.        **Class 1 Claims (Priority Claims) are unimpaired.**  On the Effective Date, unless otherwise agreed by the holder of an Allowed Claim in Class 1 and the Liquidating Trustees, each holder of an Allowed Claim in Class 1 shall receive, at the election of the Restructuring Support Parties: (a) cash equal to the full amount of such Allowed Priority Claim, (b) if such Priority Claim was assumed pursuant to the Purchaser APA, payment will be made pursuant to the terms of the Purchaser APA, (c) such other treatment as may otherwise be agreed to by such holder, the Debtors, and the Restructuring Support Parties, or (d) such other treatment as may be permitted under section 1129 of the Bankruptcy Code.

2.        **Class 2 Claims (DIP Facility Claims) are unimpaired.**  The DIP Facility Claims shall be Allowed in full, including for all outstanding principal plus accrued but unpaid interest, fees, and expenses (including any amounts that are payable under the DIP Order but remain unpaid as of the Effective Date) and shall not be subject to any avoidance, reductions, setoff, offset, recoupment,

recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, crossclaims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

In the event that the Purchaser is the Successful Bidder for the Designated Assets, the DIP Agent, on behalf of the holders of DIP Facility Claims will credit bid all of the outstanding DIP Facility Claims in accordance with the Purchaser APA, satisfying the Debtors' obligations under the DIP Credit Agreement in full.

In the event the Purchaser is not the Successful Bidder for the Designated Assets, the holders of the DIP Facility Claims shall be paid cash in an amount equal to the full amount of such DIP Facility Claims (including all accrued and outstanding interest, fees, and expense) no later than the Effective Date.

3.   **Class 3 Claims (First Lien Credit Agreement Claims) are impaired.**  The First Lien Credit Agreement Claims shall be Allowed  in the aggregate principal amount of not less than $118.4 million, plus accrued but unpaid interest, fees, and expenses (including any amounts that are payable under the DIP Order but remain unpaid as of the Effective Date) and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, crossclaims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

In the event that the Purchaser is the Successful Bidder for the Designated Assets, the First Lien Agent on behalf of the holders of First Lien Credit Agreement Claims will credit bid up to 100% of the First Lien Credit Agreement Claims in accordance with the Purchaser APA.

a.   To the extent less than all First Lien Credit Agreement Claims are credit bid and the Purchaser is the Successful Bidder for the Designated Assets, holders of the remaining First Lien Credit Agreement Claims will receive the following treatment:  The liens securing such First Lien Credit Agreement Claims (including any adequate protection liens granted pursuant to the DIP Order) shall remain in full force and effect and attached to the Liquidating Trust Assets and any Non-Designated Assets or proceeds thereof and such First Lien Credit Agreement Claims shall be paid from the Liquidating Trust Assets and proceeds of the Non-Designated Assets subject to such liens, in each case prior to the payment of any other Claims; *provided that*, the liens securing the First Lien Credit Facility Claims shall not attach to the Committee Settlement Payment or to Avoidance Actions that are not Acquired Causes of Action, and the Committee Settlement Payment shall not be paid to holders of First Lien Credit Agreement Claims.  Any such proceeds paid to the holders of First Lien Credit Agreement Claims shall be transferred to the Purchaser for use as working capital or such other use as the Purchaser deems advisable and in its best interest.  Any unsecured portion of the First Lien Credit Agreement Claims shall be deemed to be waived; provided, however, that solely in the event of an Alternative Transaction or in the event the Purchaser is not the Successful Bidder for the Designated Assets, any unsecured portion of the First Lien Credit Agreement Claims shall be deemed Deficiency Claims and be classified as General Unsecured Claims.

b.   In the event of an Alternative Transaction or in the event the Purchaser is not the Successful Bidder for the Designated Assets, holders of First Lien Credit Agreement Claims shall be paid cash on the Effective Date in an amount equal to First Lien Credit Agreement Claims (including all principal, accrued and unpaid interest, fees and expenses of all other obligations).

4.   **Class 4 Claims (Second Lien Credit Facility Claims) are impaired.**  The Second Lien Credit Facility Claims shall be Allowed in full, including, without limitation, all principal, interest, fees,

expenses or other amounts owed, and the Second Lien Credit Facility Claims shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, crossclaims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

Any liens securing the Allowed Second Lien Credit Facility Claims shall remain attached to the Liquidating Trust Assets and the Allowed Second Lien Credit Facility Claims shall be paid from any remaining proceeds of the liquidation of such applicable Liquidating Trust Assets to the extent encumbered with such liens after payment of the costs of administration of the Liquidating Trusts and after the payment in full of all First Lien Credit Agreement Claims, provided, however, the liens securing the Allowed Second Lien Credit Facility Claims shall not attach to the Committee Settlement Payment or to Avoidance Actions that are not the Acquired Causes of Action, and the Committee Settlement Payment shall not be paid to holders of Second Lien Credit Agreement Claims, provided, further, that after the Sale Closing Date, the liens securing the Second Lien Credit Facility Claims shall not attach to the Avoidance Actions and the proceeds thereof.

Any such proceeds paid to HB Parent or any affiliate shall be transferred to the Purchaser for use as working capital or such other use as the Purchaser deems advisable and in its best interest.  Any unsecured portion of the Second Lien Facility Claims shall be deemed Deficiency Claims and be classified as General Unsecured Claims; provided, however, that any unsecured portion of HB Parent's Second Lien Credit Facility Claims shall be deemed to be waived; provided further, however, that solely in the event of an Alternative Transaction or in the event the Purchaser is not the Successful Bidder for the Designated Assets, any unsecured portion of HB Parent's Second Lien Credit Facility Claims shall be deemed Deficiency Claims and be classified as General Unsecured Claims.  In the event of an Alternative Transaction, holders of Allowed Second Lien Credit Facility Claims will receive a pro rata share of cash from the sale of the Designated Assets following the payment of all Administrative, Priority, DIP Facility Claims, the Committee Settlement Payment and First Lien Credit Agreement Claims.

5.    **Class 5 Claims (Other Secured Claims) are unimpaired.**  Each holder of an Allowed Secured Claim (other than a Priority Tax Claim, DIP Facility Claim, First Lien Credit Agreement Claim, or Second Lien Credit Facility Claim) shall receive, at the Debtors' election and with the consent of the Restructuring Support Parties, either:  (a) cash equal to the full amount of such Secured Claim, (b) the return or abandonment of the collateral securing such secured claim to such holder, (c) the retention of any Senior Lien (as defined in the Purchaser APA) on the Designated Assets as set forth in the Purchaser APA or (d) such other treatment rendering such Claim unimpaired or as may otherwise be agreed to by such holder, the Debtors, and the Restructuring Support Parties.

6.    **Class 6 Claims (Convenience Claims) are impaired.**  Each holder of an Allowed Convenience Claim shall receive, on or as soon as practicable after the Effective Date, in full satisfaction, release, settlement and discharge of such Claim, its Pro Rata share of the Convenience Claim Distribution.

7.    **Class 7 Claims (General Unsecured Claims and Holdco Claims) are impaired.**  All holders of Allowed General Unsecured Claims (including any Deficiency Claims) will receive any proceeds from the liquidation of the Liquidating Trust Assets remaining after the payment of:  (i) the costs of administering the Liquidating Trusts; (ii) the Allowed Convenience Claims; and (iii) the payment on account of any Liquidating Trust Assets to which a lien has attached, including First Lien Credit Agreement Claims and the Second Lien Credit Facility Claims.

8.    **Class 8 Claims (Existing Equity) are impaired.**  No property will be distributed to or retained on account of the Existing Equity.  On the Effective Date, all Existing Equity shall be cancelled.

9. **Class 9 Claims (Intercompany Claims) are impaired.** No property will be distributed to or retained on account of the Intercompany Claims. On the Effective Date, all Intercompany Claims shall be released and of no further force or effect.

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Causes of Action**

On the Effective Date, all Retained Causes of Action will be transferred from the Debtors and the Liquidating Debtors to the Creditor Trust. Any recovery of Cash by the Creditor Trustee on account of such Retained Causes of Action will be distributed pursuant to the terms of the Plan and the Creditor Trust Agreement. A nonexclusive schedule of currently pending actions and claims brought by one or more Debtors is attached as Exhibit IV.A. In accordance with and subject to any applicable law, the Debtors' inclusion or failure to include any Cause of Action on Exhibit IV.A. shall not be deemed an admission, denial or waiver of any Cause of Action that any Debtor or Estate may hold against any Entity.

**B.      Liquidating Debtors**

   **1.      General**

On and after the Effective Date, each of the Debtors will remain in existence as a Liquidating Debtor until such time as the Liquidating Trustees cause the existence of such Liquidating Debtor to be terminated as provided in the Plan.

   **2.      Liquidating Shoreline**

      a.      On the Effective Date, the Liquidating Shoreline Equity will be issued to the applicable Liquidating Trust.

      b.      As of the Effective Date, the articles of organization and by-laws of Liquidating Shoreline will be amended and restated in substantially the form of Exhibit IV.B.2.b. On and after the Effective Date, the Creditor Trustee may, without further order of the Bankruptcy Court, cause the articles of organization and by-laws of Liquidating Shoreline to be amended or restated as permitted by applicable law and the terms of such documents and determined by the applicable Liquidating Trustee to be necessary or appropriate to implement the Plan.

      c.      On and after the Effective Date, the board of managers of Liquidating Shoreline will be comprised of the natural person appointed by the applicable Liquidating Trustee on behalf of the applicable Liquidating Trust, as the sole stockholder of Liquidating Shoreline, without further order of the Bankruptcy Court.

   **3.      Other Liquidating Debtors**

      a.      On and after the Effective Date, the Liquidating Trustees may, without further order of the Bankruptcy Court, cause the certificate of incorporation, by-laws, certificate of formation, operating agreement, partnership agreement or comparable governing document of the Other Liquidating Debtors to be amended or restated as permitted by applicable law and the terms of such documents and determined by the Creditor Trustee to be necessary or appropriate to implement the Plan; provided that such documents shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.

      b.      On and after the Effective Date, the Liquidating Trustees will cause the board of directors or managers or comparable governing body of each Other Liquidating Debtor to be comprised of the natural person appointed by the applicable Liquidating Trustee, on behalf of the applicable Liquidating Trust, as the (direct or indirect) sole equity holder of the Other Liquidating Debtors, without further order of the Bankruptcy Court.

4.       **Liquidation**

  a. On and after the Effective Date, the applicable Liquidating Trustee will cause each of the Liquidating Debtors to market and sell or otherwise dispose of its assets and properties, to discharge its obligations and liabilities and to wind up its business operations, all on such terms as the applicable Liquidating Trustee determines to be necessary or appropriate to implement the Plan and all without further order of the Bankruptcy Court.

  b. For the avoidance of doubt, on and after the Effective Date, the applicable Liquidating Trustee may, without further order of the Bankruptcy Court, cause a Liquidating Debtor to transfer any or all of its assets and properties to the applicable Liquidating Trust or another Liquidating Debtor if the applicable Liquidating Trustee determines such disposition to be appropriate to implement the Plan. Assets and properties transferred by a Liquidating Debtor to the applicable Liquidating Trust will, from and after such transfer, be considered Liquidating Trust Assets for all purposes of the Plan. To the extent the First Lien Credit Agreement Claims remain outstanding, the liens securing the First Lien Credit Agreement Claims shall remain attached to the assets of the Liquidating Debtor and the Liquidating Trust Assets (including the proceeds of all Non-Designated Assets and all Retained Causes of Action, if any, and proceeds thereof but excluding the Committee Settlement Payment and the Avoidance Actions, other than the Acquired Causes of Action) as first priority liens, with the same priority as such liens existed on the Petition Date (including after giving effect to the Intercreditor Agreement, the Holdco Subordination Agreement or any other subordination agreement).

5.       **Dissolution**

  At such times as determined by the applicable Liquidating Trustee to be appropriate, the Liquidating Trustee will cause the existence of the Liquidating Debtors to be terminated by merger, consolidation or dissolution or as otherwise permitted by applicable law, all on such terms as the Liquidating Trustee determines to be necessary or appropriate to implement the Plan and all without further order of the Bankruptcy Court. In order to effectuate such terminations in accordance with applicable law, the Liquidating  Trustee may, without further order of the Bankruptcy Court, cause the Liquidating Debtors to, among other things: (a) adopt such plans of merger, consolidation or dissolution or similar plans as the Creditor Trustee determines to be necessary or appropriate; (b) execute and deliver such agreements or other documents as the Creditor Trustee determines to be necessary or appropriate; and (c) execute and file with the applicable governmental authorities such certificates of merger, consolidation or dissolution or similar instruments as the Liquidating Trustee determines to be necessary or appropriate.

C.       **Committee Settlement Payment**

  On the Sale Closing Date, the Committee Settlement Payment shall be funded and carved-out from the First Lien Lender's collateral and deposited into the Segregated Escrow Account. As further described below, on the Effective Date, such funds shall be transferred to the Liquidating Trusts in accordance with the Liquidating Trust Agreements.

D.       **Abandonment of Certain Assets**

  Any Assets designated on a notice of abandonment filed by the Debtors, in consultation with the Creditors' Committee, solely with regard to matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, with the Bankruptcy Court on or before the Effective Date shall be deemed abandoned as of the Effective Date pursuant to Bankruptcy Code section 554 without further order of the Bankruptcy Court.

  The filing of the Plan shall constitute the filing of a motion to abandon pursuant to 11 U.S.C. § 554 and relinquish the Abandoned Assets. Entry of the Confirmation Order shall constitute (i) approval, pursuant to Bankruptcy Code section 554, of the abandonment of the Abandoned Assets and (ii) authorization to relinquish any interest the Debtors' hold in the Abandoned Assets; <u>provided</u>, <u>however</u>, that the N-D Asset Wind-Down Trustee

shall have the authority to delay the abandonment of any or all such assets after the Effective Date if in the best interests of the N-D Asset Wind-Down Trust.

E.      **Liquidating Trusts**

  1.      **Formation of the Liquidating Trusts**

            a.      On the Effective Date, the Liquidating Trusts will be established pursuant to the Liquidating Trust Agreements for the purpose of liquidating the Retained Causes of Action, liquidating and dissolving the Liquidating Debtors, resolving all Disputed Claims, making distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan; provided, however, that if no N-D Asset Wind-Down Trust Assets exist as of the Effective Date, only the Creditor Trust shall be established.  The Liquidating Trusts shall have a separate existence from Shoreline and Liquidating Shoreline.

            b.      On the Effective Date:  (i) the Creditor Trust Assets and the Creditor Trust's allocation of the Trust Funding shall be transferred to the Creditor Trust; and (ii) the Remaining Non-Designated Assets and the N-D Asset Wind-Down Trust's allocation of the Trust Funding shall be transferred to the N-D Asset Wind-Down Trust.

            c.      Upon the wind-down of the N-D Asset Wind-Down Trust or at such other time as the N-D Asset Wind-Down Trustee deems appropriate, the Creditor Trust will receive:  (i) the remaining Trust Funding allocated to the N-D Asset Wind-Down Trust, if any; and (ii) cash proceeds from the sale of the Remaining Non-Designated Assets, which shall be distributed in accordance with the Plan.

            d.      As otherwise set forth in the Plan, the Creditor Trust and the N-D Asset Wind-Down Trust shall be funded by the Committee Settlement Payment and any other proceeds from the liquidation of the Creditor Trust Assets and the Remaining Non-Designated Assets.  In no circumstance shall the Purchaser, First Lien Lenders, HB Parent, the DIP Lenders or any of their affiliates have any further obligations to fund or other liabilities to the Creditor Trust or the N-D Asset Wind-Down Trust, including pursuant to the DIP Credit Agreement or the Purchaser APA.

            e.      On the Effective Date, the Creditor Trust will be the sole shareholder of Liquidating Shoreline and the Creditor Trust's prosecution of any Retained Causes of Action will be on behalf of and for the benefit of holders of Allowed Claims, other than Convenience Claims, entitled to distributions from the Liquidating Trust Assets under the Plan.

            f.      On the Effective Date, all Retained Causes of Action, and all assets of the Debtors not sold or abandoned pursuant to an order of the Bankruptcy Court shall be transferred to the applicable Liquidating Trust or shall revest in the applicable Liquidating Debtor.  In the event that the Purchaser is the Successful Bidder, the Liquidating Trust Assets shall include the Committee Settlement Payment.  To the extent the First Lien Credit Agreement Claims remain outstanding, the liens securing the First Lien Credit Agreement Claims shall remain attached to the assets of the Liquidating Debtor and the Liquidating Trust Assets (including the proceeds of all Non-Designated Assets and Retained Causes of Action, if any, but excluding the Committee Settlement Payment and Avoidance Actions, other than the Acquired Avoidance Actions) as first priority liens, with the same priority as such liens existed on the Petition Date (including after giving effect to the Intercreditor Agreement and the Holdco Note Subordination Agreement). On the Effective Date, standing to commence, prosecute and compromise all Retained Causes of Action shall transfer to the Liquidating Trusts.

            g.      Subject to, and to the extent set forth in, the Plan, the Confirmation Order, the Liquidating Trust Agreements or other agreement (or any other order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan), the Liquidating Trusts and the Liquidating Trustees will be empowered to take, or cause the Liquidating Debtors to take, the following actions, and any other actions, as the Liquidating Trustees determine to be necessary or appropriate to implement the Plan, all without further order of the Bankruptcy Court:

i.      adopt, execute, deliver or file all plans, agreements, certificates and other documents and instruments necessary or appropriate to implement the Plan;

ii.      accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Retained Causes of Action and other Liquidating Trust Assets and the assets and properties of the Liquidating Debtors;

iii.      sell, liquidate, abandon or otherwise dispose of the Retained Causes of Action and other Liquidating Trust Assets, the Remaining Non-Designated Assets and the assets and properties of the Liquidating Debtors;

iv.      calculate and make distributions to holders of Allowed Claims;

v.      exercise rights and fulfill obligations under the Plan;

vi.      review, reconcile, settle or object to Claims and resolve such objections;

vii.      retain Third Party Disbursing Agents and professionals and other Entities;

viii.      file appropriate Tax returns, including any final Tax returns, and other reports on behalf of the Liquidating Trusts and the Liquidating Debtors and pay Taxes or other obligations owed by the Liquidating Trusts and the Liquidating Debtors;

ix.      no earlier than six months following the Effective Date, to direct and effectuate the destruction of the Debtors' records that are not transferred to the Purchaser; provided that the Liquidating Trustees shall (i) provide the Purchaser with written notice at least 30 days prior to the proposed destruction of such records and (ii) the Purchaser shall have the option, but not the obligation, to take possession of all or any portion of such records prior to any such proposed destruction;

x.      close or dismiss any or all of the Bankruptcy Cases; and

xi.      dissolve the Liquidating Trusts.

h.      The Liquidating Trusts have no objective to, and will not, engage in a trade or business and will conduct its activities consistent with the Plan and the Liquidating Trust Agreements.

i.      The Creditors' Committee's counsel and financial advisor will provide to the Liquidating Trustees (or such professionals designated by the Liquidating Trustees) documents and other information gathered, and relevant work product developed, during the Bankruptcy Cases in connection with its investigation of potential Causes of Action and the Remaining Non-Designated Assets, provided that the provision of any such documents and information will be without waiver of any evidentiary privileges, including without limitation the attorney-client privilege, work-product privilege or other privilege or immunity attaching to any such documents or information (whether written or oral).  The Plan will be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.

j.      The Liquidating Trusts and the Liquidating Trustees will each be a "representative" of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and the Liquidating Trustees will each be a trustee of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), and, as such, the Liquidating Trustees succeed to all of the rights, powers and obligations of a trustee in bankruptcy with respect to collecting, maintaining, administering and liquidating the Liquidating Trust Assets.  Without limiting other such rights, powers, and obligations, on the Effective Date, the Debtors and the Creditors' Committee will transfer, and will be deemed to have irrevocably transferred, to the Liquidating Trusts and shall vest in the Liquidating Trusts, the Liquidating Trustees and all of their professionals all of the Debtors' and the Creditors' Committee's evidentiary privileges, including, without limitation, the attorney-client privilege, work product privilege and other privileges

and immunities that they possess.  The Debtors and Creditors' Committee and their respective financial advisors will provide to the Liquidating Trustees (or such professionals designated by the Liquidating Trustees) documents, other information, and work product relating to potential Causes of Action and the Remaining Non-Designated Assets, provided that the provision of any such documents and information will be without waiver of any evidentiary privileges or immunity.

k.       To the extent that any Liquidating Trust Assets cannot be transferred to the Liquidating Trusts because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Debtors or the Liquidating Debtors, as the case may be, and the Liquidating Trustees shall be deemed to have been designated as representatives of the Debtors or the Liquidating Debtors, as the case may be, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidating Trust Assets on behalf of the Debtors or the Liquidating Debtors, as the case may be.

## 2.       Liquidating Trustees

a.       The Liquidating Trustees will be the exclusive trustees of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The powers, rights and responsibilities of the Liquidating Trustees will be specified in the Liquidating Trust Agreements and will include the authority and responsibility to take, and cause the Liquidating Debtors to take, the actions contemplated by Section IV.E.1.g.  The Liquidating Trustees will distribute the Liquidating Trust Assets and the assets and properties of the Liquidating Debtors in accordance with the provisions of the Plan and the Liquidating Trust Agreements.  Other rights and duties of the Liquidating Trustees and the beneficiaries of the Liquidating Trusts will be as set forth in the Liquidating Trust Agreements.

b.       The Liquidating Trust Agreements generally will provide for, among other things:

i.       the payment of reasonable compensation to the Liquidating Trustees;

ii.       the payment of other expenses of the Liquidating Trusts, including the cost of pursuing Retained Causes of Action;

iii.       the retention of Third Party Disbursing Agents, counsel, accountants, financial advisors or other professionals, or other Entities; and the payment of their compensation;

iv.       the investment of Cash within certain limitations;

v.       the preparation and filing of appropriate Tax returns and other reports on behalf of the Liquidating Trusts and the payment of Taxes or other obligations owed by the Liquidating Trusts; and

vi.       the orderly liquidation of the Retained Causes of Action and the assets and properties of the Liquidating Debtors, which may include the litigation, settlement, abandonment or dismissal of any claims or rights.

c.       The Liquidating Trustees, and in the exercise of the Liquidating Trustees' reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Liquidating Trusts, make timely distributions, and not unduly prolong the duration of the Liquidating Trusts.  The liquidation of the Liquidating Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or causes of action, or otherwise.  The Liquidating Trustees, shall have the absolute right to pursue or not to pursue any and all Liquidating Trust Assets as it determines is in the best interests of the beneficiaries of the Liquidating Trusts, and consistent with the purposes of the Liquidating Trusts, and shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence.  The Liquidating Trustees may incur any reasonable and necessary expenses

in liquidating and converting the Liquidating Trust Assets to Cash and shall be reimbursed in accordance with the provisions of the Liquidating Trust Agreements.

### 3.      Fees and Expenses of the Liquidating Trusts

The Liquidating Trust Expenses will be paid from the Liquidating Trust Assets and the assets and properties of the Liquidating Debtors in accordance with the Plan and the Liquidating Trust Agreements.

### 4.      Post-Confirmation Reporting

After the Effective Date, the Liquidating Trustees, on behalf of the Liquidating Trusts, will File unaudited reports of its activities and the financial affairs of the Liquidating Trusts with the Bankruptcy Court on a quarterly basis, within 30 days after the conclusion of each such quarterly period until the earlier of the entry of a final decree closing each of the Bankruptcy Cases or a Bankruptcy Court order converting or dismissing each of the Bankruptcy Cases.  Such filed unaudited quarterly reports will contain information regarding the liquidation of the Causes of Action and the assets and properties of the Liquidating Debtors, the distributions made by the Liquidating Trustees and other matters required to be included in such reports in accordance with the Liquidating Trust Agreements and any applicable Bankruptcy Court and United States Trustee guidelines for such matters.

### 5.      Retained Professionals of the Liquidating Trusts

The Liquidating Trustees, on behalf of the Liquidating Trusts, may, without further order of the Bankruptcy Court, retain Third Party Disbursing Agents, professionals or other Entities to assist in carrying out its duties hereunder and may compensate and reimburse the expenses of these professionals or other Entities without further order of the Bankruptcy Court from the Liquidating Trust Assets and the assets and properties of the Liquidating Debtors in accordance with the Plan and the Liquidating Trust Agreements.

### 6.      Indemnification

The Liquidating Trust Agreements may include reasonable and customary indemnification provisions.  Any such indemnification will be the sole responsibility of the Liquidating Trusts.

### 7.      Tax Treatment

The Liquidating Trusts generally are intended to be treated, for federal income Tax purposes, in part as liquidating trusts within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of the holders of Allowed Claims entitled to distributions of Pending Payments, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B- 9(b)(1), as more specifically provided for under the Liquidating Trust Agreements.  Accordingly, for all federal income Tax purposes the transfer of Liquidating Trust Assets to the Liquidating Trusts will be treated as:  (a) to the extent of Pending Payments, a transfer of the Pending Payments directly from the Debtors to the holders of such Allowed Claims followed by the transfer of such Pending Payments by the holders of Allowed Claims to the Liquidating Trusts in exchange for rights to Distributions from the Liquidating Trusts; and (b) to the extent of amounts that are not Pending Payments, as a transfer to one or more disputed ownership funds.  The holders of Allowed Claims entitled to Distributions of Pending Payments will be treated for federal income Tax purposes as the grantors and deemed owners of their respective shares of the Liquidating Trust Assets in the amounts of the Pending Payments and any earnings thereon.  The Liquidating Trustees will be required by the Liquidating Trust Agreements to file federal Tax returns for the Liquidating Trusts as a grantor trust with respect to any Pending Payments and as one or more disputed ownership funds with respect to all other funds or other property held by the Liquidating Trusts pursuant to applicable Treasury Regulations, and any income of the Liquidating Trusts will be treated as subject to Tax on a current basis.  The Liquidating Trust Agreements will provide that the Liquidating Trustees will pay such Taxes from the Liquidating Trust Assets and the assets and properties of the Liquidating Debtors.  In addition, the Liquidating Trust Agreements will require consistent valuation by the Liquidating Trustee and the Beneficiaries (as defined in the Liquidating Trust Agreements), for all federal income Tax purposes, of any property held by the Liquidating Trusts.  The Liquidating Trust Agreements will provide that termination of the trust will occur no later than five years after the

Effective Date, unless the Bankruptcy Court approves an extension based upon a finding that such an extension is necessary for the Liquidating Trusts to complete their Claims resolution and liquidating purposes.

**F.      Cooperation by the Purchaser**

From the Sale Closing Date until the earlier of (x) twelve (12) months after the Sale Closing Date and (y) the date of the filing of the Debtors' final tax returns, Purchaser will use commercially reasonable efforts to cooperate with and provide assistance to the Liquidating Trustees in the administration of the Liquidating Trusts subject to a monthly hourly cap of 10 hours per month, with any excess time paid by the applicable Liquidating Trustee.  Such assistance shall include designating an employee of the Purchaser as the primary source of contact for the Liquidating Trusts, providing access to the Debtors' books and records (to the extent in possession of the Purchaser), providing such other information in possession of the Purchaser related to the Designated Assets necessary for the administration of the Creditor Trusts, <u>provided</u>, the Purchaser nor its employees shall make any representations, warranties or assurances, nor have any liabilities, in providing information or documents and shall not be required to make any out-of-pocket expenses in providing such assistance.

**G.      No Revesting of Liquidating Trust Assets**

No Liquidating Trust Asset will revest in any Liquidating Debtor on or after the date such Liquidating Trust Asset is transferred to the Liquidating Trusts but will vest upon such transfer in the appropriate Liquidating Trust to be administered by either the Creditor Trustee or the N-D Asset Wind-Down Trustee in accordance with the Plan and the Liquidating Trust Agreements.

**H.      Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

**I.      Preservation of Retained Causes of Action; Settlement of Claims and Releases**

**1.      Preservation of All Retained Causes of Action Not Expressly Settled or Released**

Unless a Retained Cause of Action against any Entity is expressly transferred, waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order, sale order, and the DIP Order), the Debtors expressly reserve such Retained Causes of Action to be transferred by the Debtors to the Creditor Trust pursuant to the Plan, which Retained Causes of Action may include Avoidance Actions, for possible adjudication by the Creditor Trustee, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Retained Causes of Action have been released in the Plan or any Final Order (including the Confirmation Order and the Final DIP Order).  In accordance with section 1123(b) of the Bankruptcy Code, the Creditor Trust may enforce all rights to commence and pursue, as appropriate, any and all such Retained Causes of Action, and the Creditor Trust's rights to commence, prosecute, or settle any such Retained Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Creditor Trustee will not pursue any and all available Retained Causes of Action against them.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Creditor Trust and the Creditor Trustee on behalf of the Creditor Trust.  In addition, the Creditor Trust reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

2.        **Comprehensive Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and Claim and Interest holders and is fair, equitable and reasonable.

3.        **Releases**

a.        **Release by the Debtors and the Liquidating Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code on and after the Effective Date, the Debtors and the Liquidating Debtors, on behalf of themselves and their predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, the Estates, the Liquidating Trusts and their respective successors and, assigns, and any and all Entities, including the Creditors' Committee and the Liquidating Trustees who may purport to claim by, through, for or because of them, are deemed expressly, unconditionally, generally, and individually and collectively, to forever settle, release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise (collectively, the "Liabilities"), against any Released Party with respect to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the Purchaser APA, the DIP Credit Agreement and the First Lien Credit Agreement, except for (a) claims resulting from actual fraud, gross negligence, or willful misconduct as determined by a Final Order and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

b.        **Release by Holders of Claims or Interests**

Pursuant to section 1123(b) of the Bankruptcy Code on and after the Effective Date, in consideration for the obligations of the Debtors and the Liquidating Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, unless otherwise provided in the Confirmation Order, each Releasing Party is deemed expressly, unconditionally, generally, and individually and collectively, to forever release, waive and discharge all Liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, in any way that such Releasing Party has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the DIP Credit Agreement, the First Lien Credit Agreement, and the property transferred pursuant to the Purchaser APA, including the issuance or distribution of securities or other debt obligation pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing; provided, however, that the foregoing provisions of this Section IV.I.3.b. shall have no effect on the liability of (a) any Released Party that would otherwise result from any act or omission of

such Released Party to the extent that such act or omission is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

### c.    Injunction Related to Releases

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to the Plan.

## J.    Limitation on Liability

### 1.    Liability for Actions in Connection with the Liquidation Cases

The Debtors, the Liquidating Debtors, the Liquidating Trusts, the Liquidating Trustees and their respective directors, officers, employees, agents and professionals, acting in such capacity, and the Creditors' Committee and its members, and their respective agents and professionals, in each case acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Liquidation Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction proposed in connection with the Debtors, the Liquidation Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of this Section IV.J.1. shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (c) the liability of an Entity for breach of a Definitive Document that arises after the Effective Date.

### 2.    Rights of Action in Connection with the Liquidation Cases

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest and none of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, shareholders, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives or agents shall have any right of action against any of the Debtors, the Liquidating Debtors, the Creditors' Committee, or any of their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Liquidation Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (c) the liability of an Entity for breach of a Definitive Document that arises after the Effective Date.

## K.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VI, all Liens against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such Liens, including any rights to any collateral thereunder, shall revert to the applicable Estate.

**L.**     **Effectuating Documents; Further Transactions; Exemption From Certain Transfer Taxes**

The Liquidating Trustees or their designees will be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (2) certify or attest to any of the foregoing actions.  Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax:  (1) the execution and implementation of the Liquidating Trust Agreements, including any transfer of assets or properties to or by the Liquidating Trusts or a Liquidating Debtor; or (2) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any plan or agreement adopted or executed in connection with any transaction pursuant to the Plan.

**M.**     **Substantive Consolidation**

1.       The Plan will serve as a motion seeking entry of a Bankruptcy Court order substantively consolidating all of the Estates into a single consolidated Estate for all purposes associated with confirmation and consummation of the Plan.  Unless an objection to such substantive consolidation is made in writing by any creditor or claimant affected by such substantive consolidation, Filed with the Bankruptcy Court and served on the parties identified in Section XI.G. below on or before the objection deadline for Confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the order granting the substantive consolidation of the Debtors (which will be the Confirmation Order) may be entered by the Bankruptcy Court.  In the event any such objections are timely Filed, a hearing with respect thereto will occur at the Confirmation Hearing.  Pursuant to the Confirmation Order and effective as of the Effective Date:  (a) all assets and liabilities of the Debtors shall be deemed merged; (b) all Claims of one Debtor against another Debtor shall be deemed eliminated; (c) all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of all of the Debtors; and (d) each and every Claim Filed or to be Filed in the Bankruptcy Cases of any of the Debtors shall be deemed Filed against the Debtors and shall be deemed one Claim against and a single obligation of all of the Debtors.  Such consolidation (other than for purposes of implementing the Plan) shall not affect the legal and corporate structures of the Debtors and shall not affect any Liens on the Debtors' assets, including Liens securing the First Lien Credit Agreement and the Second Lien Credit Facility, all of which remain attached with the same priority as in effect on the Petition Date.

2.       Notwithstanding the substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 until such time as a particular case is closed, dismissed or converted.

3.       If any party successfully challenges the substantive consolidation of any or all of the Debtors, or if the Debtors, after consultation with and the consent of the Restructuring Support Parties and, solely regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, the Creditors' Committee, determine not to substantively consolidate any Debtor, such Debtors shall not be substantively consolidated.  Further, if the Plan, as it pertains to any such non-consolidated Debtor, cannot be confirmed for any reason, the assets of such Debtor shall be liquidated under chapter 7 of the Bankruptcy Code.

**N.**     **Cramdown**

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

### TREATMENT OF EXECUTORY
### CONTRACTS AND UNEXPIRED LEASES

**A.      Executory Contracts and Unexpired Leases to Be Rejected**

On the Effective Date, except for (1) the Executory Contracts and Unexpired Leases that have been or will be assumed or assigned by the Debtors pursuant to an asset sale, either in connection with the sale of the Designated Assets and Non-Designated Assets, or (2) to the extent that a Debtor either previously has assumed and assigned or rejected an Executory Contract or Unexpired Lease by an order of the Bankruptcy Court or has filed a motion to assume or assume and assign an Executory Contract or Unexpired Lease prior to the Effective Date, each Executory Contract and Unexpired Lease entered into by a Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the Bankruptcy Code.  Each contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, nothing in this Section V.A. shall cause the rejection (if such contract is an Executory Contract or Unexpired Lease for purposes of section 365), breach or termination of any contract of insurance benefiting the Debtors, their current or former directors and officers, the Estates and/or the Liquidating Debtors, the Liquidating Trusts or the Liquidating Trustees.  The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

**B.      Bar Date for Rejection Claims**

Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection claim will be forever barred and will not be enforceable against the Creditor Trustee or the Creditor Trust unless a proof of Claim is Filed and served on the Creditor Trustee, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, by 30 days after the Effective Date.

**C.      Approval of Procedures**

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article V, pursuant to section 365 of the Bankruptcy Code.  The procedures for such rejection of an Executory Contract or Unexpired Lease are as follows:

a.      After the entry of the Confirmation Order, the Debtors or the Creditor Trustee shall serve upon each party to an Executory Contract or Unexpired Lease being rejected notice of:  (i) the contract or lease being rejected; and (ii) the procedures for such party to object to rejection of the applicable contract.  Further, the Debtors shall provide to the Creditor Trustee the following information for each such Executory Contract or Unexpired Lease to the extent available:  (i) the complete document set of any contract, including any modifications, amendments, supplements or restatements, and/or proof the parties continued the contract on a month-to-month renewal; and (ii) the vendor identification number of the counterpart(ies) to any such contract.

b.      Any Entity, including the Creditor Trustee, wishing to object to the proposed rejection described in this Article V must File and serve on the Creditor Trustee a written objection setting forth the basis for the objection within 14 days of service of the notice described in Section V.C.a.

c.      If no objection to the proposed rejection is properly Filed and served prior to the objection deadline:  (i) the proposed rejection of the applicable Executory Contracts or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the date of notice described in Section V.C.a., without further action of the Bankruptcy Court.

       d.       If an objection to the rejection is properly Filed and served prior to the objection deadline, the Creditor Trustee and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

       e.       If an objection to the proposed or rejection is properly Filed and served prior to the objection deadline and the parties are unable to resolve such objection, the Creditor Trustee may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.  In the event the Creditor Trustee is the objecting party, the opposing party may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

**D.**      **Insurance Policies and Agreements**

       **1.**      **Assumed Insurance Policies and Agreements**

The Debtors do not believe that the insurance policies (including, without limitation, director and officer liability insurance policies) issued to, or insurance agreements entered into by, any Debtor prior to the Petition Date constitute executory contracts.  To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in this Article V to the contrary, the Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their respective estates and all parties in interest in the Bankruptcy Cases.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

       **2.**      **Reservation of Rights**

Nothing contained in the Plan will constitute a waiver of any claim, right or cause of action that a Debtor, a Liquidating Debtor, the Liquidating Trustees or the Liquidating Trusts, as the case may be, may hold against any Entity, including, without limitation, any insurer under any policy of insurance or insurance agreement.

       **3.**      **Insurance on the Remaining Non-Designated Assets**

The Remaining Non-Designated Assets will continue being insured under existing insurance agreements until the earlier of the Sale Closing Date or February 24, 2017.  The premiums for such insurance will be paid by the Debtors prior to the Sale Closing Date (to the extent budgeted in the DIP Budget) and thereafter such expenses shall be the sole responsibility of the Segregated Escrow Account until the Effective Date, and thereafter the sole responsibility of the N-D Asset Wind-Down Trust and the Creditor Trust.

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**      **Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan and distributions to the First Lien Credit Agreement Claims, Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than:  (1) 60 days after the Effective Date; or (2) such later date when the applicable conditions of Section VI.D.2. (regarding undeliverable Distributions) or Section VI.F.3. (regarding compliance with Tax requirements) are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Section VI.F.  Any Claim that is disallowed by order of the Bankruptcy Court prior

to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distribution under the Plan.

**B.      Method of Distributions to Holders of Claims**

The Debtors or Liquidating Trustees in their capacity as Disbursing Agents, or such Third Party Disbursing Agents as the Liquidating Trustees may retain in its sole discretion, will make all distributions of Cash required under the Plan to holders of Allowed Claims.  Each Third Party Disbursing Agent will serve without bond, and any Third Party Disbursing Agent may retain or contract with other entities to assist in or make the distributions required by the Plan.

**C.      Compensation and Reimbursement for Services Related to Distributions**

**1.      Compensation and Reimbursement**

Each Third Party Disbursing Agent providing services related to distributions pursuant to the Plan will receive from the Liquidating Trusts, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services.  These payments will be made on terms agreed to with the Liquidating Trustees and will not be deducted from Distributions (including any distributions of Cash Investment Yield) to be made pursuant to the Plan to holders of Allowed Claims receiving Distributions from a Third Party Disbursing Agent.

**2.      Investment of Cash Related to Distributions**

To assist in making distributions under the Plan, Cash may be held in the name of one or more Third Party Disbursing Agents for the benefit of holders of Allowed Claims under the Plan.  The Third Party Disbursing Agents will invest the Cash as directed by the Liquidating Trustees in accordance with the Debtors' investment and deposit guidelines; provided, however, that should such Liquidating Trustees determine, in their sole discretion, that the administrative costs associated with such investment will exceed the return on such investment, they may direct the Third Party Disbursing Agent to not invest such Cash.  Distributions of Cash from accounts held by Third Party Disbursing Agents will include a Pro Rata share of the Cash Investment Yield, if any, from such investment of Cash.

**D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.      Delivery of Distributions to Holders of Allowed Claims**

Distributions to holders of Allowed Claims will be made by a Disbursing Agent (i) at the addresses set forth on the respective proofs of Claim, requests for payment of Administrative Claim or similar document Filed by holders of such Claims; (ii) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of Filing of any related proof of Claim, requests for payment of Administrative Claim or similar document; or (iii) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

**2.      Undeliverable Distributions Held by Disbursing Agents**

**a.      Holding and Investment of Undeliverable Distributions**

Subject to Section VI.D.2.c., if any Distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further Distributions shall be made to such holder unless and until the applicable Disbursing Agent is notified by written certification of such holder's current address and such undeliverable Distributions shall remain in the possession of the applicable Disbursing Agent pursuant to this Section VI.D.2.a. for the benefit of such claimants until such time as a Distribution becomes deliverable.

b.          **After Distributions Become Deliverable**

On each Quarterly Distribution Date, the Disbursing Agent will make all Distributions that become deliverable to holders of Allowed Claims during the preceding calendar quarter in accordance with the Plan; provided, however, that if the Liquidating Trustees determine, that the amount of any quarterly Distribution is too small to justify the administrative costs associated with such Distribution, the Liquidating Trustees may postpone such quarterly Distribution until the next Quarterly Distribution Date.  Each such Distribution will include, to the extent applicable, a Pro Rata share of the Cash Investment Yield from the investment of any undeliverable Cash from the date that such Distribution would have first been due had it then been deliverable to the date that such Distribution becomes deliverable.

c.          **Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by a Disbursing Agent within 180 days after the later of (i) the Effective Date and (ii) the last date on which a Distribution was deliverable to such holder will have its claim for such undeliverable Distribution deemed satisfied, waived and released and will be forever barred from asserting any such claim against the Debtors, the Liquidating Debtors, the Liquidating Trusts and their respective property.  In such cases, unclaimed Distributions will be maintained for redistribution to other claimants entitled to Distributions under the Plan. Nothing contained in the Plan shall require any Debtor or any Disbursing Agent to attempt to locate any holder of an Allowed Claim.

E.          **Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in U.S. currency by checks drawn on a domestic bank selected by the Liquidating Trustees, or, at the option of the Liquidating Trustees, by wire transfer from a domestic bank; provided, however, that cash payments to foreign holders of Allowed Claims may be made, at the option of the Liquidating Trustees, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

F.          **Timing and Calculation of Amounts to Be Distributed**

1.          **Allowed Claims**

Each holder of an Allowed Claim shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class pursuant to the terms and conditions of the Plan and the Liquidating Trust Agreements.  On each Quarterly Distribution Date, Distributions also shall be made pursuant to Section VII.C. to holders of Disputed Claims in any such Class that were allowed during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent.  Such quarterly Distributions also shall be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

2.          **De Minimis Distributions**

No Disbursing Agent will distribute Cash to the holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50 in the aggregate.  Any holder of an Allowed Claim in an impaired Class on account of which the amount of Cash to be distributed is less than $50 in the aggregate will be forever barred from asserting its Claim for such distribution against the Liquidating Trusts or their property.  Any Cash not distributed pursuant to this Section V.F.2. will be the property of the Liquidating Trusts, and any such Cash held by a Third Party Disbursing Agent shall be transferred or returned to the Liquidating Trusts.

3.　　　　**Compliance with Tax Requirements**

　　　a.　　　**Withholding and Reporting**

In connection with the Plan, to the extent applicable, each Disbursing Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision of the Plan to the contrary, each Disbursing Agent shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including applying a portion of any Cash Distribution to be made under the Plan to pay applicable Tax withholding, requiring Claim holders to submit appropriate certifications or establishing other mechanisms such Disbursing Agent believes are reasonable and appropriate. To the extent that any Claim holder fails to submit appropriate certifications required by a Disbursing Agent or to comply with any other mechanism established by a Disbursing Agent to comply with Tax withholding requirements, such Claim holder's Distribution may, in such Disbursing Agent's reasonable discretion, be deemed undeliverable and subject to Section VI.D.2.

　　　b.　　　**Backup Withholding**

Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides, at the applicable Disbursing Agent's request, a completed IRS Form W-9 (or substitute therefor) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any post-petition interest, if requested by a Disbursing Agent, a holder of an Allowed Claim shall be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding. Non-U.S. Allowed Claim holders may be required by the applicable Disbursing Agent to provide a completed IRS Form W-8BEN or W-8BEN-E, as applicable (or other applicable Form W-8 or successor form), to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan. Unless a Disbursing Agent, in its discretion, determines otherwise, no Distributions on account of post-petition interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the applicable IRS Form.

　　　c.　　　**Obligations of Distribution Recipients**

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

4.　　　　**Compliance with Domestic Relations Orders**

In connection with the Plan, each Disbursing Agent may allocate and make Distributions in compliance with applicable wage garnishment, alimony, child support and similar domestic relations orders.

**G.　　　Setoffs**

Except with respect to claims of a Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Liquidating Trustees or a Third Party Disbursing Agent, as instructed by the Liquidating Trustees pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, may setoff against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the Retained Causes of Action of any nature against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the applicable Debtor of any Causes of Action that the Debtor or Debtors may possess against such a Claim holder.

**H.      Allocation of Payments**

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to accrued but unpaid interest on such Claims.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**A.      Prosecution of Objections to Claims**

**1.      Objections to Claims**

Except as provided in Sections III.A.c., all objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Bankruptcy Cases.  If an objection has not been Filed to a proof of Claim or request for payment of Administrative Claim by the applicable deadline, the Claim to which the proof of Claim or request for payment of Administrative Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

**2.      Authority to Prosecute Objections**

After the Confirmation Date, only the Debtors (or after the Effective Date, the Liquidating Trustees on behalf of the Liquidating Trusts) will have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.  After the Effective Date, the Liquidating Trustees may settle or compromise any Disputed Claim without approval of the Bankruptcy Court in accordance with the Liquidating Trust Agreements.

**B.      Treatment of Disputed Claims**

**1.      No Payments on Account of Disputed Claims and Disputed Claims Reserves**

Notwithstanding any other provisions of the Plan, no payments or Distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.  Distributions on account of any Disputed Claim that has become an Allowed Claim will be governed by the Liquidating Trust Agreements.  The Liquidating Trust Agreements shall include reasonable and customary provisions establishing reserves to account for  Disputed Claims that may become Allowed Claims.

**2.      Recourse**

Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed Cash held by the Liquidating Trusts for the satisfaction of such Allowed Claim and not any assets previously distributed on account of any Allowed Claim.

**C.      Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent.  Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**A.     Conditions to Confirmation**

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to Section VIII.C.:

1.     The Confirmation Order shall have been entered by the Bankruptcy Court.

2.     The Plan will not have been amended, altered or modified from the Plan dated as of January 9, 2017 except as permitted by Section XI.B.

3.     All Plan Exhibits are in form and substance reasonably satisfactory to the Debtors, the Restructuring Support Parties and Creditors' Committee.

4.     The Disclosure Statement shall have been approved and not amended or modified without the prior written consent of (i) the Restructuring Support Parties and (ii) the Creditors' Committee, solely regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee.

**B.     Conditions to the Effective Date**

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section VIII.C.:

1.     The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order), in form and substance reasonably acceptable to the Debtors, the Restructuring Support Parties and, solely regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee, Creditors' Committee, approving and authorizing the Debtors and the Liquidating Trustees to take all actions necessary or appropriate to effectuate, implement and consummate the Plan, including the execution, delivery and performance of contracts, instruments, releases and other agreements or documents created in connection with the Plan.

2.     The Confirmation Order has become a Final Order.

3.     The sale of Designated Assets has been consummated in accordance with the Bidding Procedures and either the Purchaser APA or the asset purchase agreement of a third party to the extent the Purchaser is not the Successful Bidder for the Designated Assets, all conditions to closing the Purchaser APA or such asset purchase agreement, as applicable, have been satisfied or waived, and if the Purchaser is not the Successful Bidder for the Designated Assets, such sale of Designated Assets to a third party here resulted in the Debtors receiving cash proceeds in excess of the Allowed amount of the First Lien Credit Agreement Claims and DIP Facility Claims.

4.     The Liquidating Trust Agreements have been executed and the Liquidating Trusts have been established.

5.     All governmental or other approvals required to effectuate the terms of the Plan shall have been obtained.

6.     All actions, documents, certificates, and agreements necessary to implement the Plan, including the Definitive Documentation, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law.

7.      The Restructuring Support Agreement shall not have terminated and shall be in full force and effect and shall not be (a) identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or (b) subject of a pending motion to reject Executory Contracts or Unexpired Leases, and the Debtors shall be in compliance therewith.

8.      The Committee Settlement has been complied with in all respects.

**C.      Waiver of Conditions to Confirmation or the Effective Date**

The conditions to Confirmation set forth in Section VIII.A. and the conditions to the Effective Date set forth in Section VIII.B. may be waived in whole or part in writing by the Debtors at any time without an order of the Bankruptcy Court, subject to the prior written consent of (i) the Restructuring Support Parties and (ii) Creditors' Committee, solely regarding matters that are inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee; provided, however, that if the failure to meet such conditions to Confirmation or the Effective Date are caused by a breach of the parties to the Committee Settlement, the non-breaching parties may waive such conditions without the consent of the breaching party. Confirmation and the Effective Date will occur irrespective of whether any claims allowance process or related litigation has been completed.

**D.      Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied in accordance with Section VIII.B. or duly waived in accordance with Section VIII.C., then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section VIII.D., (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

**ARTICLE IX**

**INJUNCTION
AND SUBORDINATION RIGHTS**

**A.      Injunction**

**Except as provided in the Plan or the Confirmation Order and other than with respect to a right of recoupment or a setoff, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability subject to the Plan or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan or cause of action of a non-Debtor that is released under the Plan will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities, Interests or rights:  (1) commencing or continuing in any manner or means any action or other proceeding against the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Liquidating Trustees or the Released Parties, whether directly, derivatively or otherwise, other than to enforce any right pursuant to the Plan (or any order resolving the dispute) to a Distribution; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Liquidating Trustees, or the Released Parties other than as permitted pursuant to (1) above; (3) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Released Parties, or their respective property; (4) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtors, the Liquidating Debtors, the Liquidating Trusts, the Liquidating Trustees, or the Released Parties; and (5) subject to the proviso in Article X below regarding jurisdiction, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.  Such**

injunction shall extend to the successors, if any, of the Debtors, the Liquidating Debtors, the Liquidating Trusts, and the Liquidating Trustees and to their respective properties and interests in property.  Anyone injured by any willful violation of this injunction shall be entitled to recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

## B.    Subordination Rights

Nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan (including rights under the Intercreditor Agreement and the Holdco Note Subordination Agreement), whether arising under general principles of equitable subordination, contract, section 510(a) or 510(c) of the Bankruptcy Code or otherwise.  Pursuant to Section 510 of the Bankruptcy Code, the Debtors or Liquidating Debtors reserve the right to reclassify any Allowed Claim of Interest in accordance with any contractual, legal or equitable subordination rights.  Pursuant to the terms of the Holdco Note Subordination Agreement, the holder of Holdco Note Claims shall not receive any Distributions under this Plan and any Distributions received by the holders of Holdco Note Claims, notwithstanding the foregoing, shall be turned over to the First Lien Agent and applied in accordance with the terms of the Holdco Note Subordination Agreement. Any such turned over Distributions that are received by the First Lien Lenders or HB Parent pursuant to the Holdco Note Subordination Agreement shall be deemed to reduce the Deficiency Claims of the First Lien Lenders and HB Parent, as applicable, on a dollar-for-dollar basis and shall be contributed to the Liquidating Debtors or the Creditor Trustee, as appropriate, for the Convenience Class Distribution.

## ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Bankruptcy Cases after the Effective Date as is legally permissible, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, reclassify, estimate or establish the priority, secured or unsecured status (or proper Plan classification) of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance, priority or classification of Claims or Interests;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    decide or resolve Avoidance Actions brought under section 547 of the Bankruptcy Code and for recovery under section 550 of the Bankruptcy Code with respect to such Avoidance Actions brought under section 547 of the Bankruptcy Code;

6.    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, these Bankruptcy Cases;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in

connection with the Plan or the Confirmation Order, including the Liquidating Trust Agreements and including the sale and/or abandonment of the Remaining Non-Designated Assets;

8.      resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, including the Liquidating Trust Agreements, or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

9.      modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

10.      issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

12.      determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order;

13.      determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes; and

14.      enter a final decree closing the Debtors' Bankruptcy Cases;

provided, however, that the foregoing is not intended to (a) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (b) impair the rights of an Entity to invoke the jurisdiction of a court, commission, or tribunal, or (c) impair the rights of an Entity to seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d).

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**A.      Dissolution of the Creditors' Committee and the Professional Fee Claims of the Professionals Retained by the Debtors**

**1.      Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee, except as set forth below, will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Bankruptcy Cases.  Prior to the dissolution of the Creditors' Committee, standing to commence, prosecute and compromise all Retained Causes of Action shall transfer to the Creditor Trust.  The Professionals retained by the Creditors' Committee and the members thereof will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.c.ii., (b) in connection with any appeal pending as of the Effective Date, including any appeal of the Confirmation Order and (c) at the request of the Liquidating Trustees, whether or not the Liquidating Trustees have retained such Professional, not to exceed $750,000 in the aggregate.  Following the Effective Date, none of the Creditors' Committee's professionals shall be precluded from representing any Entity acting for the Liquidating Trusts or other Entities created by the Plan, including, without limitation, the Liquidating Trustees or the Liquidating Trusts.

2.        **Professional Fee Claims of the Professionals Retained by the Debtors**

The Professionals retained by the Debtors will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.c.ii. and (b) at the request of the Liquidating Trustees, whether or not the Liquidating Trustees have retained such Professional.

B.        **Modification of the Plan and Exhibits**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors or the Liquidating Trustees, as applicable, reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan at any time before its substantial consummation subject to the prior written consent of the Restructuring Support Parties.

C.        **Revocation of the Plan**

The Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to Confirmation subject to the prior written consent of: (1) the Restructuring Support Parties and (2) the Creditors' Committee, solely to the extent such revocation or withdrawal violates the terms of the Restructuring Support Agreement and is inconsistent with the Committee Settlement and by such inconsistency directly affect the interests of the constituents of the Creditors' Committee.  If the Debtors revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation as to any or all of the Debtors does not occur, then, with respect to such Debtors, the Plan will be null and void in all respects, and nothing contained in the Plan will:  (1) constitute a waiver or release of any claims by or against, or any Interests in, such Debtors; or (2) prejudice in any manner the rights of any Debtors or any other party.

D.        **Service of Certain Exhibits**

Certain Exhibits are not being Filed or served with copies of the Plan.  The Debtors shall File such Exhibits no later than 10 days before the deadline to object to Confirmation.  Once Filed, the Debtors shall make available for review the relevant Exhibits on their web site at https://cases.primeclerk.com/shorelineenergy**.**

E.        **Payment of Fees and Expenses of the DIP Agent**

Prior to the Effective Date the Debtors shall pay in Cash all reasonable and documented unpaid fees and expenses of the DIP Agent and its advisors, including counsel, without application of approval of the Bankruptcy Court, subject to the DIP Order and the budget thereunder.

F.        **Payment of Fees and Expenses of Purchaser, HB Parent and its Affiliates**

Subject to the terms of the Restructuring Support Agreement and the order approving the Restructuring Support Agreement, prior to the Effective Date, the Debtors shall pay in Cash to the Purchaser, HB Parent, and its affiliates for any reasonable and documented out-of-pocket costs and expenses of Vinson & Elkins LLP and one Louisiana licensed law firm as counsel to such parties incurred in connection with the Restructuring Transactions (as defined in the Restructuring Support Agreement) or in connection with the enforcement of any of such parties' rights and remedies under the Restructuring Support Agreement, so long as such costs and expenses are not incurred in connection with litigation or claims against any other Restructuring Support Party and only if the Purchaser, HB Parent, or their affiliates (as applicable) is successful in the enforcement its rights and remedies under the Restructuring Support Agreement.

G.        **Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Liquidating Trustees, or the U.S. Trustee must be sent by first class mail, overnight delivery service or courier service to:

1.       **The Debtors and the Liquidating Debtors**

      Thomas A. Howley (TX 24010115)
      Paul M. Green (TX 24059854)
      JONES DAY
      717 Texas, Suite 3300
      Houston, Texas 77002
      Telephone:  (832) 239-3939
      Facsimile:  (832) 239-3600

2.       **The Liquidating Trustees, at the address set forth in the Liquidating Trust Agreements**

3.       **The Creditors' Committee**

      Robert M. Hirsh
      George P. Angelich
      ARENT FOX LLP
      1675 Broadway
      New York, NY 10019
      Telephone:  (212) 484-3900
      Facsimile:  (212) 484-3990

4.       **The U.S. Trustee**

      Hector Duran
      Office of the United States Trustee
      515 Rusk Street, Suite 3516
      Houston, TX 77002

**H.       Inconsistencies.**

To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

Dated:  January 9, 2017              Respectfully submitted,

                                 SHORELINE ENERGY LLC (for itself and on behalf of
                                 its debtor affiliates )

                           By: */s/   Daniel P. Hurley*             
                                Name:   Daniel P. Hurley
                                Title:    Chief Executive Officer

Counsel:

Thomas A. Howley (TX 24010115)
Paul M. Green (TX 24059854)
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
Facsimile:  (832) 239-3600
ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**<u>EXHIBIT B</u>**

**CONFIRMATION NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**NOTICE OF:  (I) ENTRY OF ORDER**
**CONFIRMING FIRST AMENDED JOINT PLAN OF**
**LIQUIDATION OF SHORELINE ENERGY LLC AND ITS DEBTOR AFFILIATES;**
**(II) EFFECTIVE DATE; AND (III) BAR DATES FOR CERTAIN ADMINISTRATIVE**
**CLAIMS, PROFESSIONAL FEE CLAIMS AND REJECTION DAMAGE CLAIMS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. **Confirmation of the Plan.**  On [_____], the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order (the "Confirmation Order") confirming the First Amended Joint Plan of Liquidation of Shoreline Energy LLC and Its Debtor Affiliates (as modified by certain modifications filed with the Bankruptcy Court and referenced in the Confirmation Order, the "Plan"), in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors").  Unless otherwise defined in this notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.  Copies of the Plan and the Confirmation Order may be obtained free of charge at https://cases.primeclerk.com/shorelineenergy/Home-Index.

2. **Effective Date.**  Pursuant to the Confirmation Order, the Creditor Trust hereby certifies and gives notice that the Plan became effective in accordance with its terms, and the Effective Date occurred, on [_____], 2017.

3. **Releases.**

   a. **Release by the Debtors**.  Without limiting any applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtors, on behalf of themselves and their predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers,

---

[1]    The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

consultants, representatives, management companies, fund advisors and other professionals, the Estates, the Creditor Trust and their respective successors and, assigns, and any and all Entities, including the Creditors' Committee and the Creditor Trustee, who may purport to claim by, through, for or because of them, are deemed expressly, unconditionally, generally, and individually and collectively, to forever settle, release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise (collectively, the "Liabilities"), against any Released Party with respect to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the Purchaser APA, the DIP Credit Agreement and the First Lien Credit Agreement, except for (a) claims resulting from actual fraud, gross negligence, or willful misconduct as determined by a Final Order and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

> b.      **Release by Holders of Claims or Interests.**  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, unless otherwise provided in the Confirmation Order, each Releasing Party is deemed expressly, unconditionally, generally, and individually and collectively, to forever release, waive and discharge all Liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, in any way that such Releasing Party has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the DIP Credit Agreement, the First Lien Credit Agreement, and the property transferred pursuant to the Purchaser APA, including the issuance or distribution of securities or other debt obligation pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing; provided, however, that the foregoing provisions of Section IV.I.3.b. of the Plan shall have no effect on the liability of (a) any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

      c.     **Limitation of Liability.**  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtors, the Creditor Trust, the Creditor Trustee and their respective directors, officers, employees, agents and professionals, acting in such capacity, and the Creditors' Committee and its members, and their respective agents and professionals, in each case acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Bankruptcy Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction proposed in connection with the Debtors, the Bankruptcy Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of Section IV.J.1. of the Plan shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (c) the liability of an Entity for breach of a Definitive Document that arises after the Effective Date.

      4.     **Injunctions.**

      a.     Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

      b.     Except as provided in the Plan or the Confirmation Order and other than with respect to a right of recoupment or a setoff, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability subject to the Plan or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan or cause of action of a non-Debtor that is released under the Plan will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities, Interests or rights:  (1) commencing or continuing in any manner or means any action or other proceeding against the Debtors, the Creditor Trust, the Creditor Trustee or the Released Parties, whether directly, derivatively or otherwise, other than to enforce any right pursuant to the Plan (or any order resolving the dispute) to a Distribution; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties other than as permitted pursuant to (1) above; (3) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Creditor Trust, the Released Parties, or their respective property; (4) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties; and (5) subject to the proviso in Article X of the Plan regarding jurisdiction, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.  Such injunction shall extend to the successors, if any, of the Debtors, the Creditor Trust, and the Creditor Trustee and to their respective properties and interests in property.  Anyone injured by any willful violation of this injunction shall be entitled to recover actual damages, including

costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

    **5.**    **Bar Dates.**

    a.    **General Bar Date for Administrative Claims.**  Except as specified in Section III.A.1.c.ii. of the Plan, the Bar Date Order, the Confirmation Order and this notice, unless previously Filed or Allowed, requests for payment of Administrative Claims that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after the Petition Date through January 31, 2017, must have filed a request for payment of such Administrative Claim by February 7, 2017.  Further, and except as otherwise provided in Section III.A.1.c.ii. of the Plan or in the Bar Date Order or other order of the Bankruptcy Court (including the DIP Order), unless previously Filed or Allowed, each holder of an Administrative Claim that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after February 1, 2017 must File a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 60 days after the Effective Date (i.e. by _____, 2017) (the "Final Administrative Claim Bar Date").  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date.  Objections to requests for payment of Administrative Claims must be Filed and served on the requesting party by (a) in the case of such requests that were required to be filed by February 7, 2017 pursuant to the Bar Date Order, 90 days after the Effective Date (i.e. by _____, 2017) and (b) in the case of such requests that must be filed by the Final Administrative Claim Bar Date, by no later than 150 days after the Effective Date (i.e. by _____, 2017), in each case subject to further order of the Bankruptcy Court.  For the avoidance of doubt, nothing herein modifies any requirement to File any Administrative Claim as set forth in the Bar Date Order, and any holder of such Administrative Claim that failed to comply with the requirements of the Bar Date Order shall be forever barred from asserting such Administrative Claims against the Debtors, the Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

    b.    **Professional Fee Claims.**  Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Creditor Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 90 days after the Effective Date (i.e. by _____, 2017); provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be Filed and served on the Creditor Trustee and the requesting party by the later of (1) 80 days after the Effective Date (i.e. by _____, 2017) or (2) 45 days after the Filing of

the applicable Final Fee Application.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims.  Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

            c.      **Rejection Damage Claims.**  Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection claim will be forever barred and will not be enforceable against the Creditor Trustee or the Creditor Trust unless a proof of Claim is Filed and served on the Creditor Trustee, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, by 30 days after the Effective Date (i.e. by _____, 2017).

            d.      **Address of Creditor Trustee**.  For purposes of serving requests for payment of Administrative Claims, Final Fee Applications or proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases, the Creditor Trustee's address is [_____].

Dated: _____, 2017

             /s/_____

             [TO COME]

             ATTORNEYS FOR THE CREDITOR TRUST

**<u>EXHIBIT C</u>**

**CONFIRMATION NOTICE — PUBLICATION VERSION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| SHORELINE ENERGY LLC, *et al.*,[1] | : | Case No. 16-35571 (DRJ) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**NOTICE OF: (I) ENTRY OF ORDER**
**CONFIRMING FIRST AMENDED JOINT PLAN OF**
**LIQUIDATION OF SHORELINE ENERGY LLC AND ITS DEBTOR AFFILIATES;**
**(II) EFFECTIVE DATE; AND (III) BAR DATES FOR CERTAIN ADMINISTRATIVE**
**CLAIMS, PROFESSIONAL FEE CLAIMS AND REJECTION DAMAGE CLAIMS**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.     **Confirmation of the Plan.**  On [_____], the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order (the "Confirmation Order") confirming the First Amended Joint Plan of Liquidation of Shoreline Energy LLC and Its Debtor Affiliates (as modified by certain modifications filed with the Bankruptcy Court and referenced in the Confirmation Order, the "Plan"), in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors").  Unless otherwise defined in this notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.  Copies of the Plan and the Confirmation Order may be obtained free of charge at https://cases.primeclerk.com/shorelineenergy/Home-Index.

2.     **Effective Date.**  Pursuant to the Confirmation Order, the Creditor Trust hereby certifies and gives notice that the Plan became effective in accordance with its terms, and the Effective Date occurred, on [_____], 2017.

3.     **Releases.**

        a.     **Release by the Debtors**.  Without limiting any applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtors, on behalf of themselves and their predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers,

---

[1]      The Debtors are the following eight entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Shoreline Energy LLC (2777); Shoreline Southeast LLC (0562); Shoreline Offshore LLC (2882); Harvest Development LLC (2703); Shoreline GP LLC (5184); Shoreline Central Corporation (1579); Shoreline Energy Partners, LP (5035); Shoreline EH LLC (6570).  The address of each of the Debtors is 16801 Greenspoint Park Drive #380, Houston, Texas 77060.

consultants, representatives, management companies, fund advisors and other professionals, the Estates, the Creditor Trust and their respective successors and, assigns, and any and all Entities, including the Creditors' Committee and the Creditor Trustee, who may purport to claim by, through, for or because of them, are deemed expressly, unconditionally, generally, and individually and collectively, to forever settle, release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise (collectively, the "Liabilities"), against any Released Party with respect to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the Purchaser APA, the DIP Credit Agreement and the First Lien Credit Agreement, except for (a) claims resulting from actual fraud, gross negligence, or willful misconduct as determined by a Final Order and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

> b.  **Release by Holders of Claims or Interests.**  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, unless otherwise provided in the Confirmation Order, each Releasing Party is deemed expressly, unconditionally, generally, and individually and collectively, to forever release, waive and discharge all Liabilities, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, in any way that such Releasing Party has, had or may have against any Released Party (which release shall be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code), in each case, relating to liability for any act or omission in connection with, related to, or arising out of, the Debtors, the Bankruptcy Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the Restructuring Support Agreement, the administration of the Bankruptcy Cases, the property to be distributed under the Plan, the DIP Credit Agreement, the First Lien Credit Agreement, and the property transferred pursuant to the Purchaser APA, including the issuance or distribution of securities or other debt obligation pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing; provided, however, that the foregoing provisions of Section IV.I.3.b. of the Plan shall have no effect on the liability of (a) any Released Party that would otherwise result from any act or omission of such Released Party to the extent that such act or omission is determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct and (b) obligations of any Party or Entity under the Definitive Documentation that arise after the Effective Date.

c.      **Limitation of Liability.**  Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, the Debtors, the Creditor Trust, the Creditor Trustee and their respective directors, officers, employees, agents and professionals, acting in such capacity, and the Creditors' Committee and its members, and their respective agents and professionals, in each case acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Bankruptcy Cases or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction proposed in connection with the Debtors, the Bankruptcy Cases or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of Section IV.J.1. of the Plan shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct; or (c) the liability of an Entity for breach of a Definitive Document that arises after the Effective Date.

4.      **Injunctions.**

a.      Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Cases are closed.

b.      Except as provided in the Plan or the Confirmation Order and other than with respect to a right of recoupment or a setoff, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability subject to the Plan or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan or cause of action of a non-Debtor that is released under the Plan will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities, Interests or rights:  (1) commencing or continuing in any manner or means any action or other proceeding against the Debtors, the Creditor Trust, the Creditor Trustee or the Released Parties, whether directly, derivatively or otherwise, other than to enforce any right pursuant to the Plan (or any order resolving the dispute) to a Distribution; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties other than as permitted pursuant to (1) above; (3) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Creditor Trust, the Released Parties, or their respective property; (4) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtors, the Creditor Trust, the Creditor Trustee, or the Released Parties; and (5) subject to the proviso in Article X of the Plan regarding jurisdiction, commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.  Such injunction shall extend to the successors, if any, of the Debtors, the Creditor Trust, and the Creditor Trustee and to their respective properties and interests in property.  Anyone injured by any willful violation of this injunction shall be entitled to recover actual damages, including

costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

     **5.**    **Bar Dates.**

          a.    **General Bar Date for Administrative Claims.**  Except as specified in Section III.A.1.c.ii. of the Plan, the Bar Date Order, the Confirmation Order and this notice, unless previously Filed or Allowed, requests for payment of Administrative Claims that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after the Petition Date through January 31, 2017, must have filed a request for payment of such Administrative Claim by February 7, 2017.  Further, and except as otherwise provided in Section III.A.1.c.ii. of the Plan or in the Bar Date Order or other order of the Bankruptcy Court (including the DIP Order), unless previously Filed or Allowed, each holder of an Administrative Claim that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after February 1, 2017 must File a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 60 days after the Effective Date (i.e. by _____, 2017) (the "Final Administrative Claim Bar Date").  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date.  Objections to requests for payment of Administrative Claims must be Filed and served on the requesting party by (a) in the case of such requests that were required to be filed by February 7, 2017 pursuant to the Bar Date Order, 90 days after the Effective Date (i.e. by _____, 2017) and (b) in the case of such requests that must be filed by the Final Administrative Claim Bar Date, by no later than 150 days after the Effective Date (i.e. by _____, 2017), in each case subject to further order of the Bankruptcy Court.  For the avoidance of doubt, nothing herein modifies any requirement to File any Administrative Claim as set forth in the Bar Date Order, and any holder of such Administrative Claim that failed to comply with the requirements of the Bar Date Order shall be forever barred from asserting such Administrative Claims against the Debtors, the Creditor Trust, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

          b.    **Professional Fee Claims.**  Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the Creditor Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 90 days after the Effective Date (i.e. by _____, 2017); provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be Filed and served on the Creditor Trustee and the requesting party by the later of (1) 80 days after the Effective Date (i.e. by _____, 2017) or (2) 45 days after the Filing of

the applicable Final Fee Application.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims.  Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

           c.      **Rejection Damage Claims.**  Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection claim will be forever barred and will not be enforceable against the Creditor Trustee or the Creditor Trust unless a proof of Claim is Filed and served on the Creditor Trustee, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, by 30 days after the Effective Date (i.e. by _____, 2017).

           d.      **Address of Creditor Trustee**.  For purposes of serving requests for payment of Administrative Claims, Final Fee Applications or proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases, the Creditor Trustee's address is [_____].

BY ORDER OF THE COURT

[TO COME]

ATTORNEYS FOR THE CREDITOR TRUST
